# Exhibit 3

# Ambac

## Certificate Guaranty Insurance Policy

Ambac Assurance Corporation
One State Street Plaza, 15th Floor
New York, New York 10004
Telephone: (212) 668-0340

Insured Obligations: SACO I Trust 2006-2,
Mortgage-Backed Certificates, Series 2006-2,
$322,839,000 Class I-A Certificates

Policy Number: AB0971BE

Premium: As specified in the endorsement attached hereto.

Ambac Assurance Corporation (Ambac), a Wisconsin stock insurance corporation, in consideration of the payment of the premium and subject to the terms of this Policy, hereby agrees unconditionally and irrevocably to pay to the Trustee for the benefit of the Holders of the Insured Obligations, that portion of the Insured Amounts which shall become Due for Payment but shall be unpaid by reason of Nonpayment.

Ambac will make such payments to the Trustee from its own funds on the later of (a) one (1) Business Day following notification to Ambac of Nonpayment or (b) the Business Day on which the Insured Amounts are Due for Payment. Such payments of principal or interest shall be made only upon presentation of an instrument of assignment in form and substance satisfactory to Ambac, transferring to Ambac all rights under such Insured Obligations to receive the principal of and interest on the Insured Obligation. Ambac shall be subrogated to all the Holders' rights to payment on the Insured Obligations to the extent of the insurance disbursements so made. Once payments of the Insured Amounts have been made to the Trustee, Ambac shall have no further obligation hereunder in respect of such Insured Amounts.

In the event the Trustee for the Insured Obligations has notice that any payment of principal or interest on an Insured Obligation which has become Due for Payment and which is made to a Holder by or on behalf of the Trustee has been deemed a preferential transfer and theretofore recovered from its Holder pursuant to the United States Bankruptcy Code in accordance with a final, nonappealable order of a court of competent jurisdiction, such Holder will be entitled to payment from Ambac to the extent of such recovery if sufficient funds are not otherwise available.

This Policy is noncancelable by Ambac for any reason, including failure to receive payment of any premium due hereunder. The premium on this Policy is not refundable for any reason. This Policy does not insure against loss of any prepayment or other acceleration payment which at any time may become due in respect of any Insured Obligation, other than at the sole option of Ambac, nor against any risk other than Nonpayment, including failure of the Trustee to make any payment due Holders of Insured Amounts.

To the fullest extent permitted by applicable law, Ambac hereby waives and agrees not to assert any and all rights and defenses, to the extent such rights and defenses may be available to Ambac, to avoid payment of its obligations under this Policy in accordance with the express provisions hereof.

Any capitalized terms not defined herein shall have the meaning given such terms in the endorsement attached hereto or in the Agreement.

In witness whereof, Ambac has caused this Policy to be affixed with its corporate seal and to be signed by its duly authorized officers in facsimile to become effective as their original signatures and binding upon Ambac by virtue of the countersignature of its duly authorized representative.

*[signature]*
President

*[SEAL]*

*[signature]* Anne G. Gill
Secretary

*[signature]*
Authorized Representative

Effective Date: January 30, 2006

Form No.: 2B-0022 (7/97)

**CERTIFICATE GUARANTY INSURANCE POLICY ENDORSEMENT**

Attached to and forming part of  
Certificate Guaranty Insurance Policy No. AB0971BE  
issued to:

Effective Date of Endorsement:  
January 30, 2006

Citibank, N.A.,  
as Trustee for the benefit of the Class I-A Holders of  
SACO I Trust 2006-2 Mortgage-Backed Certificates,  
Series 2006-2, Class I-A Certificates

For all purposes of this Policy, the following terms shall have the following meanings:

"Agreement" shall mean, for purposes of the Policy, the Pooling and Servicing Agreement.

"Business Day" means any day other than Saturday, Sunday, legal holiday or other day on which banking institutions in New York, New York or the jurisdiction(s) to which any successor to the Trustee may be subject, is authorized or obligated by law, regulation or executive order to be closed.

"Class I-A Certificates" means the Class I-A Certificates, substantially in the form set forth in Exhibit A-1 to the Agreement.

"Class I-A Holder" shall mean the registered owner or beneficial owner of any Class I-A Certificate, but shall not include the Trustee, the Securities Administrator, the Seller, the Master Servicer, the Servicers, the Originator, the Depositor or their Affiliates.

"Class I-A Insurer" means Ambac Assurance Corporation, a Wisconsin-domiciled stock insurance corporation, or any successor thereto, as issuer of the Policy.

"Deficiency Amount" means with respect to the Class I-A Certificates, (a) for any Distribution Date occurring prior to the Final Distribution Date, the excess, if any, of Required Interest Distributions over the Net Available Interest Amount, (b) for any Distribution Date occurring prior to the Final Distribution Date, provided that the Group I Overcollateralization Amount and the Certificate Principal Balances of the Class I-M Certificates and the Class I-B Certificates have been reduced to zero, the reduction of the Certificate Principal Balance of the Class I-A Certificates as a result of the application of any Realized Losses to the Class I-A Certificates and (c) without duplication of any amounts paid pursuant to clause (b) above, for the Final Distribution Date, the sum of (x) the amount set forth in clause (a) above and (y) the Certificate Principal Balance of the Class I-A Certificates, after giving effect to all payments of principal on the Class I-A Certificates on that Distribution Date.

"Distribution Date" shall mean the 25th day of any month (or if such 25th day is not a Business Day, the first Business Day immediately following) beginning on the First Distribution Date.

"Due for Payment" shall mean, with respect to any Insured Amount, such amount is due and payable pursuant to the terms of the Agreement.

"First Distribution Date" shall mean February 25, 2006.

"Final Distribution Date" means the Distribution Date in June 2036.

"Home Loan Interest Shortfalls" shall mean Group I Basis Risk Shortfall Carry Over Amounts with respect to the Class I-A Certificates, Relief Act Shortfalls and Prepayment Interest Shortfalls.

"Insurance Agreement" shall mean the Insurance and Indemnity Agreement, dated as of January 30, 2006 by and among the Class I-A Insurer, the Seller, the Master Servicer, the Securities Administrator and the Trustee, as such agreement may be amended, modified or supplemented from time to time.

"Insured Amounts" shall mean, with respect to any Distribution Date, any Deficiency Amount for such Distribution Date.

"Insured Payments" shall mean, the aggregate amount paid by the Class I-A Insurer to the Trustee, or at the direction of the Trustee, to the Securities Administrator, in respect of (i) Insured Amounts for such Distribution Date and (ii) Preference Amounts for any given Business Day.

"Late Payment Rate" shall mean for any Distribution Date, the greater of (i) the rate of interest, as it is publicly announced by Citibank, N.A. at its principal office in New York, New York as its prime rate (any change in such prime rate of interest to be effective on the date such change is announced by Citibank, N.A.) plus 2% and (ii) the then applicable highest rate of interest on the Class I-A Certificates. The Late Payment Rate shall be computed on the basis of a year of 360 days and the actual number of days elapsed. In no event shall the Late Payment Rate exceed the maximum rate permissible under any applicable law limiting interest rates.

"Net Available Interest Amount" shall mean, for any Distribution Date, the amount of Interest Funds with respect to the Group I Loans less the Premium for that Distribution Date.

"Nonpayment" shall mean, with respect to any Distribution Date, an Insured Amount is Due for Payment but has not been paid pursuant to the Agreement.

"Notice" shall mean the telephonic or telegraphic notice, promptly confirmed in writing by telecopy substantially in the form of Exhibit A to this Policy, the original of which is subsequently delivered by registered or certified mail, executed by the Trustee and, to the extent required, the Securities Administrator and delivered by the Securities Administrator on behalf of the Trustee or the Trustee specifying the Insured Amount which shall be due and owing on the applicable Distribution Date.

2

"Policy" shall mean this Certificate Guaranty Insurance Policy together with each and every endorsement hereto.

"Pooling and Servicing Agreement" shall mean the Pooling and Servicing Agreement dated as of January 30, 2006, among Bear Stearns Asset Backed Securities I LLC, as the Depositor, EMC Mortgage Corporation, as the Seller and the Company, LaSalle Bank National Association, as the Master Servicer and the Securities Administrator and Citibank, N.A., as the Trustee, as such agreement may be amended, modified or supplemented from time to time as set forth in the Pooling and Servicing Agreement.

"Preference Amount" means any payment of principal or interest on a Class I-A Certificate which has become Due for Payment and which is made to a Class I-A Holder by or on behalf of the Securities Administrator or the Trustee which has been deemed a preferential transfer and theretofore recovered from its Class I-A Holder pursuant to the Federal Bankruptcy Code in accordance with a final, non-appealable order of a court of competent jurisdiction.

"Premium" shall mean the amount payable to the Class I-A Insurer on each Distribution Date calculated at the Premium Percentage.

"Premium Percentage" shall have the meaning set forth in the Insurance Agreement.

"Prepayment Interest Shortfall" has the meaning set forth in the Pooling and Servicing Agreement.

"Reimbursement Amount" shall mean, as to any Distribution Date, the sum of (x) (i) all Insured Payments paid by the Class I-A Insurer, but for which the Class I-A Insurer has not been reimbursed prior to such Distribution Date pursuant to Section 6.04 of the Agreement, plus (ii) interest accrued on such Insured Payments not previously repaid calculated at the Late Payment Rate from the date the Trustee or the Securities Administrator, as applicable, received the related Insured Payments or the date such Insured Payments were made, and (y) without duplication (i) any amounts then due and owing to the Class I-A Insurer under the Insurance Agreement, as certified to the Trustee and the Securities Administrator by the Class I-A Insurer plus (ii) interest on such amounts at the Late Payment Rate.

"Relief Act Shortfalls" means interest shortfalls resulting from the application of the Servicemembers' Civil Relief Act of 1940 or any similar state law.

"Required Interest Distributions" means, with respect to the Class I-A Certificates and any Distribution Date, the Current Interest payable to the Class I-A Certificates on such Distribution Date.

"Securities Administrator" shall mean LaSalle Bank National Association, in its capacity as Securities Administrator under the Agreement, or if any successor Securities Administrator shall be appointed as provided therein, then "Securities Administrator" shall also mean such successor Securities Administrator, subject to the provisions thereof.

"Trustee" shall mean Citibank, N.A., in its capacity as Trustee under the Agreement, or if any successor Trustee shall be appointed as provided therein, then "Trustee" shall also mean such successor trustee, subject to the provisions thereof.

Capitalized terms used herein as defined terms and not otherwise defined herein shall have the meaning assigned to them in the Insurance Agreement and the Agreement, without regard to any amendment or modification thereof, unless such amendment or modification has been approved in writing by the Class I-A Insurer.

Notwithstanding any other provision of the Policy, the Class I-A Insurer will pay any Insured Amount payable hereunder no later than 12:00 noon, New York City time, on the later of (i) the Distribution Date on which the related Insured Amount is due and (ii) the second Business Day following receipt in New York, New York on a Business Day by the Class I-A Insurer of a Notice at the address and in the manner provided in Section 6.02 of the Insurance Agreement; provided that, if such Notice is received after 12:00 noon, New York City time, on such Business Day, it shall be deemed to be received on the following Business Day. If any such Notice is not in proper form or is otherwise insufficient for the purpose of making a claim under the Policy, it shall be deemed not to have been received for purposes of this paragraph, and the Class I-A Insurer shall promptly so advise the Securities Administrator or the Trustee, as applicable, and the Securities Administrator or the Trustee, as applicable, may submit an amended or corrected Notice.

As provided in the third paragraph of the Policy, the Class I-A Insurer shall pay any Preference Amount when due to be paid pursuant to the Order referred to below, but in any event no earlier than the third Business Day following receipt by the Class I-A Insurer of (i) a certified copy of a final, non-appealable order of a court or other body exercising jurisdiction in such insolvency proceeding to the effect that the Securities Administrator, the Trustee, or Class I-A Holder, as applicable, is required to return such Preference Amount paid during the term of this Policy because such payments were avoided as a preferential transfer or otherwise rescinded or required to be restored by the Securities Administrator, the Trustee or Class I-A Holder (the "Order"), (ii) a certificate by or on behalf of the Securities Administrator, the Trustee or Class I-A Holder that the Order has been entered and is not subject to any stay, (iii) an assignment, in form and substance satisfactory to the Class I-A Insurer, duly executed and delivered by the Securities Administrator, the Trustee or Class I-A Holder, irrevocably assigning to the Class I-A Insurer all rights and claims of the Securities Administrator, the Trustee or Class I-A Holder relating to or arising under the Agreement against the estate of the Securities Administrator or the Trustee or otherwise with respect to such Preference Amount and (iv) a Notice (in the form attached hereto as Exhibit A) appropriately completed and executed by the Securities Administrator or the Trustee; provided, that if such documents are received after 12:00 noon, New York City time, on such Business Day, they will be deemed to be received on the following Business Day; provided, further, that the Class I-A Insurer shall not be obligated to make any payment in respect of any Preference Amount representing a payment of principal on the Class I-A Certificates prior to the time the Class I-A Insurer would have been required to make a payment in respect of such principal pursuant to the first paragraph of the Policy. Such payment shall be disbursed to the receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order, and not to the Class I-A Holder directly, unless the Class I-A Holder has made a payment of the Preference Amount to the court or such receiver, conservator, debtor-in-

4

possession or trustee in bankruptcy named in the Order, in which case the Class I-A Insurer will pay the Class I-A Holder, subject to the delivery of (a) the items referred to in clauses (i), (ii), (iii) and (iv) above to the Class I-A Insurer and (b) evidence satisfactory to the Class I-A Insurer that payment has been made to such court or receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order.

With respect to any claim for payment hereunder for an Insured Amount or Preference Amount, the Class I-A Insurer shall only be obligated to pay such amount once, notwithstanding that it may have received a Notice from both the Trustee and the Securities Administrator with respect to such claim.

The Class I-A Insurer hereby agrees that if it shall be subrogated to the rights of Class I-A Holders by virtue of any payment under this Policy, no recovery of such payment will occur unless the full amount of the Class I-A Holders' allocable distributions for such Distribution Date can be made. In so doing, the Class I-A Insurer does not waive its rights to seek full payment of all Reimbursement Amounts owed to it under the Insurance Agreement and the Agreement.

The Policy does not cover Home Loan Interest Shortfalls allocated to the Class I-A Certificates, nor does the Policy guaranty to the Class I-A Holders any particular rate of principal payment. In addition, the Policy does not cover shortfalls, if any, attributable to the liability of the Trust Fund, any REMIC thereof or the Securities Administrator or the Trustee for withholding taxes due on the payments made to the Class I-A Holders, if any (including interest and penalties in respect of any such liability) nor any risk other than Nonpayment, including the failure of the Securities Administrator or the Trustee to make any payment required under the Agreement to the Class I-A Holders.

The terms and provisions of the Agreement constitute the instrument of assignment referred to in the second paragraph of the face of this Policy.

A premium will be payable on this Policy on each Distribution Date as provided in Section 6.04 of the Agreement, beginning with the First Distribution Date, in an amount equal to the Premium.

**THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE SEVENTY-SIX OF THE NEW YORK INSURANCE LAWS.**

In the event of a payment default by or insolvency of the obligor, there shall be no acceleration of the payment required to be made under the Policy unless such acceleration is at the sole option of the Class I-A Insurer.

The Class I-A Insurer's obligation to make payment hereunder with respect to a particular Insured Amount or Preference Amount shall be discharged to the extent funds equal to the applicable Insured Amount or Preference Amount are received by the Trustee, the Securities Administrator on behalf of the Trustee or any other paying agent of the Trustee, whether or not such funds are properly applied by the Trustee, the Securities Administrator on behalf of the Trustee or such paying agent.

5

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

To the extent the provisions of this endorsement conflict with the provisions in the above-mentioned Policy, the provisions of this endorsement shall govern.

This Policy and the obligations of the Class I-A Insurer hereunder shall terminate one year and one day from the earlier to occur of (a) the date on which all amounts required to be paid to the Class I-A Holders of the Class I-A Certificates have been paid in full, and (b) the Final Distribution Date. Upon the termination of this Policy, the Trustee shall forthwith deliver the original of this Policy to the Class I-A Insurer.

No waiver of any rights or powers of the Class I-A Insurer, the Class I-A Holders the Securities Administrator or the Trustee or consent by any of them shall be valid unless signed by an authorized officer or agent thereof.

This Policy is issued under and pursuant to, and shall be construed in accordance with, the laws of the State of New York.

IN WITNESS WHEREOF, Ambac Assurance Corporation has caused this endorsement to the Policy to be signed by its duly authorized officers.

_____
Assistant Secretary

_____
First Vice President

Form No. 2B-00-23-112 ENDNY (12/03)



## Certificate Guaranty Insurance Policy

Ambac Assurance Corporation
One State Street Plaza, 15th Floor
New York, New York 10004
Telephone: (212) 668-0340

Insured Obligations: SACO I Trust 2006-2,
Mortgage-Backed Certificates, Series 2006-2,
$275,735,000 Class II-A Certificates

Policy Number: AB0972BE

Premium: As specified in the endorsement attached hereto.

Ambac Assurance Corporation (Ambac), a Wisconsin stock insurance corporation, in consideration of the payment of the premium and subject to the terms of this Policy, hereby agrees unconditionally and irrevocably to pay to the Trustee for the benefit of the Holders of the Insured Obligations, that portion of the Insured Amounts which shall become Due for Payment but shall be unpaid by reason of Nonpayment.

Ambac will make such payments to the Trustee from its own funds on the later of (a) one (1) Business Day following notification to Ambac of Nonpayment or (b) the Business Day on which the Insured Amounts are Due for Payment. Such payments of principal or interest shall be made only upon presentation of an instrument of assignment in form and substance satisfactory to Ambac, transferring to Ambac all rights under such Insured Obligations to receive the principal of and interest on the Insured Obligation. Ambac shall be subrogated to all the Holders' rights to payment on the Insured Obligations to the extent of the insurance disbursements so made. Once payments of the Insured Amounts have been made to the Trustee, Ambac shall have no further obligation hereunder in respect of such Insured Amounts.

In the event the Trustee for the Insured Obligations has notice that any payment of principal or interest on an Insured Obligation which has become Due for Payment and which is made to a Holder by or on behalf of the Trustee has been deemed a preferential transfer and theretofore recovered from its Holder pursuant to the United States Bankruptcy Code in accordance with a final, nonappealable order of a court of competent jurisdiction, such Holder will be entitled to payment from Ambac to the extent of such recovery if sufficient funds are not otherwise available.

This Policy is noncancelable by Ambac for any reason, including failure to receive payment of any premium due hereunder. The premium on this Policy is not refundable for any reason. This Policy does not insure against loss of any prepayment or other acceleration payment which at any time may become due in respect of any Insured Obligation, other than at the sole option of Ambac, nor against any risk other than Nonpayment, including failure of the Trustee to make any payment due Holders of Insured Amounts.

To the fullest extent permitted by applicable law, Ambac hereby waives and agrees not to assert any and all rights and defenses, to the extent such rights and defenses may be available to Ambac, to avoid payment of its obligations under this Policy in accordance with the express provisions hereof.

Any capitalized terms not defined herein shall have the meaning given such terms in the endorsement attached hereto or in the Agreement.

In witness whereof, Ambac has caused this Policy to be affixed with its corporate seal and to be signed by its duly authorized officers in facsimile to become effective as their original signatures and binding upon Ambac by virtue of the countersignature of its duly authorized representative.

President

[SEAL]

Secretary

Authorized Representative

Effective Date: January 30, 2006

Form No.: 28-0022 (7/97)

## CERTIFICATE GUARANTY INSURANCE POLICY ENDORSEMENT

Attached to and forming part of  
Certificate Guaranty Insurance Policy No. AB0972BE  
issued to:

Effective Date of Endorsement:  
January 30, 2006

Citibank, N.A.,  
as Trustee for the benefit of the Class II-A Holders of  
SACO I Trust 2006-2 Mortgage-Backed Certificates,  
Series 2006-2, Class II-A Certificates

For all purposes of this Policy, the following terms shall have the following meanings:

"Agreement" shall mean, for purposes of the Policy, the Pooling and Servicing Agreement.

"Business Day" means any day other than Saturday, Sunday, legal holiday or other day on which banking institutions in New York, New York or the jurisdiction(s) to which any successor to the Trustee may be subject, is authorized or obligated by law, regulation or executive order to be closed.

"Class II-A Certificates" means the Class II-A Certificates, substantially in the form set forth in Exhibit A-1 to the Agreement.

"Class II-A Holder" shall mean the registered owner or beneficial owner of any Class II-A Certificate, but shall not include the Trustee, the Securities Administrator, the Seller, the Master Servicer, the Servicers, the Originator, the Depositor or their Affiliates.

"Class II-A Insurer" means Ambac Assurance Corporation, a Wisconsin-domiciled stock insurance corporation, or any successor thereto, as issuer of the Policy.

"Deficiency Amount" means with respect to the Class II-A Certificates, (a) for any Distribution Date occurring prior to the Final Distribution Date, the excess, if any, of Required Interest Distributions over the Net Available Interest Amount, (b) for any Distribution Date occurring prior to the Final Distribution Date, provided that the Group II Overcollateralization Amount and the Certificate Principal Balances of the Class II-M Certificates and the Class II-B Certificates have been reduced to zero, the reduction of the Certificate Principal Balance of the Class II-A Certificates as a result of the application of any Realized Losses to the Class II-A Certificates and (c) without duplication of any amounts paid pursuant to clause (b) above, for the Final Distribution Date, the sum of (x) the amount set forth in clause (a) above and (y) the Certificate Principal Balance of the Class II-A Certificates, after giving effect to all payments of principal on the Class II-A Certificates on that Distribution Date.

Form No. 2B-00-22-112 ENDNY (12/05)

"Distribution Date" shall mean the 25th day of any month (or if such 25th day is not a Business Day, the first Business Day immediately following) beginning on the First Distribution Date.

"Due for Payment" shall mean, with respect to any Insured Amount, such amount is due and payable pursuant to the terms of the Agreement.

"First Distribution Date" shall mean February 25, 2006.

"Final Distribution Date" means the Distribution Date in July 2036.

"Home Loan Interest Shortfalls" shall mean Group II Basis Risk Shortfall Carry Over Amounts with respect to the Class II-A Certificates, Relief Act Shortfalls and Prepayment Interest Shortfalls.

"Insurance Agreement" shall mean the Insurance and Indemnity Agreement, dated as of January 30, 2006 by and among the Class II-A Insurer, the Seller, the Master Servicer, the Securities Administrator and the Trustee, as such agreement may be amended, modified or supplemented from time to time.

"Insured Amounts" shall mean, with respect to any Distribution Date, any Deficiency Amount for such Distribution Date.

"Insured Payments" shall mean, the aggregate amount paid by the Class II-A Insurer to the Trustee, or at the direction of the Trustee, to the Securities Administrator, in respect of (i) Insured Amounts for such Distribution Date and (ii) Preference Amounts for any given Business Day.

"Late Payment Rate" shall mean for any Distribution Date, the greater of (i) the rate of interest, as it is publicly announced by Citibank, N.A. at its principal office in New York, New York as its prime rate (any change in such prime rate of interest to be effective on the date such change is announced by Citibank, N.A.) plus 2% and (ii) the then applicable highest rate of interest on the Class II-A Certificates. The Late Payment Rate shall be computed on the basis of a year of 360 days and the actual number of days elapsed. In no event shall the Late Payment Rate exceed the maximum rate permissible under any applicable law limiting interest rates.

"Net Available Interest Amount" shall mean, for any Distribution Date, the amount of Interest Funds with respect to the Group II Loans less the Premium for that Distribution Date.

"Nonpayment" shall mean, with respect to any Distribution Date, an Insured Amount is Due for Payment but has not been paid pursuant to the Agreement.

"Notice" shall mean the telephonic or telegraphic notice, promptly confirmed in writing by telecopy substantially in the form of Exhibit A to this Policy, the original of which is subsequently delivered by registered or certified mail, executed by the Trustee and, to the extent required, the Securities Administrator and delivered by the Securities Administrator on behalf of the Trustee or the Trustee specifying the Insured Amount which shall be due and owing on the applicable Distribution Date.

2

"Policy" shall mean this Certificate Guaranty Insurance Policy together with each and every endorsement hereto.

"Pooling and Servicing Agreement" shall mean the Pooling and Servicing Agreement dated as of January 30, 2006, among Bear Stearns Asset Backed Securities I LLC, as the Depositor, EMC Mortgage Corporation, as the Seller and the Company, LaSalle Bank National Association, as the Master Servicer and the Securities Administrator and Citibank, N.A., as the Trustee, as such agreement may be amended, modified or supplemented from time to time as set forth in the Pooling and Servicing Agreement.

"Preference Amount" means any payment of principal or interest on a Class II-A Certificate which has become Due for Payment and which is made to a Class II-A Holder by or on behalf of the Securities Administrator or the Trustee which has been deemed a preferential transfer and theretofore recovered from its Class II-A Holder pursuant to the Federal Bankruptcy Code in accordance with a final, non-appealable order of a court of competent jurisdiction.

"Premium" shall mean the amount payable to the Class II-A Insurer on each Distribution Date calculated at the Premium Percentage.

"Premium Percentage" shall have the meaning set forth in the Insurance Agreement.

"Prepayment Interest Shortfall" has the meaning set forth in the Pooling and Servicing Agreement.

"Reimbursement Amount" shall mean, as to any Distribution Date, the sum of (x) (i) all Insured Payments paid by the Class II-A Insurer, but for which the Class II-A Insurer has not been reimbursed prior to such Distribution Date pursuant to Section 6.04 of the Agreement, plus (ii) interest accrued on such Insured Payments not previously repaid calculated at the Late Payment Rate from the date the Trustee or the Securities Administrator, as applicable, received the related Insured Payments or the date such Insured Payments were made, and (y) without duplication (i) any amounts then due and owing to the Class II-A Insurer under the Insurance Agreement, as certified to the Trustee and the Securities Administrator by the Class II-A Insurer plus (ii) interest on such amounts at the Late Payment Rate.

"Relief Act Shortfalls" means interest shortfalls resulting from the application of the Servicemembers' Civil Relief Act of 1940 or any similar state law.

"Required Interest Distributions" means, with respect to the Class II-A Certificates and any Distribution Date, the Current Interest payable to the Class II-A Certificates on such Distribution Date.

"Securities Administrator" shall mean LaSalle Bank National Association, in its capacity as Securities Administrator under the Agreement, or if any successor Securities Administrator shall be appointed as provided therein, then "Securities Administrator" shall also mean such successor Securities Administrator, subject to the provisions thereof.

3

"Trustee" shall mean Citibank, N.A., in its capacity as Trustee under the Agreement, or if any successor Trustee shall be appointed as provided therein, then "Trustee" shall also mean such successor trustee, subject to the provisions thereof.

Capitalized terms used herein as defined terms and not otherwise defined herein shall have the meaning assigned to them in the Insurance Agreement and the Agreement, without regard to any amendment or modification thereof, unless such amendment or modification has been approved in writing by the Class II-A Insurer.

Notwithstanding any other provision of the Policy, the Class II-A Insurer will pay any Insured Amount payable hereunder no later than 12:00 noon, New York City time, on the later of (i) the Distribution Date on which the related Insured Amount is due and (ii) the second Business Day following receipt in New York, New York on a Business Day by the Class II-A Insurer of a Notice at the address and in the manner provided in Section 6.02 of the Insurance Agreement; provided that, if such Notice is received after 12:00 noon, New York City time, on such Business Day, it shall be deemed to be received on the following Business Day. If any such Notice is not in proper form or is otherwise insufficient for the purpose of making a claim under the Policy, it shall be deemed not to have been received for purposes of this paragraph, and the Class II-A Insurer shall promptly so advise the Securities Administrator or the Trustee, as applicable, and the Securities Administrator or the Trustee, as applicable, may submit an amended or corrected Notice.

As provided in the third paragraph of the Policy, the Class II-A Insurer shall pay any Preference Amount when due to be paid pursuant to the Order referred to below, but in any event no earlier than the third Business Day following receipt by the Class II-A Insurer of (i) a certified copy of a final, non-appealable order of a court or other body exercising jurisdiction in such insolvency proceeding to the effect that the Securities Administrator, the Trustee, or Class II-A Holder, as applicable, is required to return such Preference Amount paid during the term of this Policy because such payments were avoided as a preferential transfer or otherwise rescinded or required to be restored by the Securities Administrator, the Trustee or Class II-A Holder (the "Order"), (ii) a certificate by or on behalf of the Securities Administrator, the Trustee or Class II-A Holder that the Order has been entered and is not subject to any stay, (iii) an assignment, in form and substance satisfactory to the Class II-A Insurer, duly executed and delivered by the Securities Administrator, the Trustee or Class II-A Holder, irrevocably assigning to the Class II-A Insurer all rights and claims of the Securities Administrator, the Trustee or Class II-A Holder relating to or arising under the Agreement against the estate of the Securities Administrator or the Trustee or otherwise with respect to such Preference Amount and (iv) a Notice (in the form attached hereto as Exhibit A) appropriately completed and executed by the Securities Administrator or the Trustee; provided, that if such documents are received after 12:00 noon, New York City time, on such Business Day, they will be deemed to be received on the following Business Day; provided, further, that the Class II-A Insurer shall not be obligated to make any payment in respect of any Preference Amount representing a payment of principal on the Class II-A Certificates prior to the time the Class II-A Insurer would have been required to make a payment in respect of such principal pursuant to the first paragraph of the Policy. Such payment shall be disbursed to the receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order, and not to the Class II-A Holder directly, unless the Class II-A Holder has made a payment of the Preference Amount to the court or such receiver, conservator, debtor-in-

4

possession or trustee in bankruptcy named in the Order, in which case the Class II-A Insurer will pay the Class II-A Holder, subject to the delivery of (a) the items referred to in clauses (i), (ii), (iii) and (iv) above to the Class II-A Insurer and (b) evidence satisfactory to the Class II-A Insurer that payment has been made to such court or receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order.

With respect to any claim for payment hereunder for an Insured Amount or Preference Amount, the Class II-A Insurer shall only be obligated to pay such amount once, notwithstanding that it may have received a Notice from both the Trustee and the Securities Administrator with respect to such claim.

The Class II-A Insurer hereby agrees that if it shall be subrogated to the rights of Class II-A Holders by virtue of any payment under this Policy, no recovery of such payment will occur unless the full amount of the Class II-A Holders' allocable distributions for such Distribution Date can be made. In so doing, the Class II-A Insurer does not waive its rights to seek full payment of all Reimbursement Amounts owed to it under the Insurance Agreement and the Agreement.

The Policy does not cover Home Loan Interest Shortfalls allocated to the Class II-A Certificates, nor does the Policy guaranty to the Class II-A Holders any particular rate of principal payment. In addition, the Policy does not cover shortfalls, if any, attributable to the liability of the Trust Fund, any REMIC thereof or the Securities Administrator or the Trustee for withholding taxes due on the payments made to the Class II-A Holders, if any (including interest and penalties in respect of any such liability) nor any risk other than Nonpayment, including the failure of the Securities Administrator or the Trustee to make any payment required under the Agreement to the Class II-A Holders.

The terms and provisions of the Agreement constitute the instrument of assignment referred to in the second paragraph of the face of this Policy.

A premium will be payable on this Policy on each Distribution Date as provided in Section 6.04 of the Agreement, beginning with the First Distribution Date, in an amount equal to the Premium.

**THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE SEVENTY-SIX OF THE NEW YORK INSURANCE LAWS.**

In the event of a payment default by or insolvency of the obligor, there shall be no acceleration of the payment required to be made under the Policy unless such acceleration is at the sole option of the Class II-A Insurer.

The Class II-A Insurer's obligation to make payment hereunder with respect to a particular Insured Amount or Preference Amount shall be discharged to the extent funds equal to the applicable Insured Amount or Preference Amount are received by the Trustee, the Securities Administrator on behalf of the Trustee or any other paying agent of the Trustee, whether or not such funds are properly applied by the Trustee, the Securities Administrator on behalf of the Trustee or such paying agent.

5

Form No. 2B-00-22-112 ENDNY (12/05)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

To the extent the provisions of this endorsement conflict with the provisions in the above-mentioned Policy, the provisions of this endorsement shall govern.

This Policy and the obligations of the Class II-A Insurer hereunder shall terminate one year and one day from the earlier to occur of (a) the date on which all amounts required to be paid to the Class II-A Holders of the Class II-A Certificates have been paid in full, and (b) the Final Distribution Date. Upon the termination of this Policy, the Trustee shall forthwith deliver the original of this Policy to the Class II-A Insurer.

No waiver of any rights or powers of the Class II-A Insurer, the Class II-A Holders the Securities Administrator or the Trustee or consent by any of them shall be valid unless signed by an authorized officer or agent thereof.

This Policy is issued under and pursuant to, and shall be construed in accordance with, the laws of the State of New York.

6

Form No. 2B-00-22-112 ENDNY (12/05)

IN WITNESS WHEREOF, Ambac Assurance Corporation has caused this endorsement to the Policy to be signed by its duly authorized officers.

_____
Assistant Secretary

_____
First Vice President

Form No. 2B-00-22-112 ENDNY (12/05)