# Exhibit 4

# Ambac

## Certificate Guaranty Insurance Policy

Ambac Assurance Corporation
One State Street Plaza, 15th Floor
New York, New York 10004
Telephone: (212) 668-0340

Insured Obligations:
SACO I Trust 2006-8 Mortgage-Backed Notes,
Series 2006-8 Class A Notes

Policy Number: AB1020BE

Premium:
As specified in the endorsement attached hereto and made a part hereof.

**Ambac Assurance Corporation (Ambac)**, a Wisconsin stock insurance corporation, in consideration of the payment of the premium and subject to the terms of this Policy, hereby agrees unconditionally and irrevocably to pay to the Trustee for the benefit of the Holders of the Insured Obligations, that portion of the Insured Amounts which shall become Due for Payment but shall be unpaid by reason of Nonpayment.

Ambac will make such payments to the Trustee from its own funds on the later of (a) one (1) Business Day following notification to Ambac of Nonpayment or (b) the Business Day on which the Insured Amounts are Due for Payment. Such payments of principal or interest shall be made only upon presentation of an instrument of assignment in form and substance satisfactory to Ambac, transferring to Ambac all rights under such Insured Obligations to receive the principal of and interest on the Insured Obligation. Ambac shall be subrogated to all the Holders' rights to payment on the Insured Obligations to the extent of the insurance disbursements so made. Once payments of the Insured Amounts have been made to the Trustee, Ambac shall have no further obligation hereunder in respect of such Insured Amounts.

In the event the Trustee for the Insured Obligations has notice that any payment of principal or interest on an Insured Obligation which has become Due for Payment and which is made to a Holder by or on behalf of the Trustee has been deemed a preferential transfer and theretofore recovered from its Holder pursuant to the United States Bankruptcy Code in accordance with a final, nonappealable order of a court of competent jurisdiction, such Holder will be entitled to payment from Ambac to the extent of such recovery if sufficient funds are not otherwise available.

This Policy is noncancelable by Ambac for any reason, including failure to receive payment of any premium due hereunder. The premium on this Policy is not refundable for any reason. This Policy does not insure against loss of any prepayment or other acceleration payment which at any time may become due in respect of any Insured Obligation, other than at the sole option of Ambac, nor against any risk other than Nonpayment, including failure of the Trustee to make any payment due Holders of Insured Amounts.

To the fullest extent permitted by applicable law, Ambac hereby waives and agrees not to assert any and all rights and defenses, to the extent such rights and defenses may be available to Ambac, to avoid payment of its obligations under this Policy in accordance with the express provisions hereof.

Any capitalized terms not defined herein shall have the meaning given such terms in the endorsement attached hereto or in the Agreement.

In witness whereof, Ambac has caused this Policy to be affixed with its corporate seal and to be signed by its duly authorized officers in facsimile to become effective as their original signatures and binding upon Ambac by virtue of the countersignature of its duly authorized representative.

*[signature]*
President

*[SEAL]*

*[signature]* Anne G. Gill
Secretary

*[signature]*
Authorized Representative

Effective Date: September 15, 2006

Form No.: 2B-0022 (7/97)

**EXECUTED VERSION**

**CERTIFICATE GUARANTY INSURANCE POLICY ENDORSEMENT**

Attached to and forming part of
Certificate Guaranty Insurance Policy No. AB1020BE
issued to:

Effective Date of Endorsement:
September 15, 2006

Citibank, N.A.,
as Trustee for the benefit of the Class A Holders of
SACO I Trust 2006-8 Mortgage-Backed Notes,
Series 2006-8, Class A Notes

For all purposes of this Policy, the following terms shall have the following meanings:

"Agreement" means, for purposes of the Policy, the Indenture.

"Business Day" means any day other than (i) a Saturday or a Sunday, or (ii) a day on which the New York Stock Exchange or Federal Reserve is closed or on which banking institutions in the jurisdiction in which the Indenture Trustee, the Owner Trustee, the Master Servicer, the Servicers or the Securities Administrator is located are authorized or obligated by law or executive order to be closed.

"Class A Notes" means the Class A Notes, substantially in the form set forth in Exhibit A to the Agreement.

"Current Interest" means, with respect to the Class A Notes and any Payment Date, the interest accrued at the Note Interest Rate for the applicable period on the Note Principal Balance of the Class A Notes reduced by any Relief Act Shortfalls to the extent allocated to the Class A Notes. Current Interest does not include any Net WAC Cap Rate Carryover Amounts or any prepayment interest shortfalls.

"Deficiency Amount" means, with respect to the Class A Notes, (a) for any Payment Date occurring prior to the Final Payment Date, the excess, if any, of Required Interest Distributions over the amount payable on such Payment Date in respect of Current Interest pursuant to the Indenture from all sources other than the Policy, (b) for any Payment Date occurring prior to the Final Payment Date, provided that the Overcollateralization Amount and the Note Principal Balances of the Class B Notes have been reduced to zero, the reduction of the Note Principal Balance of the Class A Notes as a result of the application of the principal portion of any Charge-Off Amounts allocated to reduce the Note Principal Balance of the Class A Notes and (c) without duplication of any amounts paid pursuant to clause (b) above, for the Final Payment Date, the sum of (x) the amount set forth in clause (a) above and (y) the aggregate Note Principal Balance of the Class A Notes, after giving effect to all payments of principal on the Class A Notes on that Payment Date from all sources other than the Policy.

"Due for Payment" means, with respect to any Insured Amounts, such amount is due and payable pursuant to the terms of the Agreement.

"Final Payment Date" means the Payment Date in June 2036.

"First Payment Date" means September 25, 2006.

"Holder" means the registered owner or beneficial owner of any Class A Note, but shall not include the Trustee, the Owner Trustee, the Securities Administrator, the Seller, the Master Servicer, the Servicers, the Originators, the Depositor or any of their Affiliates.

"Home Loan Interest Shortfalls" means any Basis Risk Shortfalls, Net WAC Cap Rate Carryover Amounts, Relief Act Shortfalls and prepayment interest shortfalls.

"Indenture" means the Indenture (including Appendix A thereto), dated as of September 15, 2006, by and among SACO I Trust 2006-8, as Issuing Entity, Citibank, N.A., as Indenture Trustee, and LaSalle Bank National Association, as Securities Administrator, as such Indenture may be amended, modified or supplemented from time to time as set forth in the Indenture.

"Insurance Agreement" means the Insurance and Indemnity Agreement, dated as of September 15, 2006, by and among the Note Insurer, Bear Stearns Asset Backed Securities LLC, as Depositor, the Seller, the Master Servicer, the Securities Administrator, SACO I Trust 2006-8, as Issuing Entity, and the Trustee, as such agreement may be amended, modified or supplemented from time to time.

"Insured Amounts" means, with respect to any Payment Date, any Deficiency Amount for such Payment Date.

"Insured Payments" means the aggregate amount actually paid by the Note Insurer to the Trustee or to the Securities Administrator on behalf of the Trustee, as applicable, in respect of (i) Insured Amounts for any Payment Date and (ii) Preference Amounts for any given Business Day.

"Late Payment Rate" means for any Payment Date, the greater of (i) the rate of interest, as it is publicly announced by Citibank, N.A. at its principal office in New York, New York as its prime rate (any change in such prime rate of interest to be effective on the date such change is announced by Citibank, N.A.) plus 2% and (ii) the then applicable highest rate of interest on the Class A Notes. The Late Payment Rate shall be computed on the basis of a year of 360 days and the actual number of days elapsed. In no event shall the Late Payment Rate exceed the maximum rate permissible under any applicable law limiting interest rates.

"Nonpayment" means, with respect to any Payment Date, an Insured Amount is Due for Payment but has not been paid pursuant to the Agreement.

"Note Insurer" means Ambac Assurance Corporation, a Wisconsin-domiciled stock insurance corporation, or any successor thereto, as issuer of the Policy.

2

"Notice" means the telephonic or telegraphic notice, promptly confirmed in writing by facsimile, substantially in the form of Exhibit A to this Policy, the original of which is subsequently delivered by registered or certified mail, executed by the Trustee or the Securities Administrator on behalf of the Trustee and delivered by the Securities Administrator on behalf of the Trustee or the Trustee specifying the Insured Amount which shall be due and owing on the applicable Payment Date.

"Payment Date" means the 25th day of any month (or if such 25th day is not a Business Day, the first Business Day immediately following) beginning on the First Payment Date.

"Policy" means this Certificate Guaranty Insurance Policy together with each and every endorsement hereto.

"Preference Amount" means any payment of principal or interest on a Class A Note which has become Due for Payment and which is made to a Holder by or on behalf of the Securities Administrator or the Trustee which has been deemed a preferential transfer and was previously recovered from a Holder pursuant to the United States Bankruptcy Code in accordance with a final, non-appealable order of a court of competent jurisdiction.

"Premium" means the amount payable to the Note Insurer on each Payment Date calculated at the Premium Percentage.

"Premium Percentage" shall have the meaning set forth in the Insurance Agreement.

"Reimbursement Amount" means, with respect to any Payment Date, the sum of (x) (i) all Insured Payments paid by the Note Insurer, but for which the Note Insurer has not been reimbursed prior to such Payment Date pursuant to Section 3.02 of the Agreement, plus (ii) interest accrued on such Insured Payments not previously repaid calculated at the Late Payment Rate from the date the Trustee or the Securities Administrator, as applicable, received the related Insured Payments, and (y) without duplication (i) any amounts then due and owing to the Note Insurer under the Insurance Agreement, as certified to the Trustee and the Securities Administrator by the Note Insurer plus (ii) interest on such amounts at the Late Payment Rate.

"Relief Act Shortfalls" means interest shortfalls resulting from the application of the Servicemembers' Civil Relief Act of 1940, as amended, or any similar state law.

"Required Interest Distributions" means, with respect to the Class A Notes and any Payment Date, the Current Interest payable to the Class A Notes on such Payment Date.

"Securities Administrator" means LaSalle Bank National Association, in its capacity as Securities Administrator under the Agreement, or if any successor Securities Administrator shall be appointed as provided therein, then "Securities Administrator" shall also mean such successor Securities Administrator, subject to the provisions thereof.

"Trustee" means Citibank, N.A., in its capacity as Indenture Trustee under the Agreement, or if any successor Indenture Trustee shall be appointed as provided therein, then "Trustee" shall also mean such successor indenture trustee, subject to the provisions thereof.

3

Capitalized terms used herein as defined terms and not otherwise defined herein shall have the meaning assigned to them in the Insurance Agreement and the Agreement (including Appendix A thereto), without regard to any amendment or modification thereof, unless such amendment or modification has been approved in writing by the Note Insurer.

Notwithstanding any other provision of the Policy, the Note Insurer will pay any Insured Amount payable hereunder to the Securities Administrator on behalf of the Trustee for the benefit of the Holders no later than 12:00 noon, New York City time, on the later of (i) the Payment Date on which the related Insured Amount is due and (ii) the second Business Day following receipt in New York, New York on a Business Day by the Note Insurer of a Notice at the address and in the manner provided in Section 6.02 of the Insurance Agreement; provided that, if such Notice is received after 12:00 noon, New York City time, on such Business Day, it shall be deemed to be received on the following Business Day. If any such Notice is not in proper form or is otherwise insufficient for the purpose of making a claim under the Policy, it shall be deemed not to have been received for purposes of this paragraph, and the Note Insurer shall promptly so advise the Securities Administrator or the Trustee, as applicable, and the Securities Administrator or the Trustee, as applicable, may submit an amended or corrected Notice.

As provided in the third paragraph of the Policy, the Note Insurer shall pay any Preference Amount when due to be paid pursuant to the Order referred to below, but in any event no earlier than the third Business Day following receipt by the Note Insurer of (i) a certified copy of a final, non-appealable order of a court or other body exercising jurisdiction in such insolvency proceeding to the effect that the Securities Administrator, the Trustee, or the Holder, as applicable, is required to return such Preference Amount paid during the term of this Policy because such payments were avoided as a preferential transfer or otherwise rescinded or required to be restored by the Securities Administrator, the Trustee or the Holder (the "Order"), (ii) a certificate by or on behalf of the Securities Administrator, the Trustee or the Holder that the Order has been entered and is not subject to any stay, (iii) an assignment, in form and substance satisfactory to the Note Insurer, duly executed and delivered by the Securities Administrator, the Trustee or the Holder, irrevocably assigning to the Note Insurer all rights and claims of the Securities Administrator, the Trustee or the Holder relating to or arising under the Agreement against the estate of the Securities Administrator or the Trustee or otherwise with respect to such Preference Amount and (iv) a Notice (in the form attached hereto as Exhibit A) appropriately completed and executed by the Securities Administrator or the Trustee; provided, that if such documents are received after 12:00 noon, New York City time, on such Business Day, they will be deemed to be received on the following Business Day; provided, further, that the Note Insurer shall not be obligated to make any payment in respect of any Preference Amount representing a payment of principal on the Class A Notes prior to the time the Note Insurer would have been required to make a payment in respect of such principal pursuant to the first paragraph of the Policy. Such payment shall be disbursed to the receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order, and not to the Holder directly, unless the Holder has made a payment of the Preference Amount to the court or such receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order, in which case the Note Insurer will pay the Securities Administrator on behalf of the Trustee for the benefit of the Holder, subject to the delivery of (a) the items referred to in clauses (i), (ii), (iii) and (iv) above to the Note Insurer and

4

(b) evidence satisfactory to the Note Insurer that payment has been made to such court or receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order.

With respect to any claim for payment hereunder for an Insured Amount or Preference Amount, the Note Insurer shall be obligated to pay such amount only once, notwithstanding that it may have received a Notice from both the Trustee and the Securities Administrator with respect to such claim.

The Note Insurer hereby agrees that if it shall be subrogated to the rights of the Holders by virtue of any payment under this Policy, no recovery of such payment will occur unless the full amount of the Holders' allocable distributions for such Payment Date can be made. In so doing, the Note Insurer does not waive its rights to seek full payment of all Reimbursement Amounts owed to it under the Insurance Agreement and the Agreement.

The Policy does not cover Home Loan Interest Shortfalls allocated to the Class A Notes, nor does the Policy guaranty to the Holders any particular rate of principal payment. In addition, the Policy does not cover shortfalls, if any, attributable to the liability of the Issuer, any REMIC thereof, the Trustee or the Securities Administrator for withholding taxes due on the payments made to the Holders, if any (including interest and penalties in respect of any such liability) nor any risk other than Nonpayment, including the failure of the Securities Administrator or the Trustee to make any payment required under the Agreement to the Holders. In addition, this Policy does not cover any interest shortfalls resulting from any Extraordinary Trust Fund Expenses payable to any party subject to the Extraordinary Trust Fund Expenses Cap.

The terms and provisions of the Agreement constitute the instrument of assignment referred to in the second paragraph of the face of this Policy.

A Premium will be payable on this Policy on each Payment Date as provided in Section 3.02 of the Agreement, beginning with the First Payment Date, in an amount equal to the Premium.

**THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE SEVENTY-SIX OF THE NEW YORK INSURANCE LAWS.**

In the event of a payment default by or insolvency of the Issuer, there shall be no acceleration of the payments required to be made under the Policy unless such acceleration is at the sole option of the Note Insurer.

The Note Insurer's obligation to make payment hereunder with respect to a particular Insured Amount or Preference Amount shall be discharged to the extent funds equal to the applicable Insured Amount or Preference Amount are received by the Trustee, the Securities Administrator on behalf of the Trustee or any other paying agent of the Trustee, whether or not such funds are properly applied by the Trustee, the Securities Administrator on behalf of the Trustee or such paying agent.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

To the extent the provisions of this endorsement conflict with the provisions in the above-mentioned Policy, the provisions of this endorsement shall govern.

This Policy and the obligations of the Note Insurer hereunder shall terminate one year and one day from the earlier to occur of (a) the date on which all amounts required to be paid to the Holders of the Class A Notes have been paid in full, and (b) the Final Payment Date. Upon the termination of this Policy, the Trustee shall forthwith deliver the original of this Policy to the Note Insurer.

No waiver of any rights or powers of the Note Insurer, the Holders, the Securities Administrator or the Trustee or consent by any of them shall be valid unless signed by an authorized officer or agent thereof.

This Policy is issued under and pursuant to, and shall be construed in accordance with, the laws of the State of New York.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, Ambac Assurance Corporation has caused this endorsement to the Policy to be signed by its duly authorized officers.

_____
Assistant Secretary

_____
First Vice President