# Exhibit 7

SACO I TRUST 2006-8

Issuing Entity,

LASALLE BANK NATIONAL ASSOCIATION

Securities Administrator

and

CITIBANK, N.A.

Indenture Trustee

INDENTURE

Dated as of September 15, 2006

MORTGAGE-BACKED NOTES

TABLE OF CONTENTS

<u>Section</u>                                                                                                <u>Page</u>

## ARTICLE I
### DEFINITIONS

Section 1.01   Definitions..............................................................................................................7
Section 1.02   Incorporation by Reference of Trust Indenture Act..................................................7
Section 1.03   Rules of Construction ............................................................................................7

## ARTICLE II
### ORIGINAL ISSUANCE OF NOTES

Section 2.01   Form.......................................................................................................................9
Section 2.02   Execution, Authentication and Delivery..................................................................9

## ARTICLE III
### COVENANTS

Section 3.01   Existence...............................................................................................................10
Section 3.02   Payment of Principal and Interest. .......................................................................10
Section 3.03   Protection of Trust Estate.....................................................................................13
Section 3.04   Opinions as to Trust Estate ..................................................................................14
Section 3.05   Performance of Obligations ..................................................................................15
Section 3.06   Negative Covenants .............................................................................................15
Section 3.07   Annual Statement as to Compliance .....................................................................16
Section 3.08   Representations and Warranties Concerning the HELOCs .....................................16
Section 3.09   Investment Company Act .....................................................................................16
Section 3.10   No Other Business ................................................................................................16
Section 3.11   No Borrowing .......................................................................................................16
Section 3.12   Guarantees, Loans, Advances and Other Liabilities...............................................17
Section 3.13   Capital Expenditures.............................................................................................17
Section 3.14   Determination of Note Interest Rate. ....................................................................17
Section 3.15   Restricted Payments..............................................................................................17
Section 3.16   Notice of Events of Default ..................................................................................17
Section 3.17   Further Instruments and Acts.................................................................................17
Section 3.18   Certain Representations Regarding the Trust Estate. ............................................18
Section 3.19   Allocation of Charge-Off Amounts .......................................................................18
Section 3.20   Claims on the Policy; Policy Payments Account.....................................................19

## ARTICLE IV
### THE NOTES; SATISFACTION AND DISCHARGE OF INDENTURE

Section 4.01   The Notes..............................................................................................................23
Section 4.02   Registration of and Limitations on Transfer and Exchange of Notes;
                        Appointment of Note Registrar and Certificate Registrar ......................................23

Section 4.03    Mutilated, Destroyed, Lost or Stolen Notes..............................................24
Section 4.04    Persons Deemed Owners ............................................................................25
Section 4.05    Cancellation ...............................................................................................25
Section 4.06    Book-Entry Notes .......................................................................................26
Section 4.07    Notices to Depository .................................................................................26
Section 4.08    Definitive Notes ..........................................................................................27
Section 4.09    Application of Trust Money..........................................................................27
Section 4.10    Subrogation and Cooperation ....................................................................28
Section 4.11    Repayment of Monies Held by Paying Agent .............................................29
Section 4.12    Temporary Notes ........................................................................................29
Section 4.13    Representation Regarding ERISA ...............................................................29

ARTICLE V
DEFAULT AND REMEDIES

Section 5.01    Events of Default ........................................................................................30
Section 5.02    Acceleration of Maturity; Rescission and Annulment...................................30
Section 5.03    Collection of Indebtedness and Suits for Enforcement by Indenture
                Trustee.........................................................................................................31
Section 5.04    Remedies; Priorities....................................................................................33
Section 5.05    Optional Preservation of the Trust Estate ...................................................34
Section 5.06    Limitation of Suits .......................................................................................35
Section 5.07    Unconditional Rights of Noteholders To Receive Principal and Interest.............35
Section 5.08    Restoration of Rights and Remedies............................................................36
Section 5.09    Rights and Remedies Cumulative.................................................................36
Section 5.10    Delay or Omission Not a Waiver..................................................................36
Section 5.11    Control By Note Insurer and Noteholders ...................................................36
Section 5.12    Waiver of Past Defaults ...............................................................................37
Section 5.13    Undertaking for Costs..................................................................................37
Section 5.14    Waiver of Stay or Extension Laws ...............................................................37
Section 5.15    Sale of Trust Estate .....................................................................................38
Section 5.16    Action on Notes ...........................................................................................40

ARTICLE VI
THE INDENTURE TRUSTEE AND THE SECURITIES ADMINISTRATOR

Section 6.01    Duties of Indenture Trustee and Securities Administrator .....................................41
Section 6.02    Rights of Indenture Trustee and Securities Administrator .....................................42
Section 6.03    Individual Rights of Indenture Trustee .....................................................................45
Section 6.04    Indenture Trustee's and Securities Administrator's Disclaimer.............................45
Section 6.05    Notice of Event of Default...........................................................................45
Section 6.06    Reports to Residual Certificateholders ......................................................45
Section 6.07    Compensation .............................................................................................46
Section 6.08    Replacement of Indenture Trustee and the Securities Administrator ....................46
Section 6.09    Successor Indenture Trustee and Securities Administrator by Merger ................47
Section 6.10    Appointment of Co-Indenture Trustee or Separate Indenture Trustee .................48
Section 6.11    Eligibility; Disqualification ................................................................................49
Section 6.12    Representations and Warranties...........................................................................50

Section 6.13    Representations and Warranties..................................................................50
Section 6.14    Directions to Indenture Trustee and the Securities Administrator.........................51
Section 6.15    The Agents.................................................................................................51

## ARTICLE VII
### NOTEHOLDERS' LISTS AND REPORTS

Section 7.01    Issuing Entity To Furnish Securities Administrator and Indenture Trustee
                Names and Addresses of Noteholders ...........................................................52
Section 7.02    Preservation of Information; Communications to Noteholders..............................52
Section 7.03    Financial Information....................................................................................52
Section 7.04    Statements to Noteholders and Certificateholders...........................................52

## ARTICLE VIII
### ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01    Collection of Money .....................................................................................56
Section 8.02    Officer's Certificate ....................................................................................56
Section 8.03    Termination Upon Distribution to Noteholders.................................................56
Section 8.04    Release of Trust Estate................................................................................56
Section 8.05    Surrender of Notes Upon Final Payment ........................................................57
Section 8.06    Optional Redemption of the HELOCs.............................................................57

## ARTICLE IX
### SUPPLEMENTAL INDENTURES

Section 9.01    Supplemental Indentures Without Consent of Noteholders.................................60
Section 9.02    Supplemental Indentures With Consent of Noteholders....................................61
Section 9.03    Execution of Supplemental Indentures ...........................................................63
Section 9.04    Effect of Supplemental Indenture ..................................................................63
Section 9.05    Conformity with Trust Indenture Act ..............................................................63
Section 9.06    Reference in Notes to Supplemental Indentures...............................................63

## ARTICLE X
### TAX MATTERS

Section 10.01   Description of REMICs and Designation of REMIC Interests..............................64
Section 10.02   REMIC Elections and REMIC Distributions.....................................................66
Section 10.03   Allocation of Charge-Off Amounts. ...............................................................68
Section 10.04   Tax Administration. .....................................................................................68
Section 10.05   Tax Treatment of Net WAC Cap Rate Carryover Amounts................................71

## ARTICLE XI
### MISCELLANEOUS

Section 11.01   Compliance Certificates and Opinions, etc.....................................................73
Section 11.02   Form of Documents Delivered to Indenture Trustee .........................................74
Section 11.03   Acts of Noteholders .....................................................................................75
Section 11.04   Notices etc., to Indenture Trustee Issuing Entity, Securities Administrator,
                Note Insurer and Rating Agencies .................................................................75

3

Section 11.05  Notices to Noteholders; Waiver ............................................................................76
Section 11.06  Conflict with Trust Indenture Act .........................................................................77
Section 11.07  Effect of Headings ................................................................................................77
Section 11.08  Successors and Assigns .........................................................................................77
Section 11.09  Separability ............................................................................................................77
Section 11.10  Legal Holidays ......................................................................................................77
Section 11.11  GOVERNING LAW ..............................................................................................77
Section 11.12  Counterparts ..........................................................................................................78
Section 11.13  Recording of Indenture .........................................................................................78
Section 11.14  Issuing Entity Obligation ......................................................................................78
Section 11.15  No Petition .............................................................................................................78
Section 11.16  Inspection ..............................................................................................................78
Section 11.17  Benefits of Indenture .............................................................................................79
Section 11.18  Securities Administrator to Hold Policy ...............................................................79

EXHIBITS

Exhibit A-1    —    Form of Class A Notes
Exhibit A-2    —    Form of Class A-IO Notes
Exhibit A-3    —    Form of Class B Notes
Exhibit B      —    Mortgage Loan Schedule
Exhibit C      —    Form of Transferee Certificate
Exhibit D      —    Form of Transferor Certificate
Exhibit E      —    Form of Mortgage Loan Purchase Agreement

4

This Indenture, dated as of September 15, 2006, is entered into among SACO I Trust 2006-8, a Delaware statutory trust, as Issuing Entity (the "Issuing Entity"), LaSalle Bank National Association, as Securities Administrator (the "Securities Administrator") and Citibank, N.A., as Indenture Trustee (the "Indenture Trustee").

## WITNESSETH THAT:

Each party hereto agrees as follows for the benefit of the other party and for the equal and ratable benefit of the Holders of the Issuing Entity's Mortgage-Backed Notes, Series 2006-8 (the "Notes") and the Note Insurer.

## GRANTING CLAUSE

The Issuing Entity hereby Grants to the Indenture Trustee at the Closing Date, as trustee for the benefit of the Holders of the Notes and the Note Insurer, all of the Issuing Entity's right, title and interest in and to, whether now existing or hereafter created, (a) the HELOCs; (b) all funds on deposit from time to time in the Master Servicer Collection Account, excluding any investment income from such funds; (c) all funds on deposit from time to time in the Payment Account and in all proceeds thereof; (d) any REO Property; (e) all rights under (I) the Mortgage Loan Purchase Agreement as assigned to the Issuing Entity, with respect to the HELOCs, (II) the Required Insurance Policies and any amounts paid or payable by the insurer under any Insurance Policy (to the extent the mortgagee has a claim thereto) and (III) the rights with respect to the Sale and Servicing Agreement and the Servicing Agreement, as assigned to the Issuing Entity by the Assignment Agreement; and (f) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in respect of, any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing (collectively, the "Trust Estate" or the "Collateral").

In addition, the Indenture Trustee and the Securities Administrator, on behalf of the Holders of the Class A Notes, will have the benefit of the Policy.

The foregoing Grant is made in trust to secure the payment of principal of and interest on, and any other amounts owing in respect of, the Notes, subject to the priority set forth herein, and to secure compliance with the provisions of this Indenture, all as provided in this Indenture.

The Indenture Trustee, as trustee on behalf of the Holders of the Notes and the Note Insurer, acknowledges such Grant, accepts the trust under this Indenture in accordance with the provisions hereof and each of the Indenture Trustee and the Securities Administrator agree to perform their respective duties as Indenture Trustee and Securities Administrator as required herein. The Securities Administrator, on behalf of the Indenture Trustee, agrees that it will hold the Policy in trust and that it will hold any proceeds of any claim made upon the Policy solely for

5

the use and benefit of the Holders of the Class A Notes in accordance with the terms hereof and
the terms of the Policy.

## ARTICLE I

### DEFINITIONS

Section 1.01  Definitions.  For all purposes of this Indenture, except as otherwise expressly provided herein or unless the context otherwise requires, capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Definitions attached hereto as Appendix A which is incorporated by reference herein. All other capitalized terms used herein shall have the meanings specified herein.

Section 1.02  Incorporation by Reference of Trust Indenture Act.  Whenever this Indenture refers to a provision of the Trust Indenture Act (the "TIA"), the provision is incorporated by reference in and made a part of this Indenture. The following TIA terms used in this Indenture have the following meanings:

"Commission" means the Securities and Exchange Commission.

"indenture securities" means the Notes.

"indenture security holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Indenture Trustee.

"obligor" on the indenture securities means the Issuing Entity and any other obligor on the indenture securities.

All other TIA terms used in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by Commission rules have the meanings assigned to them by such definitions.

Section 1.03  Rules of Construction. Unless the context otherwise requires:

(i)  a term has the meaning assigned to it;

(ii)  an accounting term not otherwise defined has the meaning assigned to it in accordance with generally accepted accounting principles as in effect from time to time;

(iii)  "or" is not exclusive;

(iv)  "including" means including without limitation;

(v)  words in the singular include the plural and words in the plural include the singular; and

(vi)  any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and includes (in the case of

7

agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns.

## ARTICLE II

### ORIGINAL ISSUANCE OF NOTES

Section 2.01   Form.   The Class A, Class A-IO and Class B Notes, together with the Securities Administrator's certificate of authentication, shall be in substantially the form set forth in Exhibits A-1, A-2 and A-3 to this Indenture, as applicable, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture.

The Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these methods (with or without steel engraved borders).

The terms of the Notes set forth in Exhibits A-1, A-2 and A-3 to this Indenture are part of the terms of this Indenture.

Section 2.02   Execution, Authentication and Delivery.   The Notes shall be executed on behalf of the Issuing Entity by any of its Authorized Officers. The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issuing Entity shall bind the Issuing Entity, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of such Notes.

The Securities Administrator shall upon Issuing Entity Request authenticate and deliver each Class of Notes for original issue in an aggregate initial principal amount equal to the Initial Note Principal Balance or Notional Amount, as applicable, for such Class of Notes.

Each of the Notes shall be dated the date of its authentication. The Notes shall be issuable as registered Notes in book-entry form, in the minimum initial Note Principal Balances or Notional Amounts, as applicable, of $100,000 and in integral multiples of $1 in excess thereof.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication substantially in the form provided for herein executed by the Securities Administrator by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

## ARTICLE III

## COVENANTS

Section 3.01    Existence.  The Issuing Entity will keep in full effect its existence, rights and franchises as a statutory trust under the laws of the State of Delaware (unless it becomes, or any successor Issuing Entity hereunder is or becomes, organized under the laws of any other state or of the United States of America, in which case the Issuing Entity will keep in full effect its existence, rights and franchises under the laws of such other jurisdiction) and will obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Notes and each other instrument or agreement included in the Trust Estate.

Section 3.02    Payment of Principal and Interest.

(a)    On each Payment Date, the Floating Allocation Percentage of the Interest Collection Amount for such Payment Date, reduced by the servicing and master servicing fees, will be distributed in the following order of priority:

1.  to the Note Insurer, the current and any past due premium due for the Policy;

2.  to the Class A Notes and the Class A-IO Notes, pro rata, the Current Interest and any Unpaid Interest Shortfall Amount for such Payment Date;

3.  to the Note Insurer, as reimbursement for prior draws (including applicable interest) made under the Policy;

4.  to the Class B Notes, the related Current Interest for such Class and Payment Date;

5.  on each Payment Date prior to the Payment Date in September 2007, to the Class E Interest and Class E Certificates, the lesser of (i) $20,000 and (ii) the Interest Collection Amount for such Payment Date remaining following the payments pursuant to clauses (1)-(4) above;

6.  from amounts otherwise distributable to the Class E Interest and the Class E Certificates, to the Classes of Notes (other than the Class A-IO Notes), as a payment of principal, the amount necessary to build the Overcollateralization Amount to the Overcollateralization Target Amount, including covering the Floating Allocation Percentage of the Charge-Off Amounts during the related Collection Period;

7.  to cover any Charge-Off Amounts allocated to the Class A Notes (to the extent not covered by the Policy);

8.  to the Class B Notes, any Unpaid Interest Shortfall Amount for such Payment Date and such Class;

9. from amounts otherwise distributable to the Class E Certificates, to the Net WAC Cap Rate Carryover Reserve Account, (i) first to pay the Class A Notes and Class A-IO Notes, pro rata, and then to the Class B Notes, any Net WAC Cap Rate Carryover Amount for such Payment Date and such Class to the extent such amount exceeds the amounts then on deposit in the WAC Cap Rate Carryover Reserve Account, and (ii) second, to maintain a balance equal to the Net WAC Cap Rate Carryover Reserve Account Deposit;

10. to the Note Insurer, any other amounts owed to the Note Insurer pursuant to the Insurance Agreement;

11. to the Class E Interest, and to the Certificate Paying Agent for distribution to the Class E Certificates, as specified in the Trust Agreement, any remaining amounts not exceeding the Class E Distribution Amount reduced by amounts distributed in clauses (5), (6) and (9);

12. to the Certificate Paying Agent for distribution to the Residual Certificates, as specified in the Trust Agreement.

(b)     (1)     On each Payment Date, the Class S Floating Allocation Percentage of the Interest Collection Amount for such Payment Date shall be distributed to the holders of the Class S Certificates.

(2)     On each Payment Date during the Managed Amortization Period, the Class S Principal Payment Amount shall be distributed to the holders of the Class S Certificates, until their Certificate Principal Balance has been reduced to zero.

(c)     On each Payment Date, the Available Principal Payment Amount will be distributed as principal funds in the following order of priority:

(1)     For each Payment Date prior to the Stepdown Date or on which a Trigger Event is in effect:

(i) to the Class A Notes, the Available Principal Payment Amount for such Payment Date, until the Note Principal Balance thereof is reduced to zero;

(ii) to the Note Insurer, as reimbursement for prior draws (including applicable interest) made under the Policy, to the extent not covered by the Interest Collection Amount;

(iii) to the Class B Notes, the remaining Available Principal Payment Amount, in each case until the Note Principal Balance of such Class has been reduced to zero;

(iv) during the Rapid Amortization Period, to the Class S Certificates, in reduction of the Certificate Principal Balance thereof, until the Certificate Principal Balance is reduced to zero;

11

(v) to the Note Insurer, any other amounts owed to the Note Insurer pursuant to the Insurance Agreement;

(vi) to the Class E Interest, and to the Certificate Paying Agent for distribution to the Class E Certificates, as specified in the Trust Agreement, any remaining amounts up to the portion of the Class E Distribution Amount remaining after the distributions made pursuant to Section 3.02(a); and

(vii) to the Certificate Paying Agent for distribution to the Residual Certificates, as specified in the Trust Agreement.

(2)     For each Payment Date on or after the Stepdown Date, so long as a Trigger Event is not in effect:

(i) to the Class A Notes, the Class A Principal Payment Amount, for such Payment Date, until the Note Principal Balance thereof is reduced to zero;

(ii) to the Note Insurer, as reimbursement for prior draws (including applicable interest) made under the Policy, to the extent not covered by the Interest Collection Amount;

(iii) to the Class B Notes, the Class B Principal Payment Amount for such Payment Date, until the Note Principal Balance thereof is reduced to zero;

(iv) during the Rapid Amortization Period, to the Class S Certificates, in reduction of the Certificate Principal Balance thereof, until the Certificate Principal Balance is reduced to zero;

(v) to the Note Insurer, any other amounts owed to the Note Insurer pursuant to the Insurance Agreement;

(vi) to the Class E Interest, and to the Certificate Paying Agent for distribution to the Class E Certificates, as specified in the Trust Agreement, any remaining amounts up to the portion of the Class E Distribution Amount remaining after the distributions made pursuant to Section 3.02(a); and

(vii) to the Certificate Paying Agent for distribution to the Residual Certificates, as specified in the Trust Agreement.

(d)     No Current Interest will be payable with respect to any Class of Notes after the Payment Date on which the Note Principal Balance of such Note has been reduced to zero.

(e)     Each distribution with respect to a Book-Entry Note shall be paid to the Depository, as Holder thereof, and the Depository shall be responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures. Each Depository Participant shall be responsible for disbursing such distribution to the Note Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm" or "indirect participating firm") for which it acts as agent. Each brokerage firm shall be

12

responsible for disbursing funds to the Note Owners that it represents. None of the Securities Administrator, the Note Registrar, the Paying Agent, the Depositor or the Master Servicer shall have any responsibility therefor.

(f)     On each Payment Date, the Certificate Paying Agent shall deposit in the Payment Account all amounts it received pursuant to this Section 3.02 for the purpose of distributing such funds to the Certificateholders. The Certificate Paying Agent shall make distributions to the Certificateholders under the Trust Agreement as directed by the Securities Administrator hereunder.

(g)     Any installment of interest or principal, if any, payable on any Note that is punctually paid or duly provided for by the Issuing Entity on the applicable Payment Date shall, if such Holder shall have so requested at least five Business Days prior to the related Record Date, be paid to each Holder of record on the preceding Record Date, by wire transfer to an account specified in writing by such Holder as of the preceding Record Date or in all other cases or if no such instructions have been delivered to the Securities Administrator, by check to such Noteholder mailed to such Holder's address as it appears in the Note Register in the amount required to be distributed to such Holder on such Payment Date pursuant to such Holder's Notes; provided, however, that the Securities Administrator shall not pay to such Holders any amount required to be withheld from a payment to such Holder by the Code.

(h)     The Note Principal Balance of each Note (other than the Class A-IO Notes) shall be due and payable in full on the Final Scheduled Payment Date. All principal payments on the Notes shall be made to the Noteholders entitled thereto in accordance with the Percentage Interests represented by such Notes. Upon notice to the Securities Administrator by the Issuing Entity, the Securities Administrator shall notify the Person in whose name a Note is registered at the close of business on the Record Date preceding the Final Scheduled Payment Date or other final Payment Date (including any final Payment Date resulting from any redemption pursuant to Section 8.06 hereof). Such notice shall to the extent practicable be mailed no later than five Business Days prior to such Final Scheduled Payment Date or other final Payment Date and shall specify that payment of the principal amount and any interest due with respect to such Note at the Final Scheduled Payment Date or other final Payment Date will be payable only upon presentation and surrender of such Note and shall specify the place where such Note may be presented and surrendered for such final payment. No interest shall accrue on the Notes on or after the Final Scheduled Payment Date or any such other final Payment Date.

Section 3.03    Protection of Trust Estate. (a) The Issuing Entity will from time to time prepare, execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i)     maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof;

(ii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

13

(iii)    cause the Issuing Entity or the Securities Administrator to enforce any of the rights to the HELOCs; or

(iv)    preserve and defend title to the Trust Estate and the rights of the Indenture Trustee, the Note Insurer and the Noteholders in such Trust Estate against the claims of all persons and parties.

(b) Except as otherwise provided in this Indenture, the Indenture Trustee shall not remove or permit the Custodian to remove any portion of the Trust Estate that consists of money or is evidenced by an instrument, certificate or other writing from the jurisdiction in which it was held at the date of the most recent Opinion of Counsel delivered pursuant to Section 3.04 hereof (or from the jurisdiction in which it was held as described in the Opinion of Counsel delivered on the Closing Date pursuant to Section 3.04(a) hereof, if no Opinion of Counsel has yet been delivered pursuant to Section 3.04(b) hereof), unless the Indenture Trustee shall have first received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions.

The Issuing Entity hereby designates the Securities Administrator its agent and attorney-in-fact to sign any financing statement, continuation statement or other instrument required to be signed pursuant to this Section 3.03 upon the Issuing Entity's preparation thereof and delivery to the Indenture Trustee.

Section 3.04   Opinions as to Trust Estate.   (a)  On the Closing Date, the Issuing Entity shall furnish to the Indenture Trustee, the Note Insurer and the Owner Trustee an Opinion of Counsel either stating that, in the opinion of such counsel, such action has been taken with respect to the recording and filing of this Indenture, any indentures supplemental hereto, and any other requisite documents, and with respect to the execution and filing of any financing statements and continuation statements, as are necessary to perfect and make effective the lien and first priority security interest in the Collateral and reciting the details of such action, or stating that, in the opinion of such counsel, no such action is necessary to make such lien and first priority security interest effective.

(b)    On or before December 31st in each calendar year, beginning in 2006, the Issuing Entity shall furnish to the Indenture Trustee and the Note Insurer an Opinion of Counsel at the expense of the Issuing Entity either stating that, in the opinion of such counsel, such action has been taken with respect to the recording, filing, rerecording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and with respect to the execution and filing of any financing statements and continuation statements as is necessary to maintain the lien and security interest in the Collateral and reciting the details of such action or stating that in the opinion of such counsel no such action is necessary to maintain such lien and security interest. Such Opinion of Counsel shall also describe the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and the execution and filing of any financing statements and continuation statements that will, in the opinion of such counsel, be required to maintain the lien and security interest in the Collateral until December 31 in the following calendar year.

14

Section 3.05 <u>Performance of Obligations</u>. (a) The Issuing Entity will punctually perform and observe all of its obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included in the Trust Estate.

(b) The Issuing Entity, with the consent of the Note Insurer so long as no Note Insurer Default exists, may contract with other Persons to assist it in performing its duties under this Indenture, and any performance of such duties by a Person identified to the Indenture Trustee in an Officer's Certificate of the Issuing Entity shall be deemed to be action taken by the Issuing Entity.

(c) The Issuing Entity will not take any action or permit any action to be taken by others which would release any Person from any of such Person's covenants or obligations under any of the documents relating to the HELOCs or under any instrument included in the Trust Estate, or which would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any of the documents relating to the HELOCs or any such instrument, except such actions as the Master Servicer is expressly permitted to take in the Sale and Servicing Agreement.

(d) The Issuing Entity may retain an administrator and may enter into contracts acceptable to the Note Insurer with other Persons for the performance of the Issuing Entity's obligations hereunder, and performance of such obligations by such Persons shall be deemed to be performance of such obligations by the Issuing Entity.

(e) The Issuing Entity will perform and observe all of its obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included in the Trust Estate and take such other actions, all as may be required to have the Trust Estate qualify as one or more REMICs formed pursuant to the Indenture.

Section 3.06 <u>Negative Covenants</u>. So long as any Notes are Outstanding, the Issuing Entity shall not:

(i) except as expressly permitted by this Indenture, sell, transfer, exchange or otherwise dispose of the Trust Estate without the consent of the Note Insurer (if applicable);

(ii) (A) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the Notes under this Indenture except as may be expressly permitted hereby, (B) permit any lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Trust Estate or any part thereof or any interest therein or the proceeds thereof or (C) permit the lien of this Indenture not to constitute a valid first priority security interest in the Trust Estate;

(iii) waive or impair, or fail to assert rights under, the HELOCs, or impair or cause to be impaired the Issuing Entity's interest in the HELOCs, the Mortgage Loan Purchase Agreement or in any Basic Document, if any such action would materially and adversely affect the interests of the Noteholders, the Certificateholders or the Note Insurer; or

(iv) take any action or fail to take any action that would cause any REMIC created hereunder to cease to qualify as a REMIC or result in an imposition of tax on the Issuing Entity (including, but not limited to, the tax on prohibited transactions under Section 860F of the Code).

Section 3.07 Annual Statement as to Compliance. The Issuing Entity will deliver to the Indenture Trustee, the Securities Administrator and the Note Insurer, by March 1 of each year commencing with the calendar year 2007, an Officer's Certificate stating, as to the Authorized Officer signing such Officer's Certificate, that:

(i) a review of the activities of the Issuing Entity during the previous calendar year and of its performance under this Indenture and the Trust Agreement has been made under such Authorized Officer's supervision; and

(ii) to the best of such Authorized Officer's knowledge, based on such review, the Issuing Entity has complied with all conditions and covenants under this Indenture and the provisions of the Trust Agreement throughout such year, or, if there has been a default in its compliance with any such condition or covenant, specifying each such default known to such Authorized Officer and the nature and status thereof.

Section 3.08 Representations and Warranties Concerning the HELOCs. The Indenture Trustee, as pledgee of the HELOCs, has the benefit of the representations and warranties made by the Seller in the Mortgage Loan Purchase Agreement concerning the Seller and the HELOCs. If a Responsible Officer of the Indenture Trustee has actual knowledge of any breach of any representation or warranty made by the Seller in the Mortgage Loan Purchase Agreement, or any Subsequent Mortgage Loan Purchase Agreement, the Indenture Trustee shall promptly notify the Seller and the Note Insurer of such finding and of the Seller's obligation to cure such defect or repurchase or substitute for the related HELOC.

Section 3.09 Investment Company Act. The Issuing Entity shall not become an "investment company" or be under the "control" of an "investment company" as such terms are defined in the Investment Company Act of 1940, as amended (or any successor or amendatory statute), and the rules and regulations thereunder (taking into account not only the general definition of the term "investment company" but also any available exceptions to such general definition); provided, however, that the Issuing Entity shall be in compliance with this Section 3.09 if it shall have obtained an order exempting it from regulation as an "investment company" so long as it is in compliance with the conditions imposed in such order.

Section 3.10 No Other Business. The Issuing Entity shall not engage in any business other than as set forth with respect thereto in the Trust Agreement and other than financing, purchasing, owning and selling and managing the HELOCs and the issuance of the Notes and Certificates in the manner contemplated by this Indenture and the Basic Documents and all activities incidental thereto.

Section 3.11 No Borrowing. The Issuing Entity shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the Notes under this Indenture and amounts due to the Note Insurer.

16

Section 3.12 Guarantees, Loans, Advances and Other Liabilities. Except as contemplated by this Indenture or the Basic Documents, the Issuing Entity shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

Section 3.13 Capital Expenditures. The Issuing Entity shall not make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personalty).

Section 3.14 Determination of Note Interest Rate.

On each Interest Determination Date, the Securities Administrator shall determine One-Month LIBOR and the related Note Interest Rate for each Class of Notes (other than the Class A-IO Notes) for the following Accrual Period and shall make such rate available to the Issuing Entity, the Indenture Trustee, the Master Servicer, the Note Insurer and the Depositor. The establishment of One-Month LIBOR on each Interest Determination Date by the Securities Administrator and the Securities Administrator's calculation of the rate of interest applicable to each Class of Notes for the related Accrual Period shall (in the absence of manifest error) be final and binding.

Section 3.15 Restricted Payments. The Issuing Entity shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuing Entity or otherwise with respect to any ownership or equity interest or security in or of the Issuing Entity, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; provided, however, that the Issuing Entity may make, or cause to be made, (x) distributions and payments to the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Master Servicer, the Servicers, the Certificate Registrar, the Certificate Paying Agent, the Noteholders, the Note Insurer and the Certificateholders as contemplated by, and to the extent funds are available for such purpose under this Indenture and the Basic Documents and (y) payments to the Master Servicer and the Servicers pursuant to the terms of the Sale and Servicing Agreement or the Servicing Agreement, as applicable. The Issuing Entity will not, directly or indirectly, make payments to or distributions from the Master Servicer Collection Account or the Payment Account except in accordance with this Indenture and the Basic Documents.

Section 3.16 Notice of Events of Default. The Issuing Entity shall give the Indenture Trustee, the Securities Administrator, the Note Insurer and each Rating Agency prompt written notice of each Event of Default hereunder.

Section 3.17 Further Instruments and Acts. Upon request of the Indenture Trustee or the Note Insurer, the Issuing Entity will execute and deliver such further instruments and do such

17

further acts as may be reasonably necessary or proper to carry out more effectively the purpose of this Indenture.

Section 3.18 Certain Representations Regarding the Trust Estate.

(a) With respect to that portion of the Collateral described in clauses (a) through (c) of the definition of Trust Estate, the Issuing Entity represents to the Indenture Trustee that:

(i) This Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in the Collateral in favor of the Indenture Trustee, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Issuing Entity.

(ii) The Collateral constitutes "deposit accounts," "instruments" or "certificated securities," as applicable within the meaning of the applicable UCC.

(iii) The Issuing Entity owns and has good and marketable title to the Collateral, free and clear of any lien, claim or encumbrance of any Person.

(iv) The Issuing Entity has caused or will have caused, within ten days of the Closing Date, the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in the Collateral granted to the Indenture Trustee hereunder.

(v) Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuing Entity has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Collateral. The Issuing Entity has not authorized the filing of and is not aware of any financing statements against the Issuing Entity that include a description of collateral covering the Collateral other than any financing statement relating to the security interest granted to the Indenture Trustee hereunder or that has been terminated.

(vi) The Collateral is not in the name of any Person other than the Issuing Entity or the Indenture Trustee. The Issuing Entity has in its possession all original copies of the security certificates that constitute or evidence the Collateral. The security certificates that constitute or evidence the Collateral do not have any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Indenture Trustee. The Issuing Entity has not consented to the bank maintaining the Collateral to comply with instructions of any Person other than the Indenture Trustee.

Section 3.19 Allocation of Charge-Off Amounts. (a) On or prior to each Payment Date, the Master Servicer shall determine, based solely on information provided to it by the related Servicer the amount of any Charge-Off Amount in respect of each HELOC that occurred during the immediately preceding calendar month.

(b) The Floating Allocation Percentage of Charge-Off Amounts on the HELOCs will be applied on any Payment Date as follows:

18

*first*, to any available Interest Collection Amount through an increase in the Overcollateralization Amount as provided in Section 3.02(a)(6) hereof; and

*second*, in reduction of the Overcollateralization Amount until reduced to zero.

(c)     If on any Payment Date, as a result of the Charge-Off Amounts, the sum of the aggregate Note Principal Balances of the Notes (other than the Class A-IO Notes) exceeds the Invested Amount as of the last day of the related Collection Period, such excess shall be allocated to the Notes (other than the Class A-IO Notes) in the following order:

*first*, to the Class B Notes, until the Note Principal Balance thereof has been reduced to zero; and

*second*, to the Class A Notes, until the Note Principal Balance thereof has been reduced to zero;

provided, however, that any Charge-Off Amounts allocated to the Class A Notes shall be covered by the Policy.

(d)     Once Charge-Off Amounts have been allocated to a Class of Notes, such amounts with respect to such Notes will no longer accrue interest nor will such amounts in respect of interest be reinstated thereafter.

(e)     Charge-Off Amounts shall be allocated on the Payment Date in the month following the month in which such loss was incurred and, in the case of the principal portion thereof, after giving effect to distributions made on such Payment Date.

(f)     In addition, in the event that the related Servicer receives any Subsequent Recoveries, such Subsequent Recoveries shall be remitted to the Master Servicer and then distributed by the Securities Administrator pursuant to Section 3.02 of this Indenture.

(g)     The Class S Floating Allocation Percentage of Charge-Off Amounts shall be applied on any Payment Date to the Class S Certificates.

Section 3.20   Claims on the Policy; Policy Payments Account.

(a)     The Securities Administrator shall establish the Policy Payments Account. The Securities Administrator shall deposit upon receipt any amount paid under the Policy in the Policy Payments Account and use that amount only to pay the Class A Notes the Insured Amounts for which a claim was made. Such amount may not be applied to satisfy any costs, expenses, or liabilities of the Master Servicer, the Securities Administrator, the Indenture Trustee or the Issuing Entity (other than payments of principal and interest on the Class A Notes). Amounts paid under the Policy, to the extent needed to pay any Deficiency Amount, shall be transferred to the Payment Account on the related Payment Date, and the portion thereof representing the Deficiency Amount shall be disbursed by the Securities Administrator to the Holders of the Class A Notes, in each case as if it were a payment to such Noteholders pursuant to Section 3.02. Payments from draws on the Policy need not be made by checks or wire transfers separate from the checks or wire transfers used to pay other payments to the Holders of

19

the Class A Notes. However, the amount of any payment of principal of or interest on the Class A Notes to be paid from funds transferred from the Policy Payments Account shall be noted as provided in paragraph (d) below and in the statement to be furnished to Holders of the Notes pursuant to Section 7.04. Funds held in the Policy Payments Account shall not be invested. Any funds remaining in the Policy Payments Account on the first Business Day following the later of the Payment Date and the Business Day after the day on which a payment on the Policy has been paid to the Holders of the Class A Notes shall be returned to the Note Insurer, pursuant to the instructions of the Note Insurer, by the end of the Business Day.

(b)     If the Securities Administrator has determined that an Insured Amount is required to be paid under the Policy with respect to a Payment Date, it shall deliver a notice (substantially in the form of the Notice attached as Exhibit A to the Certificate Guaranty Insurance Policy No. AB1020BE) to the Note Insurer no later than 12:00 noon, New York, New York City time on the second Business Day preceding the Payment Date and shall provide a copy of such notice to the Master Servicer at the time the Notice is delivered to the Note Insurer. That notice (substantially in the form of the Notice attached as Exhibit A to the Certificate Guaranty Insurance Policy No. AB1020BE) shall constitute a claim for payment pursuant to the Policy.

(c)     If the Indenture Trustee receives a certified copy of a final order of a court exercising jurisdiction in an insolvency proceeding (an "Order") that any prior payment made on the Class A Notes constitutes a Preference Amount (as defined in the Policy), the Indenture Trustee shall so notify the Securities Administrator and deliver such Order to it. Upon receipt of the Order, whether directly or from the Indenture Trustee, the Securities Administrator shall notify the Note Insurer and comply with the Policy to obtain payment by the Note Insurer of the Preference Amount, and shall, at the time notice is provided to the Note Insurer, notify each Holder of the affected Notes by mail that, subject to the terms of the Policy, the Note Insurer will disburse the Preference Amount directly to the receiver, conservator, debtor-in-possession, or trustee in bankruptcy named in the Order (unless a Holder of the Class A Notes has provided evidence satisfactory to the Note Insurer that it has previously paid such amount to the receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order, in which case such payment shall be disbursed to the Securities Administrator) by 12:00 noon, New York City time on the third Business Day following the delivery to the Securities Administrator on behalf of the Noteholder of (1) a certified copy of the Order to the effect that the Securities Administrator or such Noteholder, as applicable, is required to return such Preference Amount or portion thereof because such payment was avoided as a preferential transfer or otherwise rescinded or required to be restored by the Securities Administrator, the Indenture Trustee or the Noteholder, (2) a certificate that the Order has been entered and is not subject to any stay, (3) an assignment, in form and substance satisfactory to the Note Insurer, irrevocably assigning to the Note Insurer all rights and claims of the Securities Administrator, the Indenture Trustee or the Noteholder relating to or arising under the Insurance Agreement against the estate of the Securities Administrator or the Indenture Trustee or otherwise with respect to such Preference Amount, and (4) a payment notice in the form of Exhibit A to the Policy appropriately completed and executed by the Securities Administrator or the Indenture Trustee. If the documents are received after 12:00 noon, New York City time, on a Business Day, they will be considered received on the following Business Day.

20

A copy of the Policy shall be made available to each affected Class A Noteholder through the Securities Administrator, and the Securities Administrator shall furnish to the Note Insurer a copy of its records evidencing the payments that have been made by the Securities Administrator in respect of any Preference Amounts paid by the Note Insurer and the dates on which the payments were made.

(d)     The Securities Administrator shall keep a complete and accurate record of the amount of interest and principal paid on the Class A Notes from moneys received under the Policy. The Note Insurer may inspect the records at reasonable times during normal business hours on two Business Days' notice to the Securities Administrator.

(e)     The Holders of the Class A Notes are not entitled to institute proceedings directly against the Note Insurer. Each Holder of the Class A Notes, by its purchase of Class A Notes, agrees that the Note Insurer may at any time during the continuation of any proceeding relating to a Preference Amount, direct all matters relating to the Preference Amount on its behalf, including the direction of any appeal of any order relating to the preference claim and the posting of any surety, supersedeas, or performance bond pending any appeal.

(f)     Any payments to the Note Insurer shall be made by wire transfer of immediately available funds to the following Federal Reserve Account (until the Note Insurer notifies the Securities Administrator of a change in the account information):

>Ambac Assurance Corporation
>Citibank, N.A.
>ABA Number: 021000089
>DDA Number: 40609486
>Re: Policy Number AB1020BE

(g)     The Securities Administrator shall, upon retirement of the Class A Notes, furnish to the Note Insurer a notice of the retirement, and, after retirement of the Class A Notes and the expiration of the term of the Policy, surrender the Policy to the Note Insurer for cancellation.

(h)     The Securities Administrator shall hold the Policy in trust as agent for the Holders of the Class A Notes for the purpose of making claims on the Policy and distributing the proceeds of claims on the Policy. Neither the Policy nor the amounts paid on the Policy shall constitute part of the Trust Estate created by this Indenture. Each Holder of the Class A Notes, by accepting its Class A Notes, irrevocably appoints the Securities Administrator as attorney-in-fact to make claims on the Policy and to sign on its behalf any certification required with respect to any Notice under the Policy.

(i)     Anything in this Indenture to the contrary notwithstanding, any payment with respect to principal of or interest on the Class A Notes that is made with money received pursuant to the Policy shall not be considered payment of the Class A Notes from the Issuing Entity. The Depositor, the Master Servicer, the Indenture Trustee and the Securities Administrator acknowledge, and each Holder of the Class A Notes by its acceptance of the Class A Notes agrees that, without the need for any further action on the part of the Note Insurer, the

Depositor, the Master Servicer, the Indenture Trustee, the Securities Administrator, or the Note Registrar

       (i)     to the extent the Note Insurer makes payments, directly or indirectly, on account of principal of or interest on the Class A Notes to the related Noteholders, the Note Insurer shall be fully subrogated to, and each such Noteholder hereby delegates and assigns to the Note Insurer, to the fullest extent permitted by law, the rights of such Noteholders to receive such principal and interest from the Issuing Entity, and

       (ii)    the Note Insurer shall be paid such amounts from the sources and in the manner provided in this Indenture for the payment of such amounts and as provided in this Indenture until full reimbursement of all Insured Payments and Preference Amounts (together with interest thereon at the Late Payment Rate from the date paid by the Note Insurer until the date of their reimbursement).

The Securities Administrator and the Master Servicer shall cooperate in all respects with any reasonable request by the Note Insurer for action to preserve or enforce the Note Insurer's rights or interests under this Indenture (without limiting the rights or affecting the interests of the Holders of the Class A Notes as otherwise provided in this Indenture).

ARTICLE IV

THE NOTES; SATISFACTION AND DISCHARGE OF INDENTURE

Section 4.01   The Notes.  Each Class of Class A, Class A-IO and Class B Notes shall be registered in the name of a nominee designated by the Depository. Beneficial Owners will hold interests in the Class A, Class A-IO and Class B Notes through the book-entry facilities of the Depository in minimum initial Note Principal Balances or Notional Amounts, as applicable, of $100,000 and integral multiples of $1 in excess thereof.

The Indenture Trustee and Securities Administrator may for all purposes (including the making of payments due on the Notes) deal with the Depository as the authorized representative of the Beneficial Owners with respect to the Notes for the purposes of exercising the rights of Holders of the Notes hereunder. Except as provided in the next succeeding paragraph of this Section 4.01, the rights of Beneficial Owners with respect to the Notes shall be limited to those established by law and agreements between such Beneficial Owners and the Depository and Depository Participants. Except as provided in Section 4.08 hereof, Beneficial Owners shall not be entitled to definitive certificates for the Notes as to which they are the Beneficial Owners. Requests and directions from, and votes of, the Depository as Holder of the Notes shall not be deemed inconsistent if they are made with respect to different Beneficial Owners. The Securities Administrator may establish a reasonable record date in connection with solicitations of consents from or voting by Noteholders and give notice to the Depository of such record date. Without the consent of the Issuing Entity and the Securities Administrator, no Note may be transferred by the Depository except to a successor Depository that agrees to hold such Note for the account of the Beneficial Owners.

In the event the Depository Trust Company resigns or is removed as Depository, the Depositor may appoint a successor Depository.  If no successor Depository has been appointed within 30 days of the effective date of the Depository's resignation or removal, each Beneficial Owner shall be entitled to certificates representing the Notes it beneficially owns in the manner prescribed in Section 4.08.

The Notes shall, on original issue, be executed on behalf of the Issuing Entity by the Owner Trustee, not in its individual capacity but solely as Owner Trustee, authenticated by the Securities Administrator and delivered by the Securities Administrator to or upon the order of the Issuing Entity.

Section 4.02   Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Note Registrar and Certificate Registrar.  The Issuing Entity shall cause to be kept at the Corporate Trust Office of the Securities Administrator a Note Register in which, subject to such reasonable regulations as it may prescribe, the Note Registrar shall provide for the registration of Notes and of transfers and exchanges of Notes as herein provided.

Subject to the restrictions and limitations set forth below, upon surrender for registration of transfer of any Note at the Corporate Trust Office of the Securities Administrator, the Issuing Entity shall execute and the Note Registrar shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes in authorized initial Note Principal

Balances or Notional Amounts, as applicable, evidencing the same Class and aggregate Percentage Interests.

Subject to the foregoing and Section 4.08, Notes may be exchanged for other Notes of like tenor and in authorized initial Note Principal Balances or Notional Amounts, as applicable, evidencing the same Class and aggregate Percentage Interests upon surrender of the Notes to be exchanged at the Corporate Trust Office of the Note Registrar. Whenever any Notes are so surrendered for exchange, the Issuing Entity shall execute and the Securities Administrator shall authenticate and deliver the Notes which the Noteholder making the exchange is entitled to receive. Each Note presented or surrendered for registration of transfer or exchange shall (if so required by the Note Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer in form reasonably satisfactory to the Note Registrar duly executed by the Holder thereof or his attorney duly authorized in writing with such signature guaranteed by a commercial bank or trust company located or having a correspondent located in the city of New York. Notes delivered upon any such transfer or exchange will evidence the same obligations, and will be entitled to the same rights and privileges, as the Notes surrendered.

No service charge shall be made for any registration of transfer or exchange of Notes, but the Note Registrar shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes.

The Issuing Entity hereby appoints the Securities Administrator as (i) Certificate Registrar to keep at its Corporate Trust Office a Certificate Register pursuant to Section 3.09 of the Trust Agreement in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges thereof pursuant to Section 3.04 of the Trust Agreement and (ii) Note Registrar under this Indenture. The Securities Administrator hereby accepts such appointments.

Any transfer of a Note shall be made in accordance with the ERISA restrictions in Section 4.13.

Section 4.03   Mutilated, Destroyed, Lost or Stolen Notes.   If (i) any mutilated Note is surrendered to the Securities Administrator, or the Securities Administrator receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Securities Administrator such security or indemnity as may be required by it to hold the Issuing Entity, the Note Insurer and the Securities Administrator harmless, then, in the absence of notice to the Issuing Entity, the Note Registrar or the Securities Administrator that such Note has been acquired by a bona fide purchaser, and provided that the requirements of Section 8-405 of the UCC are met, the Issuing Entity shall execute, and upon its request the Securities Administrator shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note; provided, however, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within seven days shall be due and payable, instead of issuing a replacement Note, the Issuing Entity may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof.   If, after the delivery of such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the Issuing Entity, the Note Insurer

24

and the Securities Administrator shall be entitled to recover such replacement Note (or such payment) from the Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or any assignee of such Person, except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuing Entity, the Indenture Trustee, the Note Insurer or the Securities Administrator in connection therewith.

Upon the issuance of any replacement Note under this Section 4.03, the Issuing Entity or the Securities Administrator may require the payment by the Holder of such Note of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Securities Administrator) connected therewith.

Every replacement Note issued pursuant to this Section 4.03 in replacement of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuing Entity, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 4.03 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 4.04 <u>Persons Deemed Owners</u>. Prior to due presentment for registration of transfer of any Note, the Issuing Entity, the Note Insurer, the Indenture Trustee, the Securities Administrator, the Paying Agent and any agent of the Issuing Entity or the Securities Administrator or the Paying Agent may treat the Person in whose name any Note is registered (as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever, whether or not such Note be overdue, and none of the Issuing Entity, the Indenture Trustee, the Securities Administrator, the Note Insurer, the Paying Agent or any agent of the Issuing Entity, the Securities Administrator, the Indenture Trustee, the Note Insurer or the Paying Agent shall be affected by notice to the contrary.

Section 4.05 <u>Cancellation</u>. All Notes surrendered for payment, registration of transfer, exchange or redemption shall, if surrendered to any Person other than the Securities Administrator, be delivered to the Securities Administrator and shall be promptly cancelled by the Securities Administrator. The Issuing Entity may at any time deliver to the Securities Administrator for cancellation any Notes previously authenticated and delivered hereunder which the Issuing Entity may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Securities Administrator. No Notes shall be authenticated in lieu of or in exchange for any Notes cancelled as provided in this Section 4.05, except as expressly permitted by this Indenture. All cancelled Notes may be held or disposed of by the Securities Administrator in accordance with its standard retention or disposal policy as in effect at the time unless the Issuing Entity shall direct by an Issuing Entity Request that they be

destroyed or returned to it; provided, however, that such Issuing Entity Request is timely and the Notes have not been previously disposed of by the Securities Administrator.

Section 4.06   Book-Entry Notes.  The Class A, Class A-IO and Class B Notes, upon original issuance, will be issued in the form of typewritten Notes representing the Book-Entry Notes, to be delivered to The Depository Trust Company, the initial Depository or to the Securities Administrator, as custodian for the Depository Trust Company, by, or on behalf of, the Issuing Entity. The Notes shall initially be registered on the Note Register in the name of Cede & Co., the nominee of the initial Depository, and no Beneficial Owner will receive a Definitive Note representing such Beneficial Owner's interest in such Note, except as provided in Section 4.08. With respect to such Notes, unless and until definitive, fully registered Notes (the "Definitive Notes") have been issued to Beneficial Owners pursuant to Section 4.08:

(i)        the provisions of this Section 4.06 shall be in full force and effect;

(ii)       the Note Registrar, the Paying Agent, the Indenture Trustee and the Securities Administrator shall be entitled to deal with the Depository for all purposes of this Indenture (including the payment of principal of and interest on the Notes and the giving of instructions or directions hereunder) as the sole holder of the Notes, and shall have no obligation to the Beneficial Owners of the Notes;

(iii)      to the extent that the provisions of this Section 4.06 conflict with any other provisions of this Indenture, the provisions of this Section 4.06 shall control;

(iv)       the rights of Beneficial Owners shall be exercised only through the Depository and shall be limited to those established by law and agreements between such Owners of Notes and the Depository and/or the Depository Participants. Unless and until Definitive Notes are issued pursuant to Section 4.08, the initial Depository will make book-entry transfers among the Depository Participants and receive and transmit payments of principal of and interest on the Notes to such Depository Participants; and

(v)        whenever this Indenture requires or permits actions to be taken based upon instructions or directions of Holders of Notes evidencing a specified percentage of the Note Principal Balances of the Notes, the Depository shall be deemed to represent such percentage with respect to the Notes only to the extent that it has received instructions to such effect from Beneficial Owners and/or Depository Participants owning or representing, respectively, such required percentage of the beneficial interest in the Notes and has delivered such instructions to the Securities Administrator and the Indenture Trustee.

None of the Depositor, the Issuing Entity, the Master Servicer, the Seller, the Securities Administrator, the Indenture Trustee, the Note Registrar and the Owner Trustee shall have any liability for any aspect of the records relating to or payments made on account of beneficial ownership interests in the Book-Entry Notes or for maintaining, supervising or reviewing any records relating to beneficial ownership interests or transfers thereof.

Section 4.07   Notices to Depository.  Whenever a notice or other communication to the Note Holders is required under this Indenture, unless and until Definitive Notes shall have been issued to Beneficial Owners pursuant to Section 4.08, the Indenture Trustee or Securities

26

Administrator, as applicable, shall give all such notices and communications specified herein to be given to Holders of the Notes to the Depository, and shall have no obligation to the Beneficial Owners.

Section 4.08    Definitive Notes. If (i) the Depositor advises the Securities Administrator in writing that the Depository is no longer willing or able to properly discharge its responsibilities with respect to the Book-Entry Notes and the Depositor is unable to locate a qualified successor within 30 days or (ii) the Depositor, at its option (with the consent of the Securities Administrator, such consent not to be unreasonably withheld) elects to terminate the book-entry system through the Depository, then the Securities Administrator shall request that the Depository notify all Beneficial Owners of the occurrence of any such event and of the availability of Definitive Notes to Beneficial Owners requesting the same. Upon surrender to the Securities Administrator of the typewritten Notes representing the Book-Entry Notes by the Depository, accompanied by registration instructions, the Issuing Entity shall execute and the Securities Administrator shall authenticate the Definitive Notes in accordance with the instructions of the Depository. None of the Issuing Entity, the Note Registrar or the Securities Administrator shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions. Upon the issuance of Definitive Notes, the Securities Administrator shall recognize the Holders of the Definitive Notes as Noteholders.

In addition, if an Event of Default has occurred and is continuing, each Note Owner materially adversely affected thereby may at its option request a Definitive Note evidencing such Noteholder's interest in the related Class of Notes. In order to make such request, such Noteholder shall, subject to the rules and procedures of the Depository, provide the Depository or the related Depository Participant with directions for the Securities Administrator to exchange or cause the exchange of the Noteholder's interest in such Class of Notes for an equivalent interest in fully registered definitive form. Upon receipt by the Securities Administrator of instructions from the Depository directing the Securities Administrator to effect such exchange (such instructions to contain information regarding the Class of Notes and the Note Principal Balance or Notional Amount, as applicable, being exchanged, the Depository Participant account to be debited with the decrease, the registered holder of and delivery instructions for the Definitive Note, and any other information reasonably required by the Securities Administrator), (i) the Securities Administrator shall instruct the Depository to reduce the related Depository Participant's account by the aggregate Note Principal Balance or Notional Amount, as applicable, of the Definitive Note, (ii) the Securities Administrator shall execute, authenticate and deliver, in accordance with the registration and delivery instructions provided by the Depository, a Definitive Note evidencing such Noteholder's interest in such Class of Notes and (iii) the Issuing Entity shall execute and the Securities Administrator shall authenticate a new Book-Entry Note reflecting the reduction in the Note Principal Balance or Notional Amount, as applicable, of such Class of Notes by the amount of the Definitive Notes.

Section 4.09    Application of Trust Money. All monies deposited with the Securities Administrator pursuant to this Indenture shall be held in trust and applied by it, in accordance with the provisions of the Notes and this Indenture, to the payment, either directly or through any Paying Agent or the Certificate Paying Agent as designee of the Issuing Entity, as the Securities Administrator may determine, to the Holders of Securities, of all sums due and to become due

thereon for principal and interest or otherwise; but such monies need not be segregated from other funds except to the extent required herein or required by law.

Section 4.10   Subrogation and Cooperation. (a) The Issuing Entity and the Indenture Trustee acknowledge that (i) to the extent the Note Insurer makes payments under the Policy on account of principal of or interest on the Class A Notes, the Note Insurer will be fully subrogated to the rights of such Holders to receive such principal and interest from the Issuing Entity, and (ii) the Note Insurer shall be paid such principal and interest but only from the sources and in the manner provided herein and in the Insurance Agreement for the payment of such principal and interest.

(b)      The Indenture Trustee shall, so long as it is indemnified to its satisfaction, cooperate in all respects with any reasonable written request by the Note Insurer for action to preserve or enforce the Note Insurer's rights or interest under this Indenture or the Insurance Agreement, consistent with this Indenture and without limiting the rights of the Noteholders as otherwise set forth in the Indenture, including, without limitation, upon the occurrence and continuance of a default under the Insurance Agreement, a request to take any one or more of the following actions:

(i)   institute Proceedings for the collection of all amounts then payable on the Class A Notes, or under this Indenture in respect of the Class A Notes and all amounts payable under the Insurance Agreement, enforce any judgment obtained and collect from the Issuing Entity monies adjudged due;

(ii)  sell or cause to be sold the Trust Estate or any portion thereof or rights or interest therein, at one or more public or private Sales (as defined in Section 5.15 hereof) called and conducted in any manner permitted by law;

(iii)  institute Proceedings from time to time for the complete or partial foreclosure of this Indenture; and

(iv)  exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Note Insurer hereunder;

provided, however, action shall be taken pursuant to this Section 4.10 by the Indenture Trustee to preserve the Note Insurer's rights or interest under this Indenture or the Insurance Agreement only to the extent such action is available to the Class A Noteholders or the Note Insurer under other provisions of this Indenture.

Notwithstanding any provision of this Indenture to the contrary, so long as no Note Insurer Default exists, the Note Insurer shall at all times be treated as if it were the exclusive owner of all Class A Notes Outstanding for the purposes of all approvals, consents, waivers and the institution of any action and the written direction of all remedies, and the Indenture Trustee shall act in accordance with the written directions of the Note Insurer so long as it is indemnified therefor to its reasonable satisfaction.

28

Section 4.11    Repayment of Monies Held by Paying Agent.  In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all monies then held by any Person other than the Securities Administrator under the provisions of this Indenture with respect to such Notes shall, upon demand of the Issuing Entity, be paid to the Securities Administrator to be held and applied according to Section 3.02 and thereupon such Person shall be released from all further liability with respect to such monies.

Section 4.12    Temporary Notes.  Pending the preparation of any Definitive Notes, the Issuing Entity may execute and upon its written direction, the Securities Administrator may authenticate and make available for delivery, temporary Notes that are printed, lithographed, typewritten, photocopied or otherwise produced, in any denomination, substantially of the tenor of the Definitive Notes in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Notes may determine, as evidenced by their execution of such Notes.

If temporary Notes are issued, the Issuing Entity will cause Definitive Notes to be prepared without unreasonable delay. After the preparation of the Definitive Notes, the temporary Notes shall be exchangeable for Definitive Notes upon surrender of the temporary Notes at the Corporate Trust Office of the Securities Administrator, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Notes, the Issuing Entity shall execute and the Securities Administrator shall authenticate and make available for delivery, in exchange therefor, Definitive Notes of authorized denominations and of like tenor, class and aggregate principal amount. Until so exchanged, such temporary Notes shall in all respects be entitled to the same benefits under this Indenture as Definitive Notes.

Section 4.13    Representation Regarding ERISA.  By acquiring a Class A, Class A-IO or Class B Notes or interest therein, each Holder of such Note or Beneficial Owner of any such interest will be deemed to represent that either (1) it is not acquiring such Note with Plan Assets or (2) solely in the case of a Class A Note, (A) the acquisition, holding and transfer of such Note will not give rise to a nonexempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code and (B) the Notes are rated investment grade or better and such person believes that the Notes are properly treated as indebtedness without substantial equity features for purposes of the Department of Labor regulation 29 C.F.R. § 2510.3-101, and agrees to so treat the Notes. Alternatively, regardless of the rating of the Notes, such person may provide the Securities Administrator and the Note Registrar with an opinion of counsel, which opinion of counsel will not be at the expense of the Issuing Entity, the Seller, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Note Registrar, the Master Servicer or any Servicer which opines that the acquisition, holding and transfer of such Note or interest therein is permissible under applicable law, will not constitute or result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Issuing Entity, the Seller, the Depositor, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Note Registrar, the Master Servicer or any Servicer to any obligation in addition to those undertaken in the Indenture and the other Basic Documents. The Class A-IO Notes and Class B Notes may not be acquired with Plan Assets.

29

## ARTICLE V

## DEFAULT AND REMEDIES

Section 5.01  Events of Default.  The Issuing Entity shall deliver to the Indenture Trustee, the Securities Administrator and the Note Insurer, within five days after learning of the occurrence of a Default, written notice in the form of an Officer's Certificate of any event which with the giving of notice and the lapse of time would become an Event of Default under clause (ii), (iii) or (iv) of the definition of "Event of Default", its status and what action the Issuing Entity is taking or proposes to take with respect thereto. The Indenture Trustee shall not be deemed to have knowledge of any Default or Event of Default unless a Responsible Officer has actual knowledge thereof or unless written notice of such Default or Event of Default is received by a Responsible Officer and such notice references the Notes, the Trust Estate or this Indenture.

Section 5.02  Acceleration of Maturity; Rescission and Annulment.  If an Event of Default should occur and be continuing, then and in every such case the Indenture Trustee at the written direction of the Note Insurer or the Holders of Notes representing not less than a majority of the aggregate Note Principal Balance of the Notes may, with the written consent of the Note Insurer, declare the Notes to be immediately due and payable, by a notice in writing to the Issuing Entity (and to the Indenture Trustee if such notice is given by Noteholders), and upon any such declaration the unpaid Note Principal Balance of the Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable; provided, however, that for purposes of this sentence and for purposes of this Article V, unless a Note Insurer Default exists, the Note Insurer may exercise the rights of all of the Holders of the Class A Notes.

At any time after such declaration of acceleration of maturity with respect to an Event of Default has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture Trustee as hereinafter in this Article V provided, the Note Insurer or Holders of the Notes representing not less than a majority of the aggregate Note Principal Balance of each Class of Notes, with the written consent of the Note Insurer, so long as no Note Insurer Default exists, by written notice to the Issuing Entity and the Indenture Trustee, may, subject to Section 5.12, waive the related Event of Default and rescind and annul such declaration and its consequences if:

(i)  the Issuing Entity has paid or deposited with the Indenture Trustee or Securities Administrator a sum sufficient to pay:

(A)  all payments of principal of and interest on the Notes and all other amounts that would then be due hereunder or under the Notes if the Event of Default giving rise to such acceleration had not occurred;

(B)  all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and the Securities Administrator and their respective agents and counsel;

(C)  all amounts owed to the Note Insurer; and

(ii)     all Events of Default, other than the nonpayment of the principal of the Notes that has become due solely by such acceleration, have been cured or waived as provided in Section 5.12; provided, however, the Note Insurer, so long as no Note Insurer Default exists, may waive an Event of Default regardless of Section 5.02(i) above.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03   Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.

(a)     The Issuing Entity covenants that if (i) default is made in the payment of any interest on any Note when the same becomes due and payable, and such default continues for a period of five days, or (ii) default is made in the payment of the principal of or any installment of the principal of any Note when the same becomes due and payable, the Issuing Entity shall, upon demand of the Indenture Trustee, at the direction of the Note Insurer, so long as no Note Insurer Default exists, or if a Note Insurer Default does exist, at the direction of the Holders of a majority of the aggregate Note Principal Balances of the Notes, pay to the Securities Administrator, for the benefit of the Holders of Notes and the Note Insurer, the whole amount then due and payable on the Notes for principal and interest, with interest at the applicable Note Interest Rate upon the overdue principal, and in addition thereto such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and the Securities Administrator and their respective agents and counsel and all amounts owed to the Note Insurer.

(b)     In case the Issuing Entity shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name and as trustee of an express trust, and at the direction of the Note Insurer, so long as no Note Insurer Default exists, subject to the provisions of Section 10.15 hereof, may institute a Proceeding for the collection of the sums so due and unpaid, and may prosecute such Proceeding to judgment or final decree, and may enforce the same against the Issuing Entity or other obligor upon the Notes and collect in the manner provided by law out of the property of the Issuing Entity or other obligor upon the Notes, wherever situated, the monies adjudged or decreed to be payable.

(c)     If an Event of Default occurs and is continuing, the Indenture Trustee, at the direction of the Note Insurer, so long as no Note Insurer Default exists subject to the provisions of Section 10.15 hereof, may, as more particularly provided in Section 5.04 hereof, in its discretion, proceed to protect and enforce its rights and the rights of the Noteholders and the Note Insurer by such appropriate Proceedings as directed in writing by the Note Insurer, so long as no Note Insurer Default exists, to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(d)     In case there shall be pending, relative to the Issuing Entity or any other obligor upon the Notes or any Person having or claiming an ownership interest in the Trust Estate, Proceedings under Title 11 of the United States Code or any other applicable federal or state

31

bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuing Entity or its property or such other obligor or Person, or in case of any other comparable judicial Proceedings relative to the Issuing Entity or other obligor upon the Notes, or to the creditors or property of the Issuing Entity or such other obligor, the Indenture Trustee, at the direction of the Note Insurer, so long as no Note Insurer Default exists, irrespective of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such Proceedings or otherwise:

(i)     to file and prove a claim or claims for the whole amount of principal and interest owing and unpaid in respect of the Notes and to the Note Insurer and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to the Indenture Trustee and each predecessor Indenture Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence, willful misconduct or bad faith), the Note Insurer and of the Noteholders allowed in such Proceedings;

(ii)     unless prohibited by applicable law and regulations, to vote on behalf of the Holders of Notes in any election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii)     to collect and receive any monies or other property payable or deliverable on any such claims and to distribute all amounts received with respect to the claims of the Noteholders, the Note Insurer and of the Indenture Trustee on their behalf, and

(iv)     to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee, the Note Insurer or the Holders of Notes allowed in any judicial proceedings relative to the Issuing Entity, its creditors and its property;

and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by each of such Noteholders to make payments to the Securities Administrator, with the consent of the Note Insurer so long as no Note Insurer Default exists, and, in the event that the Indenture Trustee and the Securities Administrator shall consent to the making of payments directly to such Noteholders, to pay to the Indenture Trustee such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee and all amounts due to the Note Insurer.

(e)     Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof or to authorize the Indenture Trustee to vote in respect of the claim of any

Noteholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person.

(f) All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced by the Indenture Trustee without the possession of any of the Notes or the production thereof in any trial or other Proceedings relative thereto, and any such action or proceedings instituted by the Indenture Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Notes, subject to Section 5.05 hereof.

In any Proceedings brought by the Indenture Trustee with the consent of the Note Insurer so long as no Note Insurer Default exists (and also any Proceedings involving the interpretation of any provision of this Indenture to which the Indenture Trustee shall be a party), the Indenture Trustee shall be held to represent all the Holders of the Notes, and it shall not be necessary to make any Noteholder a party to any such Proceedings.

Section 5.04   Remedies; Priorities.   (a) If an Event of Default shall have occurred and be continuing and if an acceleration has been declared and not rescinded pursuant to Section 5.02 hereof, the Indenture Trustee, subject to the provisions of Section 10.15 hereof, may, with the consent of the Note Insurer so long as no Note Insurer Default exists, and shall, at the direction of the Note Insurer, so long as the Note Insurer is not in default under the Policy, or at the written direction of the Holders of a majority of the aggregate Note Principal Balances of the Notes then outstanding with the consent of the Note Insurer, do one or more of the following (subject to Section 5.05 hereof):

(i) institute Proceedings in its own name and as trustee of an express trust for the collection of all amounts then payable on the Notes and to the Note Insurer or under this Indenture with respect thereto, whether by declaration or otherwise, and all amounts payable under the Insurance Agreement, enforce any judgment obtained, and collect from the Issuing Entity and any other obligor upon such Notes monies adjudged due;

(ii) institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Trust Estate;

(iii) exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee and the Holders of the Notes and the Note Insurer; and

(iv) sell the Trust Estate or any portion thereof or rights or interest therein, at one or more public or private sales called and conducted in any manner permitted by law;

provided, however, that the Indenture Trustee may not sell or otherwise liquidate the Trust Estate following an Event of Default, unless (1)(A) the Indenture Trustee obtains the consents required under Section 5.11 below, (B) the proceeds of such sale or liquidation distributable to the Holders of the Notes are sufficient to discharge in full all amounts then due and unpaid upon such Notes for principal and interest and to reimburse the Note Insurer for any amounts drawn

33

under the Policy and any other amounts due to the Note Insurer under the Insurance Agreement or (C) the Indenture Trustee determines that the HELOCs will not continue to provide sufficient funds for the payment of principal of and interest on the applicable Notes as they would have become due if the Notes had not been declared due and payable, and the Indenture Trustee obtains the consents required under Section 5.11 below and (2) the Securities Administrator complies with each of the requirements for a qualified liquidation under Section 860F of the Code set forth in Section 8.06(c) as if it were the Class E Certificateholder. In determining such sufficiency or insufficiency with respect to clause (B) and (C), the Indenture Trustee may, but need not, obtain and rely upon an opinion (obtained at the expense of the Trust) of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose. Notwithstanding the foregoing, any Sale of the Trust Estate shall be made subject to the continued servicing of the HELOCs by the related Servicer (other than the Servicer as to which an Event of Servicer Termination has occurred and is continuing) as provided in the Sale and Servicing Agreement. Notwithstanding any contrary provision of this Indenture, no Sale of the Trust Estate shall be made unless an Opinion of Counsel is rendered, addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and the Owner Trustee, to the effect that such Sale would not (i) result in the imposition of the tax on "prohibited transactions" as defined in sections 860F(a)(2) of any REMIC created hereunder or (ii) cause any REMIC created hereunder to fail to qualify as a REMIC at any time that any Notes or Certificates are outstanding.

If the Securities Administrator collects any money or property pursuant to this Article V, the Securities Administrator shall pay out the money or property in accordance with Section 3.02 hereof.

The Securities Administrator may fix a record date and Payment Date for any payment to Noteholders pursuant to this Section 5.04. With respect to any acceleration at the direction of the Note Insurer, the first Payment Date after the acceleration shall be the first Payment Date after the acceleration. At least 15 days before such record date, the Securities Administrator shall mail to each Noteholder a notice that states the record date, the Payment Date and the amount to be paid.

Section 5.05   Optional Preservation of the Trust Estate. If the Notes have been declared to be due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, with the consent of the Note Insurer (which consent shall not be required if a Note Insurer Default exists), and shall, at the direction of the Note Insurer so long as no Note Insurer Default exists, elect to take and maintain possession of the Trust Estate. It is the desire of the parties hereto and the Noteholders that there be at all times sufficient funds for the payment of principal of and interest on the Notes and other obligations of the Issuing Entity, and the Indenture Trustee shall take such desire into account when determining whether or not to take and maintain possession of the Trust Estate. In determining whether to take and maintain possession of the Trust Estate, the Indenture Trustee may, but need not, obtain and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose.

34

Section 5.06   Limitation of Suits.   So long as the majority Holder of the Class E Certificates owns 100% of the Securities, no Holder of any Note (other than the Note Insurer acting pursuant to Section 4.10 hereof) shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder. No Holder of any Note (other than the Note Insurer acting pursuant to Section 4.10 hereof) shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless and subject to the foregoing and the provisions of Section 10.15 hereof:

(i)      such Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default;

(ii)     the Holders of not less than 25% of the aggregate Note Principal Balance of the Notes have made a written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(iii)    such Holder or Holders have offered to the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in complying with such request;

(iv)     the Indenture Trustee, for 60 days after its receipt of such notice of request and offer of indemnity, has failed to institute such Proceedings;

(v)      such Holders have obtained consent of the Note Insurer; and

(vi)     no direction inconsistent with such written request has been given to the Indenture Trustee during such 60-day period by the Holders of a majority of the Note Principal Balances of the Notes.

It is understood and intended that no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided.

Subject to the last paragraph of Section 5.11 herein, in the event the Indenture Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Holders of Notes, each representing less than a majority of the Note Principal Balances of the Notes, the Indenture Trustee shall take such action as requested by the Holders representing the highest amount (in the aggregate) of the Note Principal Balances, notwithstanding any other provisions of this Indenture.

Section 5.07   Unconditional Rights of Noteholders To Receive Principal and Interest. Notwithstanding any other provisions in this Indenture, the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest, if any, on such Note on or after the respective due dates thereof expressed in such Note or in this

35

Indenture and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 5.08    Restoration of Rights and Remedies.    If the Indenture Trustee or any Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason or has been determined adversely to the Indenture Trustee, the Note Insurer or to such Noteholder, then and in every such case the Issuing Entity, the Note Insurer, the Indenture Trustee and the Noteholders shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Indenture Trustee, the Note Insurer and the Noteholders shall continue as though no such Proceeding had been instituted.

Section 5.09    Rights and Remedies Cumulative.    No right or remedy herein conferred upon or reserved to the Indenture Trustee, to the Note Insurer or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.10    Delay or Omission Not a Waiver.    No delay or omission of the Indenture Trustee, the Note Insurer or any Holder of any Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article V or by law to the Indenture Trustee, the Note Insurer or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as the case may be.

Section 5.11    Control By Note Insurer and Noteholders.    The Note Insurer, unless a Note Insurer Default exists, or the Holders of a majority of the aggregate Note Principal Balances of Notes, if a Note Insurer Default exists, shall have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee; provided that:

(i)    such direction shall not be in conflict with any rule of law or with this Indenture;

(ii)    if a Note Insurer Default exists, any direction to the Indenture Trustee to sell or liquidate the Trust Estate shall be by Holders of Notes representing not less than 100% of the aggregate Note Principal Balance of the Notes or the Holders of 66 2/3% of the aggregate Note Principal Balance of each Class of Notes then outstanding, voting separately as set forth in Section 5.04(a) hereof; and

36

(iii)     the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not inconsistent with such direction of the Holders of Notes representing a majority of the Note Principal Balances of the Notes.

Notwithstanding the rights of Noteholders set forth in this Section 5.11 the Indenture Trustee need not take any action that it determines might involve it in liability.

Section 5.12    Waiver of Past Defaults.   Prior to the declaration of the acceleration of the maturity of the Notes as provided in Section 5.02 hereof, the Note Insurer or the Holders of Notes representing not less than a majority of the aggregate Note Principal Balance of each Class of Notes, with the Note Insurer's written consent, may waive any past Event of Default and its consequences except an Event of Default (a) with respect to payment of principal of or interest on any of the Notes, (b) in respect of a covenant or provision hereof which cannot be modified or amended without the consent of the Holder of each Note, or (c) the waiver of which would materially and adversely affect the interests of the Note Insurer or modify its obligation under the Policy.   In the case of any such waiver, the Issuing Entity, the Indenture Trustee, the Note Insurer and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively, but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Upon any such waiver, any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Section 5.13    Undertaking for Costs.   All parties to this Indenture agree, and each Holder of any Note and each Beneficial Owner of any interest therein by such Holder's or Beneficial Owner's acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 5.13 shall not apply to (a) any suit instituted by the Indenture Trustee, (b) any suit instituted by any Noteholder, or group of Noteholders, in each case holding in the aggregate more than 10% of the Note Principal Balances of the Notes or (c) any suit instituted by any Noteholder for the enforcement of the payment of principal of or interest on any Note on or after the respective due dates expressed in such Note and in this Indenture.

Section 5.14    Waiver of Stay or Extension Laws.   The Issuing Entity covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead or in any manner whatsoever, claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuing Entity (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it shall not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but

will suffer and permit the execution of every such power as though no such law had been enacted.

Section 5.15    Sale of Trust Estate.    (a)  The power to effect any sale or other disposition (a "Sale") of any portion of the Trust Estate pursuant to Section 5.04 hereof is expressly subject to the provisions of Sections 5.04 and 5.11(ii) hereof and this Section 5.15. The power to effect any such Sale shall not be exhausted by any one or more Sales as to any portion of the Trust Estate remaining unsold, but shall continue unimpaired until the entire Trust Estate shall have been sold or all amounts payable on the Notes and under this Indenture and under the Insurance Agreement shall have been paid. The Indenture Trustee with the consent of the Note Insurer (which consent shall not be required if a Note Insurer Default exists) may from time to time postpone any public Sale by public announcement made at the time and place of such Sale. The Indenture Trustee hereby expressly waives its right to any amount fixed by law as compensation for any Sale.

(b)    The Indenture Trustee shall not in any private Sale sell the Trust Estate, or any portion thereof, unless

(1)    The Note Insurer, unless a Note Insurer Default exists, or the Holders of all Notes if a Note Insurer Default exists consent to or direct the Indenture Trustee to make, such Sale, or

(2)    the proceeds of such Sale would be not less than the entire amount which would be payable to the Noteholders under the Notes and the Note Insurer in respect of amounts drawn under the Policy and any other amounts due to the Note Insurer under the Insurance Agreement, in full payment thereof in accordance with Section 5.02 hereof, on the Payment Date next succeeding the date of such Sale, or

(3)    the Indenture Trustee determines that the conditions for retention of the Trust Estate set forth in Section 5.05 hereof cannot be satisfied (in making any such determination, the Indenture Trustee may rely upon an opinion of an Independent investment banking firm obtained and delivered as provided in Section 5.05 hereof), and the Note Insurer consents to such Sale, or if a Note Insurer Default exists, and the Holders of Notes representing at least 100% of the Note Principal Balances of the Notes consent to such Sale.

The purchase by the Indenture Trustee of all or any portion of the Trust Estate at a private Sale shall not be deemed a Sale or other disposition thereof for purposes of this Section 5.15(b).

(c)    Unless the Note Insurer, or if a Note Insurer Default exists, the Holders representing at least 100% of the aggregate Note Principal Balance of the Notes or the Holders of 66 2/3% of the aggregate Note Principal Balance of each Class of Notes then outstanding, voting separately as set forth in Section 5.11 hereof, have otherwise consented or directed the Indenture Trustee, at any public Sale of all or any portion of the Trust Estate at which a minimum bid equal to or greater than the amount described in paragraph (2) of subsection (b) of this Section 5.15 has not been established by the Indenture Trustee and no Person bids an amount equal to or greater than such amount, the Indenture Trustee, as trustee for the benefit of the Holders of the Notes,

38

shall bid an amount (which shall include the Indenture Trustee's right, in its capacity as Indenture Trustee, to credit bid) at least $1.00 more than the highest other bid in order to preserve the Trust Estate on behalf of the Noteholders.

    (d)    In connection with a Sale of all or any portion of the Trust Estate,

    (1)    any Holder or Holders of Notes or the Note Insurer may bid for and purchase the property offered for sale, and upon compliance with the terms of sale may hold, retain and possess and dispose of such property, without further accountability, and may, in paying the purchase money therefor, deliver any Notes or claims for interest thereon in lieu of cash up to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon, and such Notes, in case the amounts so payable thereon shall be less than the amount due thereon, shall be returned to the Holders thereof after being appropriately stamped to show such partial payment;

    (2)    the Indenture Trustee, with the consent of the Note Insurer so long as no Note Insurer Default exists may bid for and acquire the property offered for Sale in connection with any Sale thereof, and, subject to any requirements of, and to the extent permitted by, applicable law in connection therewith, may purchase all or any portion of the Trust Estate in a private sale, and, in lieu of paying cash therefor, may make settlement for the purchase price by crediting the gross Sale price against the sum of (A) the amount which would be distributable to the Holders of the Notes and Holders of Certificates and amounts distributable to the Note Insurer on the Payment Date next succeeding the date of such Sale and (B) the expenses of the Sale and of any Proceedings in connection therewith which are reimbursable to it, without being required to produce the Notes in order to complete any such Sale or in order for the net Sale price to be credited against such Notes, and any property so acquired by the Indenture Trustee shall be held and dealt with by it in accordance with the provisions of this Indenture;

    (3)    the Indenture Trustee shall execute and deliver an appropriate instrument of conveyance, prepared by the Issuing Entity and satisfactory to the Indenture Trustee, transferring its interest in any portion of the Trust Estate in connection with a Sale thereof; and

    (4)    the Indenture Trustee is hereby irrevocably appointed the agent and attorney-in-fact of the Issuing Entity to transfer and convey its interest in any portion of the Trust Estate in connection with a Sale thereof, and to take all action necessary to effect such Sale.

    (e)    So long as a single Holder of the Class E Certificates owns 100% of the Securities, the majority Holder of the Class E Certificates shall not consent to any Sale of the Trust Estate as set forth herein.

    (f)    Notwithstanding any contrary provision of this Indenture, no Sale of the Trust Estate shall be made unless an Opinion of Counsel is rendered, addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and the Owner Trustee, to the effect that (i) such Sale would not (A) result in the imposition of the tax on "prohibited transactions" as

39

defined in sections 860F(a)(2) of any REMIC created hereunder or (B) cause any REMIC created hereunder to fail to qualify as a REMIC at any time that any Notes or Certificates are outstanding, or (ii) that the Securities Administrator has complied with the requirements for a "qualified liquidation" under section 860F of the Code set forth in Section 8.06(c) hereof as if it were the Class E Certificateholder.

Section 5.16   <u>Action on Notes</u>.   The Indenture Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee, the Noteholders or the Note Insurer shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuing Entity or by the levy of any execution under such judgment upon any portion of the Trust Estate or upon any of the assets of the Issuing Entity. Any money or property collected by the Indenture Trustee or the Securities Administrator shall be applied by the Securities Administrator in accordance with Section 5.04(b) hereof.

ARTICLE VI

THE INDENTURE TRUSTEE AND THE SECURITIES ADMINISTRATOR

Section 6.01    Duties of Indenture Trustee and Securities Administrator.  (a) If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(b)    Except during the continuance of an Event of Default of which the Indenture Trustee has actual knowledge or has received written notice, in the case of the Indenture Trustee and, at any time, in the case of the Securities Administrator:

(i)    the Indenture Trustee and the Securities Administrator undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and the other Basic Documents to which it is a party and no implied covenants or obligations shall be read into this Indenture and the other Basic Documents against the Indenture Trustee or the Securities Administrator; and

(ii)    in the absence of bad faith on its part, the Indenture Trustee and the Securities Administrator may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, reports, documents, Issuing Entity Requests or other instruments or opinions furnished to the Indenture Trustee and/or the Securities Administrator and conforming to the requirements of this Indenture or the other Basic Documents; however, the Indenture Trustee and the Securities Administrator shall examine the certificates, reports, documents, Issuing Entity Requests or other instruments and opinions to determine whether or not they conform on their face to the requirements of this Indenture.

(c)    The Indenture Trustee and the Securities Administrator may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)    this paragraph does not limit the effect of paragraph (b) of this Section 6.01;

(ii)    neither the Indenture Trustee nor the Securities Administrator shall be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee or the Securities Administrator, as applicable, was negligent in ascertaining the pertinent facts; and

(iii)    neither the Indenture Trustee nor the Securities Administrator shall  be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it from Noteholders, the Certificateholders or from the Issuing Entity, which they are entitled to give under the Basic Documents.

(d)    Neither the Indenture Trustee nor the Securities Administrator shall be liable for interest on any money received by it except as set forth in the Basic Documents and as the

41

Indenture Trustee or Securities Administrator, as applicable, may agree in writing with the Issuing Entity.

(e)   Money held in trust by the Indenture Trustee or Securities Administrator need not be segregated from other trust funds except to the extent required by law or the terms of this Indenture, the Sale and Servicing Agreement or the Trust Agreement.

(f)   No provision of this Indenture shall require the Indenture Trustee or the Securities Administrator to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or indemnity satisfactory to it against such risk or liability is not reasonably assured to it.

(g)   Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee or Securities Administrator shall be subject to the provisions of this Section.

(h)   The Indenture Trustee shall not be deemed to have notice or knowledge of any Default or Event of Default unless a Responsible Officer of the Indenture Trustee has actual knowledge thereof or unless written notice of any such event that is in fact an Event of Default or Default is received by the Indenture Trustee at its Corporate Trust Office and such notice references the Notes or Certificates generally, the Issuing Entity, the Trust Estate or this Indenture.

Section 6.02   Rights of Indenture Trustee and Securities Administrator.   (a)   The Indenture Trustee and the Securities Administrator may rely on any document believed by it to be genuine and to have been signed or presented by the proper person. The Indenture Trustee and the Securities Administrator need not investigate any fact or matter stated in the document.

(b)   Before the Indenture Trustee or the Securities Administrator acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel. Neither the Indenture Trustee nor the Securities Administrator shall be liable for any action it takes or omits to take in good faith in reliance on and in accordance with an Officer's Certificate or Opinion of Counsel.

(c)   Neither the Indenture Trustee nor the Securities Administrator shall be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers.

(d)   The Indenture Trustee or the Securities Administrator may consult with counsel, and the written advice or Opinion of Counsel (which shall not be at the expense of the Indenture Trustee or the Securities Administrator) with respect to legal matters relating to this Indenture, the other Basic Documents and the Notes shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the written advice or opinion of such counsel.

(e)   For the limited purpose of effecting any action to be undertaken by each of the Indenture Trustee and the Securities Administrator, but not specifically as a duty of the Indenture Trustee or the Securities Administrator in the Indenture, each of the Indenture Trustee and the

42

Securities Administrator may execute any of the trusts or powers hereunder or perform any duties hereunder, either directly or by or through agents, attorneys, custodians or nominees appointed with due care, and shall not be responsible for any willful misconduct or negligence on the part of any agent, attorney, custodian or nominee so appointed.

(f)     The Securities Administrator or its Affiliates are permitted to receive additional compensation that could be deemed to be in the Securities Administrator's economic self-interest for (i) serving as investment adviser, administrator, shareholder servicing agent, custodian or sub-custodian with respect to certain of the Permitted Investments, (ii) using Affiliates to effect transactions in certain Permitted Investments and (iii) effecting transactions in certain Permitted Investments. Such compensation shall not be considered an amount that is reimbursable or payable to the Securities Administrator (i) as part of the compensation hereunder or (ii) out of Available Funds.

(g)     Anything in this Indenture to the contrary notwithstanding, in no event shall the Indenture Trustee or the Securities Administrator be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Indenture Trustee or the Securities Administrator has been advised of the likelihood of such loss or damage and regardless of the form of action.

(h)     None of the Securities Administrator, the Issuing Entity or the Indenture Trustee shall be responsible for the acts or omissions of the other, it being understood that this Indenture shall not be construed to render them partners, joint venturers or agents of one another.

(i)     Neither the Indenture Trustee nor the Securities Administrator shall be required to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if there is reasonable ground for believing that the repayment of such funds or indemnity reasonably satisfactory to it against such risk or liability is not reasonably assured to it, and none of the provisions contained in this Indenture shall in any event require the Indenture Trustee or the Securities Administrator to perform, or be responsible for the manner of performance of, any of the obligations of the Master Servicer under the Sale and Servicing Agreement, except during such time, if any, as the Indenture Trustee shall be the successor to, and be vested with the rights, duties, powers and privileges of, the Master Servicer in accordance with the terms of the Sale and Servicing Agreement.

(j)     Except for those actions that the Indenture Trustee or the Securities Administrator are required to take hereunder, neither the Indenture Trustee nor the Securities Administrator shall have any obligation or liability to take any action or to refrain from taking any action hereunder in the absence of written direction as provided hereunder.

(k)     Neither the Indenture Trustee nor the Securities Administrator shall be under any obligation to exercise any of the trusts or powers vested in it by this Indenture, other than its obligation to give notices pursuant to this Indenture, or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Noteholders pursuant to the provisions of this Indenture, unless such Noteholders shall have offered to the Indenture Trustee or the Securities Administrator, as applicable, reasonable

43

security or indemnity against the costs, expenses and liabilities which may be incurred therein or thereby.   Nothing contained herein shall, however, relieve the Indenture Trustee of the obligation, upon the occurrence of an Event of Default of which a Responsible Officer of the Indenture Trustee has actual knowledge (which has not been cured or waived), to exercise such of the rights and powers vested in it by this Indenture and to use the same degree of care and skill in their exercise as a prudent person would exercise under the circumstances in the conduct of his own affairs.

(l)      Neither the Indenture Trustee nor the Securities Administrator shall be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Note Insurer or Holders of Notes representing not less than 25% of the Note Principal Balance of the Notes and provided that the payment within a reasonable time to the Indenture Trustee or the Securities Administrator, as applicable, of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Indenture Trustee or the Securities Administrator, as applicable, reasonably assured to the Indenture Trustee by the security afforded to it by the terms of this Indenture. The Indenture Trustee or the Securities Administrator may require reasonable indemnity against such expense or liability as a condition to taking any such action. The reasonable expense of every such examination shall be paid by the Noteholders requesting the investigation.

(m)      Should the Indenture Trustee or the Securities Administrator deem the nature of any action required on its part to be unclear, the Indenture Trustee or the Securities Administrator, respectively, may require prior to such action that it be provided by the Depositor with reasonable further instructions.

(n)      The right of the Indenture Trustee or the Securities Administrator to perform any discretionary act enumerated in this Indenture shall not be construed as a duty, and neither the Indenture Trustee nor the Securities Administrator shall be accountable for other than its negligence or willful misconduct in the performance of any such act.

(o)      Neither the Indenture Trustee nor the Securities Administrator shall be required to give any bond or surety with respect to the execution of the trust created hereby or the powers granted hereunder.

(p)      Neither the Indenture Trustee nor the Securities Administrator shall have any duty to conduct any affirmative investigation as to the occurrence of any condition requiring the repurchase of any HELOC by the Seller pursuant to this Indenture, the Sale and Servicing Agreement or the Mortgage Loan Purchase Agreement, as applicable, or the eligibility of any HELOC for purposes of this Indenture.

(q)      The Indenture Trustee shall not be deemed to have notice or actual knowledge of any Default or Event of Default unless actually known to a Responsible Officer of the Indenture Trustee or written notice thereof (making reference to this Indenture or the Notes) is received by the Indenture Trustee at the Corporate Trust Office.

44

Section 6.03    Individual Rights of Indenture Trustee.    The Indenture Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuing Entity or its Affiliates with the same rights it would have if it were not Indenture Trustee, subject to the requirements of the Trust Indenture Act. Any Note Registrar, co-registrar or co-paying agent may do the same with like rights. However, the Indenture Trustee must comply with Section 6.11 hereof.

Section 6.04    Indenture Trustee's and Securities Administrator's Disclaimer.    Neither the Indenture Trustee nor the Securities Administrator shall be responsible for and makes no representation as to the validity or adequacy of this Indenture, the Notes or any other Basic Document, it shall not be accountable for the Issuing Entity's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Issuing Entity in the Indenture or in any document issued in connection with the sale of the Notes or in the Notes other than the Securities Administrator's certificate of authentication.

Section 6.05    Notice of Event of Default.    Subject to Section 5.01, the Indenture Trustee shall promptly mail to each Noteholder and the Note Insurer notice of the Event of Default after it is known to a Responsible Officer of the Indenture Trustee, unless such Event of Default shall have been waived or cured. Except in the case of an Event of Default in payment of principal of or interest on any Note, the Indenture Trustee may withhold the notice if and so long as a committee of its Responsible Officers in good faith determines that withholding the notice is in the best interests of Noteholders.

Section 6.06    Reports to Residual Certificateholders.    The Securities Administrator shall furnish quarterly to the Holders of the Residual Certificates each applicable Form 1066Q and shall respond promptly to written requests made not more frequently than quarterly by any Holder of a Residual Certificate with respect to the following matters:

(i)    The original projected principal and interest cash flows on the Closing Date on each class of Regular Interests and Residual Interests created hereunder and on the HELOCs, based on the Prepayment Assumption;

(ii)    The projected remaining principal and interest cash flows as of the end of any calendar quarter with respect to each class of Regular Interests and Residual Interests created hereunder and the HELOCs, based on the Prepayment Assumption;

(iii)    The applicable Prepayment Assumption and any interest rate assumptions used in determining the projected principal and interest cash flows described above; and

(iv)    The original issue discount (or, in the case of the HELOCs, market discount) or premium accrued or amortized through the end of such calendar quarter with respect to each class of Regular Interests or Residual Interests created hereunder and to the HELOCs, together with each constant yield to maturity used in computing the same.

Certain information pursuant to clauses (i) and (iii) above shall be provided by the Depositor.

45

Section 6.07 Compensation. An annual fee shall be paid to the Indenture Trustee by the Master Servicer pursuant to a separate agreement between the Indenture Trustee and the Master Servicer. In addition, the Indenture Trustee and the Securities Administrator will each be entitled to recover from the Payment Account pursuant to Section 4.05 of the Sale and Servicing Agreement all reasonable out-of-pocket expenses, disbursements and advances and the expenses of the Indenture Trustee and the Securities Administrator, respectively, in connection with any breach of this Indenture or any claim or legal action (including any pending or threatened claim or legal action) or otherwise incurred or made by the Indenture Trustee or the Securities Administrator, respectively, in the administration of the trusts hereunder (including the reasonable compensation, expenses and disbursements of its counsel) except any such expense, disbursement or advance as may arise from its own negligence or intentional misconduct or which is the responsibility of the Noteholders as provided herein. Such compensation and reimbursement obligation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust. Additionally, each of the Indenture Trustee and the Securities Administrator (including in their individual capacity) and any director, officer, employee or agent of the Indenture Trustee or the Securities Administrator shall be indemnified by the Trust and held harmless against any loss, liability or expense (including reasonable attorney's fees and expenses) incurred in the administration of this Indenture (other than its ordinary out of pocket expenses incurred hereunder) or in connection with any claim or legal action relating to (a) the Basic Documents, (b) the Notes or (c) the HELOCs, other than any loss, liability or expense incurred by reason of its own negligence or intentional misconduct, or which is the responsibility of the Noteholders as provided herein.

The Issuing Entity's payment obligations to the Indenture Trustee and Securities Administrator pursuant to this Section 6.07 shall survive the discharge of this Indenture and the termination or resignation of the Indenture Trustee or Securities Administrator. When the Indenture Trustee or the Securities Administrator incurs expenses after the occurrence of an Event of Default with respect to the Issuing Entity, the expenses are intended to constitute expenses of administration under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or similar law.

Section 6.08 Replacement of Indenture Trustee and the Securities Administrator. No resignation or removal of the Indenture Trustee or the Securities Administrator and no appointment of a successor Indenture Trustee or a successor Securities Administrator shall become effective until the acceptance of appointment by the successor Indenture Trustee pursuant to this Section 6.08. The Indenture Trustee or the Securities Administrator may resign at any time by so notifying the Issuing Entity and the Note Insurer. In the event that the Indenture Trustee determines that a conflict of interest exists between the Holders of the Class A Notes and the Holders of any Class of Subordinate Notes, then the Indenture Trustee shall be entitled to resign as the indenture trustee for all Classes of Notes other than the Class A Notes. In such event the Holders of a majority of Note Principal Balances of all of the Subordinate Notes shall designate a separate indenture trustee to represent their interests hereunder. The Note Insurer or, if a Note Insurer Default exists, the Holders of a majority of Note Principal Balances of each Class of Notes may remove the Indenture Trustee by so notifying the Indenture Trustee and may appoint a successor Indenture Trustee. The Issuing Entity shall, with the consent of the Note Insurer so long as no Note Insurer Default exists remove the Indenture Trustee or the Securities Administrator, as applicable, if:

46

(i)    the Indenture Trustee or the Securities Administrator fails to comply with or qualify pursuant to the provisions of Section 6.11 hereof;

(ii)    the Indenture Trustee or the Securities Administrator is adjudged a bankrupt or insolvent;

(iii)    a receiver or other public officer takes charge of the Indenture Trustee or the Securities Administrator or its property;

(iv)    the Indenture Trustee or the Securities Administrator otherwise becomes incapable of acting; or

(v)    the Master Servicer is terminated pursuant to the Sale and Servicing Agreement.

If the Indenture Trustee or the Securities Administrator resigns or is removed or if a vacancy exists in the office of the Indenture Trustee or the Securities Administrator for any reason (the Indenture Trustee or the Securities Administrator in such event being referred to herein as the retiring Indenture Trustee or the retiring Securities Administrator ), the Issuing Entity shall, with the consent of the Note Insurer so long as no Note Insurer Default exists promptly appoint a successor Indenture Trustee or successor Securities Administrator.

Each of a successor Indenture Trustee or successor Securities Administrator shall deliver a written acceptance of its appointment to the retiring Indenture Trustee, to the Note Insurer or the retiring Securities Administrator, as applicable, and to the Issuing Entity. Thereupon, the resignation or removal of the retiring Indenture Trustee or the retiring Securities Administrator shall become effective, and the successor Indenture Trustee or successor Securities Administrator shall have all the rights, powers and duties of the Indenture Trustee or the Securities Administrator, as applicable, under this Indenture. The successor Indenture Trustee or successor Securities Administrator shall each mail a notice of its succession to Noteholders. The retiring Indenture Trustee or the retiring Securities Administrator shall promptly transfer all property held by it as Indenture Trustee or Securities Administrator, as applicable, to the successor Indenture Trustee or successor Securities Administrator.

If a successor Indenture Trustee or successor Securities Administrator does not take office within 60 days after the retiring Indenture Trustee or the retiring Securities Administrator, as applicable, resigns or is removed, the retiring Indenture Trustee, the Note Insurer or the retiring Securities Administrator, the Issuing Entity or the Holders of a majority of Note Principal Balances of the Notes may petition any court of competent jurisdiction for the appointment of a successor Indenture Trustee or successor Securities Administrator.

Notwithstanding the replacement of the Indenture Trustee or the Securities Administrator pursuant to this Section, the Issuing Entity's obligations under Section 6.07 shall continue for the benefit of the retiring Indenture Trustee or the retiring Securities Administrator.

Section 6.09    Successor Indenture Trustee and Securities Administrator by Merger.    If the Indenture Trustee or the Securities Administrator consolidates with, merges or converts into, or transfers all or substantially all of its corporate trust business or assets to, another corporation

47

or banking association, the resulting, surviving or transferee corporation, without any further act, shall be the successor Indenture Trustee or successor Securities Administrator, as applicable; provided, that such corporation or banking association shall be otherwise qualified and eligible under Section 6.11 hereof. The Indenture Trustee and the Securities Administrator shall provide the Rating Agencies, the Note Insurer and the Issuing Entity with prior written notice, and the Noteholders with prompt written notice, of any such transaction.

If at the time such successor or successors by merger, conversion or consolidation to the Indenture Trustee shall succeed to the trusts created by this Indenture and any of the Notes shall have been authenticated but not delivered, any such successor to the Indenture Trustee may adopt the certificate of authentication of any predecessor trustee and deliver such Notes so authenticated; and if at that time any of the Notes shall not have been authenticated, any successor to the Indenture Trustee may authenticate such Notes either in the name of any predecessor hereunder or in the name of the successor to the Indenture Trustee.

Section 6.10   Appointment of Co-Indenture Trustee or Separate Indenture Trustee.   (a) Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Trust Estate may at the time be located, the Indenture Trustee shall have the power and may, with the consent of Note Insurer, execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Trust Estate, and to vest in such Person or Persons, in such capacity and for the benefit of the Noteholders and the Note Insurer, such title to the Trust Estate, or any part hereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee or the Note Insurer may consider necessary or desirable. No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 6.11 hereof.

(b)   Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)   all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Trust Estate or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)   no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)   the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

48

(c)     Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Article VI. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Indenture Trustee or separately, as may be provided therein, subject to all the provisions of this Indenture, specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording protection to, the Indenture Trustee. Every such instrument shall be filed with the Indenture Trustee.

(d)     Any separate trustee or co-trustee may at any time constitute the Indenture Trustee, its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Indenture Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

Section 6.11    Eligibility; Disqualification.  The Indenture Trustee shall at all times be an entity that meets the requirements of Section 3(c)(3) under the Investment Company Act of 1940 applicable to a trustee, and shall have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition and it or its parent shall have a long-term debt rating of Baa3 or better by Moody's.

Each of the Indenture Trustee and the Securities Administrator hereunder shall at all times be a corporation or an association organized and doing business under the laws of any state or the United States of America, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by federal or state authority. In case at any time the Indenture Trustee or the Securities Administrator shall cease to be eligible in accordance with the provisions of this Section, the Trustee or the Securities Administrator, as the case may be, shall resign immediately in the manner and with the effect specified in Section 6.08 hereof.

The Securities Administrator and any successor Securities Administrator (i) may not be an Originator, the Master Servicer, a subservicer, the Depositor or an affiliate of the Depositor unless the Securities Administrator is an institutional trust department, (ii) must be authorized to exercise corporate trust powers under the laws of its jurisdiction of organization, and (iii) must at all times be rated at least "A/F1" by Fitch if Fitch is a rating agency.

The Indenture Trustee shall notify the Rating Agencies of any change of Securities Administrator. Any resignation or removal of the Indenture Trustee or the Securities Administrator and appointment of a successor trustee or trust administrator, as the case may be, pursuant to any of the provisions of this Section shall not become effective until acceptance of appointment by the successor indenture trustee or securities administrator as provided in Section 6.08 hereof. Notwithstanding the foregoing, in the event the Securities Administrator advises the Indenture Trustee that it is unable to continue to perform its obligations pursuant to the terms of this Indenture prior to the appointment of a successor, the Indenture Trustee shall be obligated to

49

perform such obligations until a new securities administrator is appointed. Such performance shall be without prejudice to any claim by a party hereto or beneficiary hereof resulting from the Securities Administrator's breach of its obligations hereunder. As compensation therefore, the Indenture Trustee shall be entitled to all fees the Securities Administrator would have been entitled to if it had continued to act hereunder.

Section 6.12   Representations and Warranties.   The Indenture Trustee hereby represents that:

(i)     The Indenture Trustee is duly organized and validly existing as a national banking association in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted;

(ii)    The Indenture Trustee has the power and authority to execute and deliver this Indenture and to carry out its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the Indenture Trustee by all necessary corporate action;

(iii)   The consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the articles of incorporation or bylaws of the Indenture Trustee or any agreement or other instrument to which the Indenture Trustee is a party or by which it is bound; and

(iv)    To the Indenture Trustee's knowledge, there are no proceedings or investigations pending or threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Indenture Trustee or its properties: (A) asserting the invalidity of this Indenture, (B) seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (C) seeking any determination or ruling that might materially and adversely affect the performance by the Indenture Trustee of its obligations under, or the validity or enforceability of, this Indenture.

Section 6.13   Representations and Warranties.   The Securities Administrator hereby represents that:

(i)     The Securities Administrator is duly organized and validly existing as a national banking association in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted;

(ii)    The Securities Administrator has the power and authority to execute and deliver this Indenture and to carry out its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the Securities Administrator by all necessary corporate action;

(iii)   The consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the

50

articles of incorporation or bylaws of the Securities Administrator or any agreement or other instrument to which the Securities Administrator is a party or by which it is bound; and

(iv)    To the Securities Administrator's knowledge, there are no proceedings or investigations pending or threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Securities Administrator or its properties: (A) asserting the invalidity of this Indenture, (B) seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (C) seeking any determination or ruling that might materially and adversely affect the performance by the Securities Administrator of its obligations under, or the validity or enforceability of, this Indenture.

Section 6.14    Directions to Indenture Trustee and the Securities Administrator.

(a)    The Indenture Trustee is hereby directed to accept the pledge of the HELOCs and hold the assets of the Trust in trust for the Noteholders and the Note Insurer and to exercise and deliver the Insurance Agreement and the Custodial Agreement and to acknowledge and agree to the Assignment Agreement.

(b)    the Securities Administrator is hereby directed to (i) authenticate and deliver the Notes substantially in the form prescribed by Exhibits A-1, A-2 and A-3 to this Indenture in accordance with the terms of this Indenture and to take all other actions as shall be required to be taken by the Securities Administrator pursuant to the terms of this Indenture and the other Basic Documents.

Section 6.15    The Agents. The provisions of this Indenture relating to the limitations of the Indenture Trustee's liability and to its rights and protections shall inure also to the Paying Agent, Note Registrar and Certificate Registrar.

## ARTICLE VII

## NOTEHOLDERS' LISTS AND REPORTS

Section 7.01    Issuing Entity To Furnish Securities Administrator and Indenture Trustee Names and Addresses of Noteholders.  The Issuing Entity will furnish or cause to be furnished to the Securities Administrator and the Indenture Trustee (a) not more than five days after each Record Date, a list, in such form as the Securities Administrator may reasonably require, of the names and addresses of the Holders of Notes as of such Record Date, and (b) at such other times as the Securities Administrator and the Note Insurer may request in writing, within 30 days after receipt by the Issuing Entity of any such request, a list of similar form and content as of a date not more than 10 days prior to the time such list is furnished; provided, however, that so long as the Securities Administrator is the Note Registrar, no such list shall be required to be furnished to the Securities Administrator.

Section 7.02    Preservation of Information; Communications to Noteholders.  (a)  The Securities Administrator shall preserve, in as current a form as is reasonably practicable, the names and addresses of the Holders of Notes contained in the most recent list furnished to the Securities Administrator as provided in Section 7.01 hereof and the names and addresses of Holders of Notes received by the Securities Administrator in its capacity as Note Registrar. The Securities Administrator may destroy any list furnished to it as provided in such Section 7.01 upon receipt of a new list so furnished.

(b)      Noteholders may communicate with other Noteholders with respect to their rights under this Indenture or under the Notes.

Section 7.03    Financial Information.    For so long as any of the Notes bearing a restrictive legend remains outstanding and is a "restricted security" within the meaning of Rule 144(a)(3) under the Securities Act, the Issuing Entity shall, during any period in which it is not subject to Section 13 or 15(d) of the Exchange Act nor exempt from reporting pursuant to Rule 12g3-2(b) under such Act, cause the Securities Administrator to make available to any Holder of any such Note in connection with any sale thereof and to any prospective purchaser of any such Note from such Holder, in each case upon request, the information specified in, and meeting the requirements of, Rule 144A(d)(4) under the Securities Act that is in the Securities Administrator's possession or reasonably obtainable by it, if requested, from the Master Servicer (and to the extent such information is in the Master Servicer's possession or is reasonably obtainable by it from the Servicers).

Unless the Issuing Entity otherwise determines, the fiscal year of the Issuing Entity shall end on December 31 of each year.

Section 7.04    Statements to Noteholders and Certificateholders.    (a)   With respect to each Payment Date, the Securities Administrator shall make available via the Securities Administrator's website, initially located at www.etrustee.net, to each Noteholder and each Certificateholder, the Indenture Trustee, the Depositor, the Issuing Entity, the Seller, the Owner Trustee, the Certificate Paying Agent, the Note Insurer and the Rating Agencies, a statement setting forth the following information as to the Notes, to the extent applicable:

(i)     the applicable Record Dates, Accrual Periods, Interest Determination Dates and Payment Dates;

(ii)    the Available Funds, the Net WAC Cap Rate Carryover Amount on each Class of Notes for such Payment Date and the aggregate Unpaid Interest Shortfall Amount on each Class of Notes for such Payment Date;

(iii)   the amount of fees and expenses accrued and paid;

(iv)    the amount of servicing fees for the related Collection Period;

(v)     (a) the amount of such distribution to each Class of Notes (other than the Class A-IO Notes) applied to reduce the Note Principal Balance thereof, and (b) the aggregate amount included therein representing Principal Prepayments;

(vi)    the amount of such distribution to Holders of each Class of Notes allocable to interest;

(vii)   the amount of any distribution to the Certificates;

(viii)  the Overcollateralization Amount and the Overcollateralization Target Amount;

(ix)    the Insured Amount, if any, paid by the Note Insurer under the Policy for such Payment Date and the aggregate Insured Amounts for all prior Payment Dates paid by the Note Insurer under the Policy and not yet reimbursed;

(x)     if the distribution to the Holders of any Class of Notes is less than the full amount that would be distributable to such Holders if there were sufficient funds available therefor, the amount of the shortfall;

(xi)    the number and the aggregate Scheduled Principal Balance of the HELOCs as of the end of the related Due Period and the amount of draws on the HELOCs;

(xii)   the aggregate Note Principal Balance of each Class of Notes (other than the Class A-IO Notes), after giving effect to the amounts distributed on such Payment Date, separately identifying any reduction thereof due to Charge-Off Amounts and the aggregate Note Principal Balance of the Notes (other than the Class A-IO Notes) after giving effect to the distribution of principal on such Payment Date;

(xiii)  the number and aggregate Scheduled Principal Balance of the HELOCs (a) as to which the Monthly Payment is delinquent for 31-60 days, 61-90 days, 91 or more days, respectively, (b) in foreclosure and delinquent for 31-60 days, 61-90 days, 91 or more days, respectively, (c) that have become REO Property, and (d) subject to bankruptcy or similar insolvency proceedings, in each case as of the end of the preceding calendar month;

(xiv)   the aggregate Charge-Off Amounts with respect to the related Payment Date and cumulative Charge-Off Amounts since the Closing Date;

(xv)    the number and aggregate Scheduled Principal Balance of HELOCs repurchased pursuant to the Mortgage Loan Purchase Agreement for the related Payment Date and cumulatively since the Closing Date;

(xvi)    the book value (if available) of any REO Property;

(xvii)    the amount of any Relief Act Shortfalls for such Payment Date;

(xviii)    the aggregate Scheduled Principal Balance of HELOCs purchased pursuant to Section 2.04 of the Sale and Servicing Agreement for the related Payment Date and cumulatively since the Closing Date;

(xix)    a statement as to whether each element in the definitions of Trigger Event and Rapid Amortization Trigger Event, respectively, is satisfied;

(xx)    if applicable, material modifications, extensions or waivers to pool asset terms, fees, penalties or payments during the payment period or that have become material over time;

(xxi)    material breaches of pool asset representations or warranties or transaction covenants;

(xxii)    the 60 Day Plus Delinquent Percentage for the related Payment Date; and

(xxiii)    the special hazard amount, fraud loss amount and bankruptcy amount, if applicable, as of the close of business on the applicable Payment Date and a description of any change in the calculation of these amounts.

Items (iii) and (iv) above shall be presented on the basis of a Note having a $1,000 denomination. In addition, by January 31 of each calendar year following any year during which the Notes are outstanding, the Securities Administrator shall furnish a report to each Noteholder of record if so requested in writing at any time during each calendar year as to the aggregate of amounts reported pursuant to (iii) and (iv) with respect to the Notes for such calendar year.

The Securities Administrator may conclusively rely upon the information provided by the Master Servicer to the Securities Administrator in its preparation of monthly statements to Noteholders.

The Securities Administrator will make the monthly statements provided for in this section (and, at its option, any additional files containing the same information in an alternative format) available each month to the Note Insurer, each Noteholder and each Certificateholder, the Depositor, the Issuing Entity, the Seller, the Owner Trustee, the Certificate Paying Agent and the Rating Agency via the Securities Administrator's website. The Securities Administrator's website shall initially be located at "www.etrustee.net." Assistance in using the website can be obtained by calling the Securities Administrator's customer service desk at (312) 992-1743. Parties that are unable to use the website are entitled to have a paper copy mailed to them via first class mail by calling the Securities Administrator's customer service desk and indicating such. The Securities Administrator may have the right to change the way the monthly statements

54

are distributed in order to make such distribution more convenient and/or more accessible to the above parties and the Securities Administrator shall provide timely and adequate notification to all above parties regarding any such changes.

(b)     The Securities Administrator shall be entitled to rely on but shall not be responsible for the content or accuracy of any information provided by third parties for purposes of preparing the monthly statement, and may affix thereto any disclaimer it deems appropriate in its reasonable discretion (without suggesting liability on the part of any other party hereto).

## ARTICLE VIII

## ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01   Collection of Money.   Except as otherwise expressly provided herein, the Securities Administrator may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Securities Administrator pursuant to this Indenture. The Securities Administrator shall apply all such money received by it as provided in this Indenture. Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Trust Estate, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings. Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture and any right to proceed thereafter as provided in Article V.

Section 8.02   Officer's Certificate.   The Indenture Trustee shall receive at least seven Business Days' notice when requested by the Issuing Entity to take any action pursuant to Section 8.06(a) hereof, accompanied by copies of any instruments to be executed, and the Indenture Trustee shall also require, as a condition to such action, an Officer's Certificate, in form and substance satisfactory to the Indenture Trustee, stating the legal effect of any such action, outlining the steps required to complete the same, and concluding that all conditions precedent to the taking of such action have been complied with.

Section 8.03   Termination Upon Distribution to Noteholders.   This Indenture and the respective obligations and responsibilities of the Issuing Entity, the Securities Administrator and the Indenture Trustee created hereby shall terminate upon the distribution to Noteholders, the Note Insurer, the Certificate Paying Agent on behalf of the Certificateholders, the Securities Administrator and the Indenture Trustee of all amounts required to be distributed pursuant to Article III; provided, however, that in no event shall the trust created hereby continue beyond the earlier of (i) the expiration of 21 years from the death of the survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof or (ii) the Latest Possible Maturity Date.

Section 8.04   Release of Trust Estate.   (a)   Subject to the payment of its fees and expenses, the Indenture Trustee may, and when required by the provisions of this Indenture shall, execute instruments to release property from the lien of this Indenture, or convey the Indenture Trustee's interest in the same, in a manner and under circumstances that are not inconsistent with the provisions of this Indenture, including for the purposes of any purchase of a HELOC by the majority Holder of the Class E Certificates pursuant to Section 8.06 of this Indenture. No party relying upon an instrument executed by the Indenture Trustee as provided in Article VIII hereunder shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent, or see to the application of any monies.

(b)   The Indenture Trustee shall, at such time as (i) it is notified by the Securities Administrator that there are no Notes Outstanding, (ii) all sums then due and unpaid to the Indenture Trustee pursuant to this Indenture have been paid and (iii) all sums due to the Note

56

Insurer have been paid, release any remaining portion of the Trust Estate that secured the Notes from the lien of this Indenture.

(c)     The Indenture Trustee shall release property from the lien of this Indenture pursuant to this Section 8.05 only upon receipt of a request from the Issuing Entity and a letter from the Note Insurer stating that the Note Insurer has no objection to such request from the Issuing Entity.

Section 8.05   Surrender of Notes Upon Final Payment.   By acceptance of any Note, the Holder thereof agrees to surrender such Note to the Securities Administrator promptly, prior to such Noteholder's receipt of the final payment thereon.

Section 8.06   Optional Redemption of the HELOCs.   (a)  The Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, shall have the option to purchase the assets of the Trust and thereby cause the redemption of the Notes, in whole, but not in part, on or after the Payment Date on which the sum of the Note Principal Balances of the Notes is reduced to an amount less than or equal to 10% of the sum of the original Note Principal Balances of the Notes.  Such optional purchase shall be subject to the Note Insurer's consent if the termination would result in a draw on the Policy or if, after such purchase, amounts would remain owed to the Note Insurer under either this Indenture or the Insurance Agreement.  The aggregate redemption price (the "Redemption Price") for the Notes will be equal to the lesser of (i) the fair market value of the HELOCs and (ii) the sum of the outstanding principal balance of the HELOCs, and accrued and unpaid interest thereon at the weighted average of the mortgage rates through the day preceding the final Payment Date; provided that the option shall only be exercised if the purchase price is sufficient to repay all outstanding principal and accrued and unpaid interest on the Notes and all amounts owing under the Insurance Agreement.

(b)     In order to exercise the foregoing option, the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, shall provide written notice of its exercise of such option to the Securities Administrator, the Note Insurer, the Issuing Entity, the Owner Trustee and the Master Servicer at least 15 days prior to its exercise.  Following receipt of the notice, the Securities Administrator shall provide written notice to the Noteholders of the final payment on the Notes.  In addition, the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, shall, not less than one Business Day prior to the proposed Payment Date on which such redemption is to be made, deposit the Redemption Price specified in (a) above with the Securities Administrator, who shall deposit the Redemption Price into the Payment Account and shall, on the Payment Date after receipt of the funds, apply such funds to make final payments of principal and interest on the Notes in accordance with Section 3.02 hereof and payment to the Securities Administrator and the Master Servicer as set forth in (a) above, and this Indenture shall be discharged subject to the provisions of Section 4.09 hereof. If for any reason the amount deposited by the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, is not sufficient to make such redemption or such redemption cannot be completed for any reason, (a) the amount so deposited by the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, with the Securities Administrator shall be immediately returned to the Holder of the Class E

57

Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, in full and shall not be used for any other purpose or be deemed to be part of the Trust Estate and (b) the Note Principal Balance or the Notional Amount, as applicable, of the Notes shall continue to bear interest at the related Note Interest Rate.

(c)     Upon exercise by the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, of its purchase option as provided in clause (a) above, the Notes shall be redeemed and the Trust Estate shall be terminated in accordance with the following additional requirements, unless the Indenture Trustee, the Securities Administrator and Owner Trustee have been supplied with an Opinion of Counsel addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and Owner Trustee, at the expense of the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, to the effect that the failure of the Trust Estate to comply with the requirements of this clause (c) will not (i) result in the imposition of taxes on "prohibited transactions" of a REMIC created hereunder, or (ii) cause a REMIC created hereunder to fail to qualify as a REMIC at any time that any Notes or Certificates are outstanding:

(i)     The Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, shall establish a 90-day liquidation period and notify the Indenture Trustee, the Securities Administrator and Owner Trustee thereof, and the Securities Administrator shall in turn specify the first day of such period in a statement attached to the tax return for each REMIC created hereunder pursuant to Treasury Regulation Section 1.860F-1. The Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, shall satisfy all the requirements of a "qualified liquidation" under Section 860F of the Code and any regulations thereunder, as evidenced by an Opinion of Counsel obtained at the expense of the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable;

(ii)     During such 90-day liquidation period, and at or prior to the time of making the final payment on the Notes and Certificates, the Indenture Trustee shall sell all of the assets of REMIC I for cash; and

(iii)     At the time of the making of the final payment on the Notes and Certificates, the Securities Administrator and Owner Trustee shall distribute or credit, or cause to be distributed or credited, to the Certificate Paying Agent for distribution to the Holders of the Residual Certificates all cash on hand (other than cash retained to meet claims), and REMIC I shall terminate at that time.

(iv)     By their acceptance of the Notes, the Holders thereof hereby authorize the adoption of a 90-day liquidation period and the adoption of a plan of complete liquidation for each REMIC created hereunder, which authorization shall be binding upon all successor Noteholders.

(v)     The Securities Administrator, as agent for each REMIC, hereby agrees to adopt and sign such a plan of complete liquidation meeting the requirements for a "qualified liquidation" under Section 860F of the Code and any regulations thereunder upon the written request of the Class E Certificateholder or the majority Holder of the

Class E Certificates, as applicable, and the receipt of the Opinion of Counsel referred to in clause (c)(i) above and to take such other action in connection therewith as may be reasonably requested by the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable.

## ARTICLE IX

## SUPPLEMENTAL INDENTURES

Section 9.01 <u>Supplemental Indentures Without Consent of Noteholders</u>. (a) Without the consent of the Holders of any Notes or Certificates but with prior written consent of the Note Insurer (which consent shall not be unreasonably withheld) and prior notice to the Rating Agencies, the Issuing Entity, the Indenture Trustee, the Note Insurer and the Securities Administrator, when authorized by an Issuing Entity Request, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Indenture Trustee and the Securities Administrator, for any of the following purposes:

(i)     to correct or amplify the description of any property at any time subject to the lien of this Indenture, or better to assure, convey and confirm unto the Indenture Trustee any property subject or required to be subjected to the lien of this Indenture, or to subject to the lien of this Indenture additional property;

(ii)    to evidence the succession, in compliance with the applicable provisions hereof, of another person to the Issuing Entity, and the assumption by any such successor of the covenants of the Issuing Entity herein and in the Notes contained;

(iii)   to add to the covenants of the Issuing Entity, for the benefit of the Holders of the Notes and Certificates, or to surrender any right or power herein conferred upon the Issuing Entity;

(iv)    to cure any ambiguity, to correct or supplement any provision herein or in any supplemental indenture that may be inconsistent with any other provision herein or in any supplemental indenture;

(v)     to make any other provisions with respect to matters or questions arising under this Indenture or in any supplemental indenture; provided, that such action shall not materially and adversely affect the interests of the Holders of the Notes or adversely affect the interests of the Note Insurer; provided further, that such supplemental indenture will be deemed to not materially and adversely affect the interests of the Holders of the Notes if a Rating Confirmation is received with respect to such supplemental indenture;

(vi)    to evidence and provide for the acceptance of the appointment hereunder by a successor trustee with respect to the Notes and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Article VI hereof; or

(vii)   to modify, eliminate or add to any of the provisions herein to such extent as shall be necessary or appropriate to maintain the qualification of any REMIC created hereunder as a REMIC under the Code or to avoid or minimize the risk of the imposition of any tax on any REMIC created hereunder, provided that the Indenture Trustee, the Securities Administrator, the Note Insurer and Owner Trustee have been provided an Opinion of Counsel addressed to the Indenture Trustee, the Securities Administrator and Owner Trustee, which opinion shall be an expense of the party requesting such opinion but in any case shall not be an

60

expense of the Indenture Trustee, the Securities Administrator, Owner Trustee, the Note Insurer or the Trust Estate, to the effect that such action is necessary or appropriate to maintain such qualification or to avoid or minimize the risk of the imposition of such a tax;

*provided, however*, that no such indenture supplements shall be entered into unless the Indenture Trustee, the Note Insurer, Owner Trustee and the Securities Administrator shall have received an Opinion of Counsel not at the expense of the Indenture Trustee or the Securities Administrator as to the enforceability of any such indenture supplement and to the effect that (i) such indenture supplement is permitted hereunder and will not materially and adversely affect the Holders of the Notes or the Note Insurer and (ii) entering into such indenture supplement will not cause the imposition of any tax on any REMIC created hereunder, any Noteholder or any Certificateholder or cause any of REMIC created hereunder to cease to qualify as a REMIC at any time that any Notes or Certificates are outstanding.

The Indenture Trustee and the Securities Administrator are hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations that may be therein contained.

(b) With the consent of the Note Insurer (which consent shall not be unreasonably withheld), the Issuing Entity, the Securities Administrator and the Indenture Trustee, when authorized by an Issuing Entity Request, in the case of the Securities Administrator and the Indenture Trustee may, also without the consent of any of the Holders of the Notes and prior notice to the Rating Agency enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; provided, however, that such action as evidenced by an Opinion of Counsel addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and Owner Trustee, (i) is permitted by this Indenture, (ii) shall not adversely affect in any material respect the interests of any Noteholder or adversely affect the interests of the Note Insurer and (iii) shall not cause the imposition of any tax on any REMIC created hereunder, any Noteholder or any Certificateholder or cause any of REMIC created hereunder to cease to qualify as a REMIC at any time that any Notes or Certificates are outstanding.

Section 9.02    Supplemental Indentures With Consent of Noteholders.    The Issuing Entity, the Securities Administrator and the Indenture Trustee, when authorized by an Issuing Entity Request in the case of the Securities Administrator and the Indenture Trustee, also may, with prior notice to the Rating Agencies and, with the consent of the Note Insurer and the Holders of not less than a majority of the Note Principal Balance of each Class of Notes affected thereby, by Act (as defined in Section 10.03 hereof) of such Holders delivered to the Issuing Entity, the Securities Administrator and the Indenture Trustee, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; provided, however, that no such supplemental indenture shall, without the consent of the Holder of each Note affected thereby:

(i)    change the date of payment of any installment of principal of or interest on any Note, or reduce the principal amount thereof or the interest rate thereon, change the

61

provisions of this Indenture relating to the application of collections on, or the proceeds of the sale of, the Trust Estate and to payment of principal of or interest on the Notes, or change any place of payment where, or the coin or currency in which, any Note or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of this Indenture requiring the application of funds available therefor, as provided in Article V, to the payment of any such amount due on the Notes on or after the respective due dates thereof;

(ii)    reduce the percentage of the Note Principal Balances of the Notes, or any Class of Notes, the consent of the Holders of which is required for any such supplemental indenture, or the consent of the Holders of which is required for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(iii)   modify or alter the provisions of the proviso to the definition of the term "Outstanding" or modify or alter the exception in the definition of the term "Holder";

(iv)   reduce the percentage of the Note Principal Balances of the Notes, or any Class of Notes, required to direct the Indenture Trustee to direct the Issuing Entity to sell or liquidate the Trust Estate pursuant to Section 5.04 hereof;

(v)    modify any provision of this Section 9.02 except to increase any percentage specified herein or to provide that certain additional provisions of this Indenture or the Basic Documents cannot be modified or waived without the consent of the Holder of each Note affected thereby;

(vi)   modify any of the provisions of this Indenture in such manner as to affect the calculation of the amount of any payment of interest or principal due on any Note on any Payment Date (including the calculation of any of the individual components of such calculation); or

(vii)  permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Trust Estate or, except as otherwise permitted or contemplated herein, terminate the lien of this Indenture on any property at any time subject hereto or deprive the Holder of any Note of the security provided by the lien of this Indenture;

and *provided, further,* that such action shall not, as evidenced by an Opinion of Counsel addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and Owner Trustee, cause the imposition of any tax on any REMIC created hereunder, any Noteholder or any Certificateholder or cause any of REMIC created hereunder to cease to qualify as a REMIC at any time that any Notes or Certificates are outstanding.

Any such action shall not adversely affect in any material respect the interest of any Holder (other than a Holder who shall consent to such supplemental indenture) as evidenced by an Opinion of Counsel (provided by the Person requesting such supplemental indenture) delivered to the Indenture Trustee and the Securities Administrator.

It shall not be necessary for any Act of Noteholders under this Section 9.02 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Promptly after the execution by the Issuing Entity, the Securities Administrator and the Indenture Trustee of any supplemental indenture pursuant to this Section 9.02, the Securities Administrator shall mail to the Holders of the Notes to which such amendment or supplemental indenture relates a notice setting forth in general terms the substance of such supplemental indenture. Any failure of the Securities Administrator to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

Section 9.03   Execution of Supplemental Indentures.   In executing, or permitting the additional trusts created by, any supplemental indenture permitted by this Article IX or the modification thereby of the trusts created by this Indenture, the Indenture Trustee and the Securities Administrator shall be entitled to receive, and subject to Sections 6.01 and 6.02 hereof, shall be fully protected in relying upon, an Opinion of Counsel not at the expense of the Indenture Trustee or the Securities Administrator stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Indenture Trustee and the Securities Administrator each may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's or the Securities Administrator's own rights, duties, liabilities or immunities under this Indenture or otherwise.

Section 9.04   Effect of Supplemental Indenture.   Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and shall be deemed to be modified and amended in accordance therewith with respect to the Notes affected thereby, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Securities Administrator, the Issuing Entity and the Holders of the Notes shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 9.05   Conformity with Trust Indenture Act.   Every amendment of this Indenture and every supplemental indenture executed pursuant to this Article IX shall conform to the requirements of the Trust Indenture Act as then in effect so long as this Indenture shall then be qualified under the Trust Indenture Act.

Section 9.06   Reference in Notes to Supplemental Indentures.   Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article IX may, and if required by the Securities Administrator shall, bear a notation in form approved by the Securities Administrator as to any matter provided for in such supplemental indenture. If the Issuing Entity or the Securities Administrator shall so determine, new Notes so modified as to conform, in the opinion of the Securities Administrator and the Issuing Entity, to any such supplemental indenture may be prepared and executed by the Issuing Entity and authenticated and delivered by the Securities Administrator in exchange for Outstanding Notes.

## ARTICLE X

## TAX MATTERS

Section 10.01  Description of REMICs and Designation of REMIC Interests.

### REMIC I

As provided herein, the Securities Administrator will elect to treat the segregated pool of assets consisting of the HELOCs and certain other related assets subject to this Indenture and the Basic Documents (other than the Net WAC Cap Rate Carryover Reserve Account) as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC I". The Class S Certificates will be the sole class of Residual Interests in REMIC I for purposes of the REMIC Provisions. The following table irrevocably sets forth the designation, the Uncertificated REMIC I Pass-Through Rate, the initial Uncertificated Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC I Regular Interests. None of the REMIC I Regular Interests will be certificated.

| Designation | Uncertificated REMIC I Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date [1] |
|---|---|---|---|
| Non-IO | Variable[2] | $ 204,343,413.29 | June 25, 2036 |
| 1-IO | Variable[2] | $ 31,371,000.00 | June 25, 2036 |
| 2-IO | Variable[2] | $ 37,646,000.00 | June 25, 2036 |
| 3-IO | Variable[2] | $ 25,097,000.00 | June 25, 2036 |
| 4-IO | Variable[2] | $ 37,646,000.00 | June 25, 2036 |
| 5-IO | Variable[2] | $ 12,548,000.00 | June 25, 2036 |
| 6-IO | Variable[2] | $ 12,549,000.00 | June 25, 2036 |

[1]  For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Payment Date in the month following the maturity date for the HELOC with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC I Regular Interest.

[2]  Calculated in accordance with the definition of "Uncertificated REMIC I Pass-Through Rate" herein.

### REMIC II

As provided herein, the Securities Administrator will elect to treat the segregated pool of assets consisting of the REMIC I Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC II". The Class R-1 Certificates will be the sole class of Residual Interests in REMIC II for purposes of the REMIC Provisions. The following table irrevocably sets forth the designation, the Uncertificated REMIC II Pass-Through Rate, the initial Uncertificated Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC II Regular Interests. None of the REMIC II Regular Interests will be certificated.

| Designation | Uncertificated REMIC II Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date [1] |
|---|---|---|---|
| AA | Variable[2] | $ 353,976,405.02 | June 25, 2036 |
| A | Variable[2] | $ 3,559,630.00 | June 25, 2036 |
| B | Variable[2] | $ 43,340.00 | June 25, 2036 |
| ZZ | Variable[2] | $ 3,621,038.27 | June 25, 2036 |
| A-IO | [2] | [3] | June 25, 2036 |

[1]    For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Payment Date in the month following the maturity date for the HELOC with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC II Regular Interest.

[2]    Calculated in accordance with the definition of "Uncertificated REMIC II Pass-Through Rate" herein.

[3]    REMIC II Regular Interest A-IO will not have an Uncertificated Principal Balance but will accrue interest on its uncertificated notional amount calculated in accordance with the definition of "Uncertificated Notional Amount" herein.

## REMIC III

As provided herein, the Securities Administrator will elect to treat the segregated pool of assets consisting of the REMIC II Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC III". The Class R-2 Certificates will represent the sole class of Residual Interests in REMIC III for purposes of the REMIC Provisions.

The following table irrevocably sets forth the class designation, interest rate, initial principal balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each Class of Notes and the Class E Interest that represent ownership of one or more of the Regular Interests in REMIC III created hereunder.

| Class Designation | Interest Rate | Initial Principal Balance | Latest Possible Maturity Date[1] |
|---|---|---|---|
| A | Variable[2] | $ 355,963,000.00 | June 25, 2036 |
| A-IO | [2] | $ 0 | June 25, 2036 |
| B | Variable[2] | $ 4,334,000.00 | June 25, 2036 |
| Class E Interest | Variable[3] | $ 903,413.29 | June 25, 2036 |

[1]    For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Payment Date in the month following the maturity date for the HELOC with the latest maturity date has been designated as the "latest possible maturity date" for each Note and Class E Interest described above.

[2]    Calculated in accordance with the definition of "Note Interest Rate" herein.

[3]    The Class E Interest will accrue interest at its variable interest rate calculated in accordance with the definition of "Class E Interest Rate" on the Class E Notional Amount of the Class E Interest outstanding from time to time, which shall equal the aggregate Uncertificated Principal Balance of the REMIC II Regular Interests. The Class E Interest will not accrue interest on its Uncertificated Principal Balance.

## REMIC IV

As provided herein, the Securities Administrator will elect to treat the segregated pool of assets consisting of the Class E Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC IV". The Class RX Certificates will represent the sole class of Residual Interests in REMIC IV for purposes of the REMIC Provisions.

The following table irrevocably sets forth the Class designation, interest rate, initial principal balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for the Class of Certificates that represents ownership of one or more of the Regular Interests in REMIC IV created hereunder:

| Class Designation | Interest Rate | Initial Principal Balance | Latest Possible Maturity Date[1] |
|---|---|---|---|
| E | Variable[2] | $903,413.29 | June 25, 2036 |

[1]   For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Payment Date in the month following the maturity date for the HELOC with the latest maturity date has been designated as the "latest possible maturity date" for the Class E Certificates described above.

[2]   The Class E Certificates will receive 100% of amounts received in respect of the Class E Interest.

Section 10.02   REMIC Elections and REMIC Distributions.

(a)   The Securities Administrator shall elect that each of REMIC I, REMIC II, REMIC III and REMIC IV shall be treated as a REMIC under Section 860D of the Code. Any inconsistencies or ambiguities in this Indenture or any of the Basic Documents or in the administration of this Indenture or the Basic Documents shall be resolved in a manner that preserves the validity of such REMIC elections.

(b)   On each Payment Date, the following amounts, in the following order of priority, shall be distributed by REMIC I to REMIC II on account of the REMIC I Regular Interests or withdrawn from the Payment Account and distributed to the Holders of the Class S Certificates, as the case may be:

(i)   from the Floating Allocation Percentage of the Interest Collection Amount, to REMIC I Regular Interest Non-IO and REMIC I Regular Interest 1-IO through REMIC I Regular Interest 6-IO, *pro rata*, in an amount equal to (A) the Uncertificated Accrued Interest for such REMIC I Regular Interest for such Payment Date, plus (B) any amounts payable in respect thereof remaining unpaid from previous Payment Dates;

(ii)   from the Available Principal Payment Amount, first, to REMIC I Regular Interest Non-IO, until the Uncertificated Principal Balance of such REMIC I Regular Interest is reduced to zero, and second, to REMIC I Regular Interest 1-IO through REMIC I Regular Interest 6-IO, starting with the lowest numerical denomination, until

the Uncertificated Principal Balances of each such REMIC I Regular Interest is reduced to zero; and

      (iii)    any remaining amount to the Holders of the Class S Certificates.

      (c)    On each Payment Date, the following amounts, in the following order of priority, shall be distributed by REMIC II to REMIC III on account of the REMIC II Regular Interests or withdrawn from the Payment Account and distributed to the Holders of the Class R-I Certificates, as the case may be:

      (i)    from the Floating Allocation Percentage of the Interest Collection Amount, to REMIC II Regular Interest A-IO, in an amount equal to (A) the Uncertificated Accrued Interest for such REMIC II Regular Interest for such Payment Date, plus (B) any amounts in respect thereof remaining unpaid from previous Payment Dates;

      (ii)    to the extent of the Floating Allocation Percentage of the Interest Collection Amount remaining after the distribution pursuant to clause (i), to each REMIC II Regular Interest (other than REMIC II Regular Interest A-IO), *pro rata*, in an amount equal to (A) the Uncertificated Accrued Interest for such REMIC II Regular Interest for such Payment Date, plus (B) any amounts in respect thereof remaining unpaid from previous Payment Dates. Amounts payable as Uncertificated Accrued Interest in respect of REMIC II Regular Interest ZZ shall be reduced when the REMIC II Overcollateralization Amount is less than the REMIC II Required Overcollateralization Amount, by the lesser of (x) the amount of such difference and (y) the Maximum Uncertificated Accrued Interest Deferral Amount, and such amount will be payable to the holders of each REMIC II Regular Interest (other than REMIC II Regular Interest A-IO) for which a Note is the Corresponding Note in the same proportion as the Overcollateralization Increase Amount is allocated to the Corresponding Notes for each such REMIC II Regular Interest, and the Uncertificated Principal Balance of REMIC II Regular Interest ZZ shall be increased by such amount; and

      (iii)    to the holders of REMIC II Regular Interests (other than REMIC II Regular Interest A-IO), the Available Principal Payment Amount, allocated as follows:

      (A)    98% of such amount to REMIC II Regular Interest AA, until the Uncertificated Principal Balance of such REMIC II Regular Interest is reduced to zero;

      (B)    2% of such remainder, first, to each REMIC II Regular Interest (other than REMIC II Regular Interest A-IO) for which a Note is the Corresponding Note in an aggregate amount equal to 1% of and in the same proportion as principal payments are allocated to the Corresponding Notes for each such REMIC II Regular Interest, until the Uncertificated Principal Balances of such REMIC II Regular Interests are reduced to zero; and second, to REMIC II Regular Interest ZZ, until the

Uncertificated Principal Balance of such REMIC II Regular Interest is reduced to zero; and

(C)     any remaining amount to the Holders of the Class R-1 Certificates.

(d)     On each Payment Date, an amount equal to the amounts distributed pursuant to Sections 3.02(a)(5), (6), (9) and (11), and Sections 3.02(c)(1)(vi) and (2)(vi), on such date shall be deemed distributed from REMIC III to REMIC IV in respect of the Class E Distribution Amount distributable to the Class E Interest.

Section 10.03  Allocation of Charge-Off Amounts.

The Floating Allocation Percentage of Charge-Off Amounts on the HELOCs shall be allocated on each Payment Date, first, to REMIC I Regular Interest Non-IO, until the Uncertificated Principal Balance of such REMIC I Regular Interest has been reduced to zero, and second, to REMIC I Regular Interests 1-IO through REMIC I Regular Interest 6-IO, starting with the lowest numerical denomination, until the Uncertificated Principal Balance of each such REMIC I Regular Interest has been reduced to zero.

The Floating Allocation Percentage of Charge-Off Amounts on the HELOCs shall be allocated on each Payment Date to the following REMIC II Regular Interests in the following specified percentages: first, to Uncertificated Accrued Interest payable to the REMIC II Regular Interest AA and REMIC II Regular Interest ZZ up to an aggregate amount equal to the REMIC II Interest Loss Allocation Amount, 98.00% and 2.00%, respectively; and second, to the Uncertificated Principal Balances of the REMIC II Regular Interest AA and REMIC II Regular Interest ZZ up to an aggregate amount equal to the REMIC II Principal Loss Allocation Amount, 98.00% and 2.00%, respectively.   Any subsequent allocation of the Floating Allocation Percentage of Charge-Off Amounts to the Notes pursuant to Section 3.19 shall be allocated on each Payment Date to the following REMIC II Regular Interests in the following specified percentages: first, to the Uncertificated Principal Balances of REMIC II Regular Interest AA, REMIC II Regular Interest B and REMIC II Regular Interest ZZ, 98.00%, 1.00% and 1.00%, respectively, until the Uncertificated Principal Balance of REMIC II Regular Interest B has been reduced to zero; and second, to the Uncertificated Principal Balances of REMIC II Regular Interest AA, REMIC II Regular Interest A and REMIC II Regular Interest ZZ, 98.00%, 1.00% and 1.00%, respectively, until the Uncertificated Principal Balance of REMIC II Regular Interest A has been reduced to zero.

Section 10.04  Tax Administration.

It is intended that the Trust Estate shall constitute, and that the affairs of the Trust Estate shall be conducted so that each REMIC formed hereunder qualifies as, a "real estate mortgage investment conduit" as defined in and in accordance with the REMIC Provisions. In furtherance of such intention, the Securities Administrator covenants and agrees that it shall act as agent (and the Securities Administrator is hereby appointed to act as agent) on behalf of the Trust Estate. The Securities Administrator, as agent on behalf of the Trust Estate, shall do or refrain from doing, as applicable, the following: (a) the Securities Administrator shall prepare and file, or cause to be prepared and filed, in a timely manner, U.S. Real Estate Mortgage Investment

68

Conduit Income Tax Returns (Form 1066 or any successor form adopted by the Internal Revenue Service) and prepare and file or cause to be prepared and filed with the Internal Revenue Service and applicable state or local tax authorities income tax or information returns for each taxable year with respect to each such REMIC containing such information and at the times and in the manner as may be required by the Code or state or local tax laws, regulations, or rules, and furnish or cause to be furnished to Noteholders and Certificateholders the schedules, statements or information at such times and in such manner as may be required thereby; (b) the Securities Administrator shall apply for an employer identification number with the Internal Revenue Service via a Form SS-4 or other comparable method for each REMIC that is or becomes a taxable entity, and within thirty days of the Closing Date, furnish or cause to be furnished to the Internal Revenue Service, on Forms 8811 or as otherwise may be required by the Code, the name, title, address, and telephone number of the Person that the Holders of the Notes and Certificates may contact for tax information relating thereto, together with such additional information as may be required by such Form, and update such information at the time or times in the manner required by the Code for the Trust Estate; (c) the Securities Administrator shall make or cause to be made elections, on behalf of each REMIC formed hereunder to be treated as a REMIC on the federal tax return of such REMIC for its first taxable year (and, if necessary, under applicable state law); (d) the Securities Administrator shall prepare and forward, or cause to be prepared and forwarded, to the Noteholders and Certificateholders and to the Internal Revenue Service and, if necessary, state tax authorities, all information returns and reports as and when required to be provided to them in accordance with the REMIC Provisions, including without limitation, the calculation of any original issue discount using the Prepayment Assumption; (e) the Securities Administrator shall provide information necessary for the computation of tax imposed on the Transfer of a Residual Certificate to a Person that is not a Permitted Transferee, or an agent (including a broker, nominee or other middleman) of a Person that is not a Permitted Transferee, or a pass-through entity in which a Person that is not a Permitted Transferee is the record holder of an interest (the reasonable cost of computing and furnishing such information may be charged to the Person liable for such tax); (f) the Indenture Trustee and Securities Administrator shall, to the extent under their control, conduct the affairs of the Trust Estate at all times that any Notes or Certificates are outstanding so as to maintain the status of each REMIC formed hereunder as a REMIC under the REMIC Provisions; (g) the Indenture Trustee and Securities Administrator shall not knowingly or intentionally take any action or omit to take any action that would (i) cause the termination of the REMIC status of any REMIC formed hereunder or (ii) result in the imposition of a tax upon any of REMIC formed hereunder (including but not limited to the tax on prohibited transactions as defined in Section 860F(a)(2) of the Code and the tax on contributions to a REMIC set forth in Section 860G(d) of the Code); (h) the Securities Administrator shall pay, from the sources specified in this Section 10.04, the amount of any federal, state and local taxes, including prohibited transaction taxes as described below, imposed on any REMIC formed hereunder prior to the termination of the Trust Estate when and as the same shall be due and payable (but such obligation shall not prevent the Securities Administrator or any other appropriate Person from contesting any such tax in appropriate proceedings and shall not prevent the Securities Administrator from withholding payment of such tax, if permitted by law, pending the outcome of such proceedings); (i) the Indenture Trustee shall sign or cause to be signed federal, state or local income tax or information returns or any other document prepared by the Securities Administrator pursuant to this Section 10.04 requiring a signature thereon by the Indenture Trustee; (j) the Securities

Administrator shall maintain records relating to each REMIC formed hereunder including but not limited to the income, expenses, assets and liabilities of each such REMIC and adjusted basis of the Trust Estate property determined at such intervals as may be required by the Code, as may be necessary to prepare the foregoing returns, schedules, statements or information; (k) the Securities Administrator shall, for federal income tax purposes, maintain books and records with respect to the REMICs on a calendar year and on an accrual basis; (l) the Indenture Trustee and Securities Administrator shall not enter into any arrangement not otherwise provided for in this Indenture or the Basic Documents by which the REMICs will receive a fee or other compensation for services nor permit the REMICs to receive any income from assets other than "qualified mortgages" as defined in Section 860G(a)(3) of the Code or "permitted investments" as defined in Section 860G(a)(5) of the Code; and (m) as and when necessary and appropriate, the Securities Administrator, at the expense of the Trust Estate, shall represent the Trust Estate in any administrative or judicial proceedings relating to an examination or audit by any governmental taxing authority, request an administrative adjustment as to any taxable year of any REMIC formed hereunder, enter into settlement agreements with any governmental taxing agency, extend any statute of limitations relating to any tax item of the Trust Estate, and otherwise act on behalf of each REMIC formed hereunder in relation to any tax matter involving any such REMIC.

In order to enable the Securities Administrator to perform its duties as set forth herein, the Depositor shall provide, or cause to be provided, to the Securities Administrator within 10 days after the Closing Date all information or data that the Securities Administrator requests in writing and determines to be relevant for tax purposes to the valuations and offering prices of the Notes and Certificates, including, without limitation, the price, yield, prepayment assumption and projected cash flows of the Notes and Certificates and the HELOCs. Thereafter, the Depositor shall provide to the Securities Administrator promptly upon written request therefor, any such additional information or data that the Securities Administrator may, from time to time, request in order to enable the Securities Administrator to perform its duties as set forth herein. The Depositor hereby indemnifies the Securities Administrator for any losses, liabilities, damages, claims or expenses of the Securities Administrator arising from any errors or miscalculations of the Securities Administrator that result from any failure of the Depositor to provide, or to cause to be provided, accurate information or data to the Securities Administrator on a timely basis.

Neither the Indenture Trustee nor the Securities Administrator  shall sell, dispose of or substitute for any of the HELOCs (except in connection with (i) the default, imminent default or foreclosure of a HELOC, including but not limited to, the acquisition or sale of a Mortgaged Property acquired by deed in lieu of foreclosure, (ii) the bankruptcy of the Trust Fund, (iii) the termination of any REMIC pursuant to Section 8.06 of this Agreement or (iv) a purchase of HELOCs pursuant to Article II of the Sale and Servicing Agreement), acquire any assets for any REMIC or sell or dispose of any investments in any Account for gain, or accept any contributions to any REMIC after the Closing Date, unless it has received an Opinion of Counsel that such sale, disposition, substitution, acquisition or contribution will not (a) affect adversely the status of any of REMIC formed hereunder as a REMIC or (b) cause any REMIC to be subject to a tax on "prohibited transactions" or " contributions" pursuant to the REMIC Provisions.

In the event that any tax is imposed on "prohibited transactions" as defined in Section 860F(a)(2) of the Code of any REMIC created hereunder, on the "net income from foreclosure property" of the Trust Estate as defined in Section 860G(c) of the Code, on any contribution to any REMIC created hereunder after the Closing Date pursuant to Section 860G(d) of the Code, or any other tax is imposed, including, without limitation, any federal, state or local tax or minimum tax imposed upon any REMIC created hereunder, and is not paid as otherwise provided for herein, such tax shall be paid (i) by the Indenture Trustee, the Securities Administrator or Owner Trustee, if any such other tax arises out of or results from a breach by the Indenture Trustee, the Securities Administrator or Owner Trustee of any of its obligations under this Indenture or the Basic Documents, (ii) by any party hereto (other than the Indenture Trustee, the Securities Administrator and Owner Trustee) to the extent any such other tax arises out of or results from a breach by such other party of any of its obligations under this Indenture or the Basic Documents or (iii) in all other cases, or in the event that any liable party hereto fails to honor its obligations under the preceding clauses (i) or (ii), first, with amounts otherwise to be distributed to the Residual Certificateholders, and second, with amounts otherwise to be distributed to all Noteholders in the following order of priority: first, to the Class B Notes, and second, to the Class A Notes. Notwithstanding anything to the contrary contained herein, to the extent that such tax is payable by the Holder of any Notes or Certificates, the Securities Administrator is hereby authorized to retain on any Payment Date, from the Holders of the Residual Certificates (and, if necessary, second, from the Holders of the Notes in the priority specified in the preceding sentence), funds otherwise distributable to such Holders in an amount sufficient to pay such tax. The Securities Administrator shall promptly notify in writing the party liable for any such tax of the amount thereof and the due date for the payment thereof.

The Securities Administrator agrees that, in the event it should obtain any information necessary for the other party to perform its obligations pursuant to this Section 11.04, it will promptly notify and provide such information to such other party.

Notwithstanding any other provision of this Indenture, the Securities Administrator shall comply with all federal withholding requirements respecting payments to Noteholders or Certificateholders of interest or original issue discount that the Securities Administrator reasonably believes are applicable under the Code. The consent of Noteholders or Certificateholders shall not be required for such withholding. In the event the Securities Administrator does withhold any amount from interest or original issue discount payments or advances thereof to any Noteholder or Certificateholder pursuant to federal withholding requirements, the Securities Administrator shall indicate the amount withheld to such Noteholders or Certificateholders.

Section 10.05  Tax Treatment of Net WAC Cap Rate Carryover Amounts.

On each Payment Date as to which there is a Net WAC Cap Carryover Amount payable to any Class of Notes, the Securities Administrator shall deposit the amounts distributable pursuant to Section 3.02(a)(9) into the Net WAC Cap Rate Carryover Reserve Account and the Securities Administrator has been directed by the Class E Certificateholder to distribute amounts in the Net WAC Cap Rate Carryover Reserve Account to the Holders of the applicable Notes in the priorities set forth in Section 3.02. Any amount paid to the Holders of the applicable Notes pursuant to the preceding sentence in respect of Net WAC Cap Rate Carryover Amounts shall be

treated as distributed to the Class E Certificateholder in respect of the Class E Certificates and paid by the Class E Certificateholder to the Holders of such Notes.  Any payments to the Holders of the applicable Notes in respect of Net WAC Cap Rate Carryover Amounts pursuant to the second preceding sentence shall not be payments with respect to a "regular interest" in a REMIC within the meaning of Section 860(G)(a)(1) of the Code.

## ARTICLE XI

### MISCELLANEOUS

Section 11.01 <u>Compliance Certificates and Opinions, etc.</u> (a)  Upon any application or request by the Issuing Entity to the Indenture Trustee or the Securities Administrator to take any action under any provision of this Indenture, the Issuing Entity shall furnish to the Indenture Trustee, the Securities Administrator and the Note Insurer (i) an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(1)     a statement that each signatory of such certificate or opinion has read or has caused to be read such covenant or condition and the definitions herein relating thereto;

(2)     a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3)     a statement that, in the opinion of each such signatory, such signatory has made such examination or investigation as is necessary to enable such signatory to express an informed opinion as to whether or not such covenant or condition has been complied with;

(4)     a statement as to whether, in the opinion of each such signatory, such condition or covenant has been complied with; and

(5)     if the signatory of such certificate or opinion is required to be Independent, the statement required by the definition of the term "Independent".

(b)     (i) Prior to the deposit of any Collateral or other property or securities with the Indenture Trustee that is to be made the basis for the release of any property or securities subject to the lien of this Indenture, the Issuing Entity shall, in addition to any obligation imposed in Section 10.01 (a) or elsewhere in this Indenture, furnish to the Indenture Trustee and the Note Insurer an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days prior to such deposit) to the Issuing Entity of the Collateral or other property or securities to be so deposited and a report from a nationally recognized accounting firm verifying such value.

(ii)     Whenever the Issuing Entity is required to furnish to the Indenture Trustee, the Securities Administrator and the Note Insurer an Officer's Certificate certifying or

73

stating the opinion of any signer thereof as to the matters described in clause (i) above, the Issuing Entity shall also deliver to the Indenture Trustee an Independent Certificate from a nationally recognized accounting firm as to the same matters, if the fair value of the securities to be so deposited and of all other such securities made the basis of any such withdrawal or release since the commencement of the then current fiscal year of the Issuing Entity, as set forth in the certificates delivered pursuant to clause (i) above and this clause (ii), is 10% or more of the Note Principal Balances of the Notes, but such a certificate need not be furnished with respect to any securities so deposited, if the fair value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the then outstanding Note Principal Balances of the Notes.

(iii)    Whenever any property or securities are to be released from the lien of this Indenture, the Issuing Entity shall also furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days prior to such release) of the property or securities proposed to be released and stating that in the opinion of such person the proposed release will not impair the security under this Indenture in contravention of the provisions hereof.

(iv)    Whenever the Issuing Entity is required to furnish to the Indenture Trustee, the Securities Administrator and the Note Insurer an Officer's Certificate certifying or stating the opinion of any signer thereof as to the matters described in clause (iii) above, the Issuing Entity shall also furnish to the Indenture Trustee and the Securities Administrator an Independent Certificate as to the same matters if the fair value of the property or securities and of all other property or securities released from the lien of this Indenture since the commencement of the then-current calendar year, as set forth in the certificates required by clause (iii) above and this clause (iv), equals 10% or more of the Note Principal Balances of the Notes, but such certificate need not be furnished in the case of any release of property or securities if the fair value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the then outstanding Note Principal Balances of the Notes.

Section 11.02 Form of Documents Delivered to Indenture Trustee. In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuing Entity may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous. Any such certificate of an Authorized Officer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Seller or the Issuing Entity, stating that the information with respect to such factual matters is in the possession of the Seller or the Issuing

74

Entity, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture Trustee, it is provided that the Issuing Entity shall deliver any document as a condition of the granting of such application, or as evidence of the Issuing Entity's compliance with any term hereof, it is intended that the truth and accuracy, at the time of the granting of such application or at the effective date of such certificate or report (as the case may be), of the facts and opinions stated in such document shall in such case be conditions precedent to the right of the Issuing Entity to have such application granted or to the sufficiency of such certificate or report. The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon the truth and accuracy of any statement or opinion contained in any such document as provided in Article VI.

Section 11.03 Acts of Noteholders. (a) Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Indenture Trustee, and, where it is hereby expressly required, to the Issuing Entity. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01 hereof) conclusive in favor of the Indenture Trustee and the Issuing Entity, if made in the manner provided in this Section 10.03 hereof.

(b)     The fact and date of the execution by any person of any such instrument or writing may be proved in any manner that the Indenture Trustee deems sufficient.

(c)     The ownership of Notes shall be proved by the Note Registrar.

(d)     Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Notes shall bind the Holder of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Indenture Trustee or the Issuing Entity in reliance thereon, whether or not notation of such action is made upon such Note.

Section 11.04 Notices etc., to Indenture Trustee Issuing Entity, Securities Administrator, Note Insurer and Rating Agencies. Any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or act of Noteholders is to be made upon, given or furnished to or filed with:

75

(i)      the Indenture Trustee by any Noteholder or by the Issuing Entity shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Indenture Trustee at its Corporate Trust Office. The Indenture Trustee shall promptly transmit any notice received by it from the Noteholders to the Issuing Entity and the Note Insurer;

(ii)     the Securities Administrator by any Noteholder or by the Issuing Entity shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Securities Administrator at the Corporate Trust Office, or such other address as may hereafter be furnished to the other parties hereto in writing. The Securities Administrator shall promptly transmit any notice received by it from the Noteholders to the Issuing Entity;

(iii)    the Note Insurer, Ambac Assurance Corporation, Ambac Assurance Corporation, One State Street Plaza, New York, New York 10004, Attention:  Risk Management, Consumer Asset-Backed Securities (SACO 1 Trust 2006-8, Policy No. AB1020BE), with a copy to the General Counsel at the above address, and in each case in which a demand, notice or other communication to the Note Insurer refers to a Default, an Event of Default or any event with respect to which failure on the part of the Note Insurer to respond shall be deemed to constitute consent or acceptance, then such demand, notice or other communication shall be marked to indicate "URGENT MATERIAL ENCLOSED"; or

(iv)     the Issuing Entity by the Indenture Trustee or by any Noteholder shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing and mailed first-class, postage prepaid to the Issuing Entity addressed to: SACO 1 Trust 2006-8, in care of Owner Trustee at the Corporate Trust Office, or at any other address previously furnished in writing to the Indenture Trustee by the Issuing Entity. The Issuing Entity shall promptly transmit any notice received by it from the Noteholders to the Indenture Trustee.

Notices required to be given to the Rating Agencies by the Issuing Entity, the Indenture Trustee, the Securities Administrator or the Owner Trustee shall be in writing, mailed first-class postage pre-paid: in the case of Moody's, to Moody's, at the following address: Moody's Investors Service, Inc., 99 Church Street, New York, New York 10007; and in the case of S&P, Standard & Poor's, a division of The McGraw-Hill Companies, Inc., 55 Water Street, New York, New York 10041, or as to each of the foregoing, at such other address as shall be designated by written notice to the other parties.

Section 11.05  Notices to Noteholders; Waiver.  Where this Indenture provides for notice to Noteholders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if made, given, furnished or filed in writing and mailed, first-class, postage prepaid to each Noteholder affected by such event, at such Person's address as it appears on the Note Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice. In any case where notice to Noteholders is given by mail, neither the failure to mail such notice nor any defect in any notice so mailed to any particular Noteholder shall affect the sufficiency of such notice with respect to other Noteholders, and any notice that is mailed in the manner herein provided shall conclusively be presumed to have been duly given regardless of whether such notice is in fact actually received.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Noteholders shall be filed with the Indenture Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such a waiver.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Noteholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture Trustee shall be deemed to be a sufficient giving of such notice.

Where this Indenture provides for notice to the Rating Agency, failure to give such notice shall not affect any other rights or obligations created hereunder, and shall not under any circumstance constitute an Event of Default.

Section 11.06 <u>Conflict with Trust Indenture Act</u>. If any provision hereof limits, qualifies or conflicts with another provision hereof that is required to be included in this Indenture by any of the provisions of the Trust Indenture Act, such required provision shall control.

The provisions of TIA §§ 310 through 317 that impose duties on any Person (including the provisions automatically deemed included herein unless expressly excluded by this Indenture) are a part of and govern this Indenture, whether or not physically contained herein.

Section 11.07 <u>Effect of Headings</u>. The Article and Section headings herein are for convenience only and shall not affect the construction hereof.

Section 11.08 <u>Successors and Assigns</u>. All covenants and agreements in this Indenture and the Notes by the Issuing Entity shall bind its successors and assigns, whether so expressed or not. All agreements of the Indenture Trustee in this Indenture shall bind its successors, co-trustees and agents.

Section 11.09 <u>Separability</u>. In case any provision in this Indenture or in the Notes shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 11.10 <u>Legal Holidays</u>. In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

Section 11.11 <u>GOVERNING LAW</u>. THIS INDENTURE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAWS, WHICH SHALL APPLY HERETO), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE

PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 11.12 Counterparts.  This Indenture may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 11.13 Recording of Indenture.  If this Indenture is subject to recording in any appropriate public recording offices, such recording is to be effected by the Issuing Entity and at its expense accompanied by an Opinion of Counsel at its expense (which may be counsel to the Indenture Trustee or any other counsel reasonably acceptable to the Indenture Trustee) to the effect that such recording is necessary either for the protection of the Noteholders, the Note Insurer or any other Person secured hereunder or for the enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 11.14 Issuing Entity Obligation.  No recourse may be taken, directly or indirectly, with respect to the obligations of the Issuing Entity, the Owner Trustee or the Securities Administrator on the Notes or under this Indenture or any certificate or other writing delivered in connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuing Entity or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent of the Securities Administrator, the Owner Trustee in its individual capacity, any holder of a beneficial interest in the Issuing Entity, the Securities Administrator, the Owner Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee and the Owner Trustee have no such obligations in their individual capacity) and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call owing to such entity. For all purposes of this Indenture, in the performance of any duties or obligations of the Issuing Entity hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Article VI, VII and VIII of the Trust Agreement.

Section 11.15 No Petition.  The Indenture Trustee and the Securities Administrator, by entering into this Indenture, each Noteholder, by accepting a Note and each Certificateholder, by accepting a Certificate, hereby covenant and agree that they will not at any time prior to one year from the date of termination hereof, institute against the Depositor or the Issuing Entity, or join in any institution against the Depositor or the Issuing Entity of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Notes, this Indenture or any of the Basic Documents; provided however, that nothing herein shall prohibit the Indenture Trustee from filing proofs of claim in any proceeding.

Section 11.16 Inspection.  The Issuing Entity agrees that, at its expense, on reasonable prior notice, it shall permit any representative of the Indenture Trustee, the Note Insurer or the Securities Administrator, during the Issuing Entity's normal business hours, to examine all the books of account, records, reports and other papers of the Issuing Entity, to make copies and

extracts therefrom, to cause such books to be audited by Independent certified public accountants, and to discuss the Issuing Entity's affairs, finances and accounts with the Issuing Entity's officers, employees, and Independent certified public accountants, all at such reasonable times and as often as may be reasonably requested. The Indenture Trustee and the Note Insurer shall cause its representatives to hold in confidence all such information except to the extent disclosure may be required by law (and all reasonable applications for confidential treatment are unavailing) and except to the extent that the Indenture Trustee, the Note Insurer or the Securities Administrator may reasonably determine that such disclosure is consistent with its obligations hereunder.

Section 11.17 Benefits of Indenture.  The Note Insurer and its successors and assigns shall be a third-party beneficiary to the provisions of this Indenture.  To the extent that this Indenture confers upon or gives or grants to the Note Insurer any right, remedy or claim under or by reason of this Indenture, the Note Insurer may enforce any such right, remedy or claim conferred, given or granted hereunder.  Nothing in this Indenture, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Noteholders and the Note Insurer, any benefit or any legal or equitable right, remedy or claim under this Indenture.

Section 11.18 Securities Administrator to Hold Policy.  The Securities Administrator will hold the Policy in trust as agent for the Class A Noteholders  for the purpose of making claims thereon and distributing the proceeds thereof. Each Class A Noteholder, by accepting its Note, appoints the Securities Administrator as attorney-in-fact for the purpose of making claims on the Policy.  The Securities Administrator shall surrender the Policy to the Note Insurer for cancellation upon the expiration of the term of the Policy following the retirement of the Class A Notes.

IN WITNESS WHEREOF, the Issuing Entity, the Securities Administrator and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

SACO I TRUST 2006-8,
as Issuing Entity

By:  Wilmington Trust Company, not in its
individual capacity but solely as Owner Trustee

By:_____
Name:   **Patricia A. Evans**
Title:     **Vice President**


LASALLE BANK NATIONAL ASSOCIATION,
as Securities Administrator

By: _____
Name:
Title:


CITIBANK, N.A.,
as Indenture Trustee

By:_____
Name:
Title:

IN WITNESS WHEREOF, the Issuing Entity, the Securities Administrator and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

SACO I TRUST 2006-8,
as Issuing Entity

By:  Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By:_____
Name:
Title:


LASALLE BANK NATIONAL ASSOCIATION,
as Securities Administrator

By:_____
Name:       SUSAN L. FELD
Title:    ASSISTANT VICE PRESIDENT


CITIBANK, N.A.,
as Indenture Trustee

By:_____
Name:
Title:

IN WITNESS WHEREOF, the Issuing Entity, the Securities Administrator and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

SACO I TRUST 2006-8,
as Issuing Entity

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By:_____
Name:
Title:


LASALLE BANK NATIONAL ASSOCIATION,
as Securities Administrator

By: _____
Name:
Title:


CITIBANK, N.A.,
as Indenture Trustee

By:_____
Name:         **John Hannon**
Title:        **Vice President**

STATE OF DELAWARE          )
                                       )

COUNTY OF <u>NEW CASTLE</u>     )

      On the ___ day of September 2006, before me personally appeared
_____Patricia A. Evans_____ to me known, who being by me duly sworn, did depose and
say, that he/she is a(n) ___**Vice President**___ of the Owner Trustee, one of the entities
described in and which executed the above instrument; and that he/her signed his/her name
thereto by like order.

                                                                   Notary Public

[NOTARIAL SEAL]

4

STATE OF ILLINOIS         )
                                    ) ss:
COUNTY OF _____Cook_____   )

            On the 15th day of September 2006 before me, a notary public in and for said State, personally appeared _Susan L. Feld_____, known to me to be a(n) _Assistant Vice President_ of LaSalle Bank National Association, one of the parties that executed the within instrument, and also known to me to be the person who executed it on behalf of said party, and acknowledged to me that such party executed the within instrument.

            IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

                                        _____
                                              Notary Public

[Notarial Seal]

"OFFICIAL SEAL"
CHRISTINE M. ORSI
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 05/05/2010

STATE OF *New York* )
                                              ) ss.:
COUNTY OF *New York* )

On the 15th day of September, 2006 before me, a notary public in and for said State, personally appeared ~~John Hannon~~ , known to me to be a Vice President of Citibank, N.A., the entity that executed the within instrument, and also known to me to be the person who executed it on behalf of said entity, and acknowledged to me that such entity executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_____
Notary Public

[Notarial Seal]

CRYSTAL MASSY
Notary Public, State of New York
No. 01MA6123734
Qualified in Kings County
Commission Expires Mar. 14, 2009