# EXHIBIT 10

Not Reported in F.Supp., 1987 WL 16163 (S.D.N.Y.), 1988 A.M.C. 448
**(Cite as: 1987 WL 16163 (S.D.N.Y.))**

Page 1

United States District Court, S.D. New York.
The CONTINENTAL INSURANCE CO. for and on behalf of itself and other interested underwriters, Plaintiff,
v.
DAEWOO SHIPBUILDING & HEAVY MACHINERY LTD., Daewoo Corporation, and American Bureau of Shipping, Defendants.

No. 86 Civ. 5255 (RLC).
Aug. 21, 1987.

Chalos, English & Brown, P.C., New York City, for plaintiff; Michael G. Chalos, Peter Skoufalos, of counsel.

Law Offices of Philip J. Curtin, New York City, for defendants Daewoo Shipbuilding & Heavy Machinery Ltd., and Daewoo Corporation; Philip J. Curtin, of counsel.

Law Offices of Kenneth E. Sheehan, New York City, for defendant American Bureau of Shipping; Sarah M. Barton, of counsel.

OPINION
ROBERT L. CARTER, District Judge.

*1 During the maiden voyage of the American New York, cargo on board the vessel sustained damage when water leaked into two holds. This action to recover the value of the lost cargo is premised on negligence and strict products liability. Presently before the court are defendants' motions to stay the action pending arbitration of the claims.

Familiarity with the rather complex relationship between the parties is important to an understanding of the issues. Plaintiff Continental Insurance Co. ("Continental"), a New Hampshire corporation, as well as nine others on whose behalf Continental is suing, are legal liability underwriters of United States Lines, Inc. ("U.S. Lines").[FN1] U.S. Lines is the owner of the American New York, but it has filed a petition in bankruptcy and is not a party to this action.

Defendants Daewoo Shipbuilding & Heavy Machinery Ltd. and Daewoo Corporation (collectively "Daewoo" or "the Daewoo Companies") are Korean corporations. Pursuant to a Shipbuilding Contract, U.S. Lines engaged Daewoo to construct the American New York and a number of other cargo ships. The Contract includes an article providing in part that any dispute "between the parties hereto [arising] out of or relating to this Contract ... shall be settled by arbitration." Memorandum of Defendant American Bureau of Shipping, Exh. 7 at 43-44.

Defendant American Bureau of Shipping ("ABS"), a not-for-profit New York corporation, is a maritime classification society. Its business encompasses development of rules for the design and construction of marine vessels, review of the actual design and survey of vessels for compliance with its rules, and classification and certification of vessels that do comply. ABS and one of the Daewoo Companies executed a Memorandum of Agreement, by which ABS undertook the classification of a series of vessels to be built by Daewoo, one of which was the American New York. An article of the Memorandum of Agreement states in part that "[a]ny and all differences and disputes of whatsoever nature arising out of this Contract shall be put to arbitration...." Memorandum of Defendant ABS, Exh. 6 at 6.

The cargo which was damaged while on board the American New York was owned by various non-parties. The cargo itself was insured under policies held by the owners. However, the underwriters of these cargo insurance policies, like the cargo owners, are not parties to this action.[FN2]

Rather, the subject of the underlying controversy here is the insurance benefits paid under U.S.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 16163 (S.D.N.Y.), 1988 A.M.C. 448
**(Cite as: 1987 WL 16163 (S.D.N.Y.))**

Lines's legal liability policy, as opposed to any benefits paid under policies purchased by the cargo owners. Continental seeks reimbursement from defendants for payments which went ultimately to the cargo owners but were forwarded in at least some cases through U.S. Lines.

In short, Continental asserts the rights of a subrogee. The dispositive question for purposes of the instant motions is to which rights Continental is subrogated-those of U.S. Lines or those of the cargo owners.

## DISCUSSION

**\*2** Had Continental itself agreed to arbitrate its claims, the propriety of a stay pending arbitration would be a foregone conclusion. Enforcement of such an agreement carries the enthusiastic endorsement of a "federal policy favoring arbitration." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, ----, 107 S.Ct. 2332, 2337 (1987). Indeed, the court is duty-bound to enforce a freely negotiated arbitration contract just as it would any other agreement untainted by fraud, overweening bargaining power, or like circumstances compelling revocation. *See id.; Southland Corp. v. Keating,* 465 U.S. 1, 16 n. 11 (1984). The concerns which underlie these principles are only heightened in the international context in which this case arises, where additional considerations come into play including comity between nations, respect for the competence of transnational arbitral tribunals, and the importance to international commerce of predictability in the resolution of disputes. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 629 (1985); *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 516-19 (1974).

Yet there is no claim that Continental itself agreed to arbitrate. Defendants contend instead that Continental is obligated to arbitrate because it is subrogated to the rights, and stands in the shoes, of U.S. Lines. *See Lumbermans Mutual Casualty Co. v. Borden Co.,* 268 F.Supp. 303, 314 (S.D.N.Y.1967) (Tenney, J.) (enforcing arbitration clause against subrogee). Daewoo argues that Continental has assumed U.S. Lines's duty to abide by the arbitration provisions in the U.S. Lines-Daewoo Shipbuilding Contract. ABS takes the subrogation argument a step further, contending first that Continental must assume U.S. Lines's duties, and second that U.S. Lines is a principal of Daewoo and thus is bound by Daewoo's assent to the arbitration privisions in the Daewoo-ABS Memorandum of Agreement. Continental responds simply that it is the subrogee of the cargo owners, not U.S. Lines. FN3

Subrogation transfers a right of recovery to one who has assumed another person's loss. The subrogee (or transferee) takes "exactly the same remedies" that the injured party would have had-" 'the Flotsam with the jetsam.' " *In re Marine Sulphur Queen,* 460 F.2d 89, 102 (2d Cir.), *cert. denied,* 409 U.S. 982 (1972) (quotation omitted). By putting the subrogee in the shoes of the injured party, the doctrine prevents the alternative inequities of allowing the injured party to recover twice or allowing the party at a fault to escape liability. G. Gilmore & C. Black, Jr., *The Law of Admiralty* § 2-17 (2d ed. 1975).

Subrogation is vital, in particular, to commercial needs because it enables carriers and merchants immediately to cover losses and to keep the ships sailing while insurers pursue their own relief through the slower process of litigation. As Justice Brandeis explained in a related context:

It is essential to the performance of the insurer's service, that the insured be promptly put in funds, so that his business may be continued without embarrassment. ... In consideration of securing then the right to conduct the litigation, the insurers made the advances. It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice.

**\*3** *Luckenbach v. W.J. McCahan Sugar Refining Co.,* 248 U.S. 139, 149 (1918); *see also* G.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 16163 (S.D.N.Y.), 1988 A.M.C. 448
**(Cite as: 1987 WL 16163 (S.D.N.Y.))**

Gilmore & C. Black, Jr., *supra,* § 2-17 ("[I]t is this doctrine perhaps more than any other that explains the great practical importance of marine insurance in the maritime law world.").

Typically an insurer is subrogated to the cause of action of its insured. *E.g., Americas Insurance Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 66 (2d Cir.1985). However, an insurance contract between the subrogee and subrogor is not the sine qua non of subrogation. Rather, for present purposes, the crucial elements are on the one hand the subrogee's payment of a claim in protection of its own interests, and on the other hand the subrogor's right to enforce the claim until it passes to the subrogee. *See American Commercial Lines, Inc. v. Valley Line Co.,* 529 F.2d 921, 924 (8th Cir.1976); *accord Meckel v. Continental Resources Co.,* 758 F.2d 811, 814 n. 1 (2d Cir.1985); *American National Bank & Trust Co. v. Weyerhaeuser Co.,* 692 F.2d 455, 460-61 (7th Cir.1982).

These basic principles compel the conclusion that Continental is subrogated to the rights of the cargo owners. The insurance benefits that Continental paid pursuant to the legal liability policy went ultimately to the cargo owners whether or not the payments were forwarded through U.S. Lines. Likewise, the cargo owners' tort claims against Daewoo and ABS-not some independent right of action belonging to U.S. Lines-are the basis for Continental's suit. U.S. Lines's role as an intermediary in the transactions does not alter the fact that the cargo owners were at both the receiving end of the reimbursements and the origin of the enforceable claims.

The decision of the United States Supreme Court in *Great Lakes Transit Corp. v. Interstate S.S. Co.,* 301 U.S. 646 (1937) illustrates this point. The case involved underwriters' claims for the value of cargo lost in a collision between two vessels, with the vessels sharing equal fault and liability. One of the two vessel owners, Great Lakes Transit Corporation ("GLTC"), was insured against "liability to the cargo owners for damages and losses caused by marine perils." 301 U.S. at 653. The policy made benefits payable to GLTC "or order," "for account of whom it may concern." *Id.* at 650. Noting that the cargo owners got "the benefit of the insurance" paid by the underwriters, the Court held that the underwriters were subrogated to the cargo owners' claims (provided only that the underwriters could not assert those claims against their own assured).[FN4] *Id.* at 655; *see also Merchants' & Miners' Transp. Co. v. Robinson-Baxter-Dissosway Towing & Transp. Co.,* 191 F.2d 770, 773-75 (1st Cir.1911), *cert. denied,* 225 U.S. 704 (1912) (having paid cargo owners in accordance with tug owner's policy "for account of whom it may concern," underwriters were subrogated to cargo owners' claims against defendant vessels for cargo lost in collision).

Daewoo and ABS attempt to distinguish *Great Lakes Transit* on the ground that GLTC had expressly agreed to procure liability insurance covering the cargo, and the cost of the insurance there was borne by the cargo owners as a component of the cost of carriage. In essence, according to defendants, the insurance there was for the benefit of the cargo owners, whereas the insurance in this case inured to the benefit of U.S. Lines. Similarly, the clause "for account of whom it may concern" in GLTC's policy is said to have converted the insured vessel owner into an "insurer," while U.S. Lines supposedly never took on such a role vis-a-vis the cargo owners here.

**\*4** Defendants' argument is unpersuasive because it reveals more similarity than difference between the two cases. It is undisputed that the vessel owner in a each case held a policy covering liability for cargo damage or loss. Regardless of whom is called "insurer" or "beneficiary," in both cases insurance payments invariably were forwarded to the cargo owners, and the rights of recovery-in satisfaction of which the insurance was paid-were acquired from the cargo owners.

It is true that, strictly speaking, the subrogation in this case probably is best viewed not as direct

from Continental to the cargo owners, but instead in two steps, first from Continental to U.S. Lines and then from U.S. Lines to the cargo owners. Contrary to what defendants imply, however, the indirectness of the subrogation is as immaterial as the indirectness of the insurance payments: If Continental stands in the shoes of U.S. Lines, it does so exactly to the extent that U.S. Lines stands in the shoes of the cargo owners. *Accord Aaacon Auto Transport, Inc. v. State Farm Mutual Automobile Insurance Co.,* 537 F.2d 648, 652 (2d Cir.1976), *cert. denied,* 429 U.S. 1042 (1977); *see In re Marine Sulphur Queen, supra,* 460 F.2d at 102. Specifically, just as one may be "subrogated into" another's agreement to arbitrate, *see Lumbermans Mutual Casualty Co., supra,* 268 F.Supp. at 314, U.S. Lines would have been "subrogated out of" its arbitration agreement by standing in the cargo owners' shoes. Viewing Continental as, in the first instance, subrogated to a right of action owned by U.S. Lines, the rights and duties it took thus were no different than those it would have taken directly from the cargo owners. FN5

The parties do not suggest that the cargo owners agreed or were otherwise bound to submit their claims to arbitration. Standing in the shoes of the cargo owners, Continental is likewise free from such a duty. Defendants' motions to stay this action pending arbitration are denied.

IT IS SO ORDERED.

> FN1. U.S. Lines's policy provides in part that coverage extends to:
>
>> The Assured's Legal Liability for loss of or damage to or in connection with cargo or other property.... To be carried, or which has been carried on board conveyances ... from any cause whatsoever or wheresoever occurring ... from the time the Assured's responsibility commences until it ceases, whether as common carrier, forwarder, freighter, warehousemen, bailee or otherwise....
>
>> Saunders Aff., Feb. 26, 1987, Exh. A at 2.

> FN2. In a separate action before Judge Kram, *Valenite-Modco Ltd. v. Daewoo Shipbuilding & Heavy Machinery Ltd.,* No. 85 Civ. 9170, the cargo owners, or the cargo insurance underwriters as subrogees of the owners, asserted claims for damages based on negligence and strict products-liability as against the defendants in this case. The parties there reached an out-of-court settlement of the principal claim, with a discontinuance of the action as against ABS, and with the cargo owners or their subrogated underwriters receiving $185,000 from Daewoo. A third-party action brought by Daewoo against U.S. Lines has been stayed pending arbitration.

> FN3. The parties have not addressed the question of what law governs. The complaint purports to state "an admiralty and maritime claim." Complaint ¶ 1. Based on the record at present, that allegation would appear to be well-founded. *See East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, ----, 106 S.Ct. 2295, 2299 (1986). Thus, although defendants have cited New York law and federal law interchangeably, substantive admiralty law governs the outcome of the present motions. *See id.*

> FN4. The underwriters were barred from proceeding against their assured, GLTC, because although they were subrogated to the cargo owners' right of action, "they could not use that right to recover over against the carrier in defiance of their own stipulation." *Great Lakes Transit, supra,* 301 U.S. at 655.

> FNThe qualification that an insurer may not proceed against its own assured has no

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

bearing on the present analysis since U.S. Lines is neither named as a defendant nor, so far as can be ascertained, even effectively a defendant. *Cf. Atlas Assurance Co. v. Harper, Robinson Shipping Co., 508 F.2d 1381, 1389 (9th Cir.1975)* (insurer may not maintain what is "effectively a suit against" its assured).

FN5. As Continental is subrogated directly or indirectly to the rights of the cargo owners, the court need not address ABS's additional contention that U.S. Lines is bound, as Daewoo's principal, by the Daewoo-ABS Memorandum of Agreement and its arbitration provisions.

S.D.N.Y.,1987.
Continental Ins. Co. v. Daewoo Shipbuilding & Heavy Machinery Ltd.
Not Reported in F.Supp., 1987 WL 16163 (S.D.N.Y.), 1988 A.M.C. 448

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.