# EXHIBIT 11

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

C
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
REED CONSTRUCTION DATA INC., Plaintiff,
v.
The McGRAW-HILL COMPANIES, INC., John Does One Through Five, and John Doe Entities One through Five, Defendants.

No. 09 Civ. 8578.
Sept. 14, 2010.

**Background:** National provider of construction project news and information sued competitor and other unnamed parties, alleging fraud, misappropriation of trade secrets, misappropriation of confidential information, unfair competition, tortious interference with prospective economic advantage, violation of New York's deceptive business acts and practices statute, violation of Racketeer Influenced and Corrupt Organizations Act (RICO), RICO conspiracy, monopolization, attempted monopolization, and unjust enrichment. Competitor filed partial motion to dismiss.

**Holdings:** The District Court, Sweet, J., held that:
(1) provider failed to allege that competitor was distinct from alleged RICO enterprise, as required to establish competitor's liability under RICO;
(2) independent consulting firm could not be considered to be part of alleged RICO enterprise;
(3) provider stated claim against competitor for misappropriation of confidential information;
(4) provider adequately alleged claim for tortious interference with economic advantage; and
(5) provider did not state claim under New York's deceptive business acts and practices statute.

Motion granted in part and denied in part.

West Headnotes

**[1] Racketeer Influenced and Corrupt Organizations 319H ⇌50**

319H Racketeer Influenced and Corrupt Organizations
   319HI Federal Regulation
      319HI(A) In General
         319Hk50 k. Association with or Participation in Enterprise; Control or Intent. Most Cited Cases

To establish a violation of Racketeer Influenced and Corrupt Organizations Act (RICO) on ground that defendant conducted or participated in the conduct of RICO enterprise's affairs through pattern of racketeering activity, plaintiff must allege and prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C.A. § 1962(c).

**[2] Racketeer Influenced and Corrupt Organizations 319H ⇌3**

319H Racketeer Influenced and Corrupt Organizations
   319HI Federal Regulation
      319HI(A) In General
         319Hk3 k. Elements of Violation in General. Most Cited Cases

**Racketeer Influenced and Corrupt Organizations 319H ⇌59**

319H Racketeer Influenced and Corrupt Organizations
   319HI Federal Regulation
      319HI(B) Civil Remedies and Proceedings
         319Hk56 Persons Entitled to Sue or Recover
            319Hk59 k. Business, Property, or Proprietary Injury; Personal Injuries. Most Cited Cases

**Racketeer Influenced and Corrupt Organizations 319H ⇌62**

319H Racketeer Influenced and Corrupt Organizations

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

    319HI Federal Regulation
        319HI(B) Civil Remedies and Proceedings
            319Hk56 Persons Entitled to Sue or Recover
                319Hk62 k. Causal Relationship; Direct or Indirect Injury. Most Cited Cases

Under provision of Racketeer Influenced and Corrupt Organizations Act (RICO) allowing for recovery of treble damages by claimant injured in his business or property by reason of RICO violation, claimant must plead, at a minimum, (1) defendant's RICO violation, (2) an injury to plaintiff's business or property, and (3) causation of the injury by defendant's violation. 18 U.S.C.A. § 1964(c).

**[3] Racketeer Influenced and Corrupt Organizations 319H ⚛38**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk33 Enterprise
                319Hk38 k. Separateness from Predicate Acts, Pattern, or Persons. Most Cited Cases

To establish liability under Racketeer Influenced and Corrupt Organizations Act (RICO) on ground that defendant conducted or participated in the conduct of RICO enterprise's affairs through pattern of racketeering activity, one must allege and prove the existence of a "person" that is distinct from the alleged "enterprise." 18 U.S.C.A. § 1962(c).

**[4] Racketeer Influenced and Corrupt Organizations 319H ⚛47**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk33 Enterprise
                319Hk47 k. Professional, Business, or Trade Associations. Most Cited Cases

Requirement that plaintiff asserting claim under Racketeer Influenced and Corrupt Organizations Act (RICO) allege and prove existence of "person" distinct from alleged "enterprise" may not be circumvented by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of defendant. 18 U.S.C.A. § 1962(c).

**[5] Racketeer Influenced and Corrupt Organizations 319H ⚛73**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(B) Civil Remedies and Proceedings
            319Hk68 Pleading
                319Hk73 k. Enterprise. Most Cited Cases

In asserting claim for alleged violation of Racketeer Influenced and Corrupt Organizations Act (RICO), national provider of construction project news and information failed to allege that corporate competitor was distinct from alleged RICO enterprise, as required to establish competitor's liability, where complaint rested upon alleged misconduct of competitor, which was only named defendant, and all additional persons and entities that were identified in complaint and alleged to have been part of enterprise were expressly described as competitor's agents. 18 U.S.C.A. § 1962(c).

**[6] Racketeer Influenced and Corrupt Organizations 319H ⚛47**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk33 Enterprise
                319Hk47 k. Professional, Business, or Trade Associations. Most Cited Cases

Division of corporation could not be considered as distinct from parent corporation for purposes of requirement, in action under Racketeer Influenced and Corrupt Organizations Act (RICO), that plaintiff allege and prove existence of "person"

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

distinct from alleged RICO "enterprise." 18 U.S.C.A. § 1962(c).

**[7] Racketeer Influenced and Corrupt Organizations 319H** ⚷**47**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk33 Enterprise
                319Hk47 k. Professional, Business, or Trade Associations. Most Cited Cases

Independent consulting firm hired by competitor of national provider of construction project news and information was not alleged by provider, in asserting claim against competitor under Racketeer Influenced and Corrupt Organizations Act (RICO), to have intended to participate in any racketeering scheme or to have shared common fraudulent purpose with other alleged members of purported RICO enterprise, and thus could not be considered to be part of enterprise. 18 U.S.C.A. § 1962(c).

**[8] Racketeer Influenced and Corrupt Organizations 319H** ⚷**35**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk33 Enterprise
                319Hk35 k. What Constitutes Enterprise in General. Most Cited Cases

For an association of individuals to constitute an enterprise for purposes of Racketeer Influenced and Corrupt Organizations Act (RICO), the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes; individuals or entities that do not share such a common purpose cannot be considered part of a RICO enterprise. 18 U.S.C.A. § 1962(c).

**[9] Racketeer Influenced and Corrupt Organizations 319H** ⚷**50**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk50 k. Association with or Participation in Enterprise; Control or Intent. Most Cited Cases

Even if independent consulting firm hired by competitor of national provider of construction project news and information knew or should have known that data comparisons submitted to it by competitor were based upon unauthorized access to provider's web-based subscription service and were being used to harm provider in marketplace, such knowledge would not make firm participant in enterprise purportedly created by competitor for purposes of provider's claim against competitor alleging violation of Racketeer Influenced and Corrupt Organizations Act (RICO) where firm did not intend participation. 18 U.S.C.A. § 1962(c).

**[10] Racketeer Influenced and Corrupt Organizations 319H** ⚷**50**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk50 k. Association with or Participation in Enterprise; Control or Intent. Most Cited Cases

Party cannot be considered a part of an enterprise, for purposes of claim alleging violation of Racketeer Influenced and Corrupt Organizations Act (RICO), unless party intended to participate. 18 U.S.C.A. § 1962(c).

**[11] Antitrust and Trade Regulation 29T** ⚷**414**

29T Antitrust and Trade Regulation
    29TIV Trade Secrets and Proprietary Information
        29TIV(A) In General
            29Tk414 k. Elements of Misappropriation. Most Cited Cases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

To state a claim for misappropriation of confidential information under New York law, plaintiff must allege that defendant used plaintiff's confidential information for the purpose of securing a competitive advantage.

**[12] Antitrust and Trade Regulation 29T ⚷ 414**

29T Antitrust and Trade Regulation
    29TIV Trade Secrets and Proprietary Information
        29TIV(A) In General
            29Tk414 k. Elements of Misappropriation. Most Cited Cases

Where plaintiff and defendant are both parties to a contract, plaintiff must allege a breach of a duty independent of the duties under the contract in asserting claim for misappropriation of confidential information under New York law; in such a case, focus is on whether a noncontractual duty was violated, meaning a duty imposed on individuals as a matter of social policy, as opposed to those imposed consensually as a matter of contractual agreement.

**[13] Antitrust and Trade Regulation 29T ⚷ 414**

29T Antitrust and Trade Regulation
    29TIV Trade Secrets and Proprietary Information
        29TIV(A) In General
            29Tk414 k. Elements of Misappropriation. Most Cited Cases

Under New York law, a claim of misappropriation of confidential information must spring from circumstances extraneous to, and not constituting elements of, the parties' contract, although it may be connected with and dependent upon the contract.

**[14] Antitrust and Trade Regulation 29T ⚷ 420**

29T Antitrust and Trade Regulation
    29TIV Trade Secrets and Proprietary Information
        29TIV(A) In General
            29Tk420 k. Particular Cases, in General. Most Cited Cases

National provider of construction project news and information stated claim against competitor for misappropriation of confidential information under New York law where provider alleged that competitor used its unauthorized access to provider's web-based subscription service gained through its contractors to willfully misappropriate provider's confidential information, including, among other things, project information and proprietary search algorithms, and that competitor used this information to its competitive advantage by misleading provider's customers and prospective customers, thereby harming provider's business and preventing it from reaping the full profits of its own information.

**[15] Torts 379 ⚷ 211**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)1 In General
                379k211 k. Business Relations or Economic Advantage, in General. Most Cited Cases

To state a claim for tortious interference with economic advantage under New York law, four conditions must be met: (1) plaintiff had business relations with a third party, (2) defendant interfered with those business relations, (3) defendant acted for a wrongful purpose or used dishonest, unfair, or improper means, and (4) defendant's acts injured the relationship.

**[16] Torts 379 ⚷ 214**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)1 In General
                379k214 k. Existence of Valid or Identifiable Contract, Relationship or Expectancy. Most Cited Cases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

**Torts 379 🗝️255**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)3 Actions in General
                379k255 k. Pleading. Most Cited Cases

To adequately plead third-party business relations element of claim for tortious interference with economic advantage under New York law, plaintiff must specify some particular, existing relationship with which defendant interfered.

**[17] Torts 379 🗝️241**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)2 Particular Cases
                379k241 k. Business Relations or Economic Advantage, in General. Most Cited Cases

**Torts 379 🗝️255**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)3 Actions in General
                379k255 k. Pleading. Most Cited Cases

National provider of construction project news and information adequately alleged claim against competitor for tortious interference with economic advantage under New York law where provider named 221 former and prospective customers with national accounts for which it and competitor were only competitors, customers named were alleged to have selected competitor over provider based upon misleading information or perceptions stemming from competitor's purported wrongful conduct, provider sufficiently alleged that it had business relationship and reasonable expectancy of entering into contractual relationship with each of named customers, based either on its prior relationships with former customers or active negotiations with prospective customers, and provider asserted that competitor knew of those relationships and intentionally interfered with them.

**[18] Federal Civil Procedure 170A 🗝️2771(2)**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(B) Grounds for Imposition
            170Ak2767 Unwarranted, Groundless or Frivolous Papers or Claims
                170Ak2771 Complaints, Counterclaims and Petitions
                      170Ak2771(2) k. Particular Types of Cases. Most Cited Cases

National provider of construction project news and information did not violate Rule 11 when, in asserting claim against competitor for tortious interference with economic advantage under New York law, it named, in support of third-party business relations element of claim, 221 customers with national accounts for which provider and competitor competed, since provider's allegations were sufficiently likely to have evidentiary support following discovery; provider identified only those customers and prospective customers who allegedly selected competitor over it based on misleading comparisons in independent report, competitor's presentation of allegedly misleading information to those customers, or customers' perceptions regarding amount of project information available on parties' competing systems, including information obtained by competitor's claimed misappropriation of provider's information. Fed.Rules Civ.Proc.Rule 11(b)(3), 28 U.S.C.A.

**[19] Antitrust and Trade Regulation 29T 🗝️136**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk136 k. Fraud; Deceit; Knowledge and Intent. Most Cited Cases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

**Antitrust and Trade Regulation 29T ⚷151**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk151 k. Public Impact or Interest; Private or Internal Transactions. Most Cited Cases

    A claim for a violation of New York's deceptive business acts and practices statute has three elements: (1) defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) plaintiff must have sustained injury as a result. N.Y.McKinney's General Business Law § 349.

**[20] Antitrust and Trade Regulation 29T ⚷151**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk151 k. Public Impact or Interest; Private or Internal Transactions. Most Cited Cases

    New York's deceptive business acts and practices statute is, at its core, a consumer protection device, not a tool to resolve disputes between private parties, and therefore business competitor bringing a claim thereunder must establish that the alleged deceptive act or practice was directed to the consuming public at large. N.Y.McKinney's General Business Law § 349.

**[21] Antitrust and Trade Regulation 29T ⚷151**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk151 k. Public Impact or Interest; Private or Internal Transactions. Most Cited Cases

    Allegation by national provider of construction project news and information that consumers in state's construction data market might have overpaid to subscribe to competitor's web-based subscription service when provider's service was superior product did not state claim under New York's deceptive business acts and practices statute; complaint focused on harm to provider's business interest, not consumer injury or harm to public interest, and limited public harm alleged, that consumers paid more for allegedly inferior product, was incidental in nature. N.Y.McKinney's General Business Law § 349.

Troutman Sanders LLP, by: Aurora Cassirer, Esq., Matthew J. Aaronson, Esq., New York, NY, for Plaintiff.

Patterson Belknap Webb & Tyler LLP, by: Saul B. Shapiro, Esq., Joshua A. Goldberg, Esq., New York, NY, for Defendant, The McGraw-Hill Companies, Inc.

*OPINION*

SWEET, District Judge.

    **\*1** Defendant The McGraw-Hill Companies, Inc. ("Defendant" or "MHC") has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts Three, Five, Six, Seven and Eight of Plaintiff Reed Construction Data Inc.'s ("Plaintiff" or "RCD") Amended Complaint. These counts allege, respectively, misappropriation of confidential information (Count Three), tortious interference with prospective economic advantage (Count Five), violation of New York General Business Law ("GBL") Section 349 (Count Six), violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) (Count Seven), and conspiracy to violate RICO (Count Eight). Upon the facts and conclusions set forth below, the motion is granted as to the RICO claims (Counts Seven and Eight) and the GBL § 349 claim (Count Six), and denied as to Counts Three and Five.

*Prior Proceedings*

    RCD filed its original Complaint on October 8,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

2009, alleging fraud (Count One), misappropriation of trade secrets (Count Two), misappropriation of confidential information (Count Three), unfair competition (Count Four), tortious interference with prospective economic advantage (Count Five), violation of GBL § 349 (Count Six), violation of RICO (Count Seven), RICO conspiracy (Count Eight), monopolization, pursuant to 15 U.S.C. §§ 15 and 26 (Count Nine), attempted monopolization (Count Ten), and unjust enrichment (Count Eleven). On November 20, 2009, MHC moved to dismiss five of the eleven counts. RCD filed an Amended Complaint on December 10, 2009, and, on January 22, 2010, MHC moved to dismiss Counts Three, Five, Six, Seven and Eight of the Amended Complaint.[FN1]

The instant motion was heard and marked fully submitted on March 24, 2010.

*The Facts*

RCD and MHC are competing providers of national, regional, and local construction project news and information to the construction industry. (Am. Compl. ¶¶ 12, 13, 23.) The project information, which often includes building plans and specifications, is used by customers such as building manufacturers and contractors to identify projects for which they may seek specification of their product within the plans or seek to submit bids for products or services. (*Id.* ¶ 13.) RCD and MHC are the only providers of such information on a national scale. (*Id.* ¶ 23.)

RCD provides its customers a web-based subscription service known as "Reed Connect," which permits subscribers to search RCD's database for construction projects and related data nationwide. (*Id.* ¶¶ 14, 15.) MHC offers its customers an online search program similar to Reed Connect, described as the "Dodge Network." (*Id.* ¶¶ 1, 24.) RCD alleges that an annual subscription to the Dodge Network costs "generally twice as much as ... a subscription to Reed Connect," and that MHC maintains an "80-90% share of the market for national online subscription[s]." (*Id.* ¶¶ 32, 291.)

*2 RCD alleges that employees in MHC's "Competitive Intelligence" unit hired several contractors to subscribe to Reed Connect by posing as customers of RCD between 2002 and 2009. (*Id.* ¶¶ 34-37.) One contractor identified by RCD is an individual named Henning Lorenz, who allegedly subscribed to Reed Connect between 2002 and 2006 by representing that he was the President and CEO of a business named NE14T Corporation, Inc. ("NE14T") and that NE14T was a consultant for Hager Hinge Company ("Hager Hinge"), a legitimate building product manufacturer. (*Id.* ¶¶ 38-43.) When Hager Hinge subscribed to Reed Connect in December 2005, RCD determined that Lorenz did not work for the real Hager Hinge and cancelled his subscription. (*Id.* ¶¶ 62-64.)

Reed alleges that MHC hired another contractor named Glenn Lewin to subscribe to Reed Connect, paying Lewin the cost of the subscription and a monthly fee for his services. (*Id.* ¶¶ 67-68, 73-75.) Between March 2003 and January 2009, Lewin purchased at least three subscriptions to Reed Connect under his name and under an alias, John Carlson, by claiming that he worked for Northern Construction Development Company ("NCDC"), Central Business Services ("CBS"), and Arrington Partners ("Arrington"), all allegedly fictitious entities. (*Id.* ¶¶ 68-95.) Each time Lewin purchased a subscription he signed an agreement with RCD containing a nondisclosure provision prohibiting him from sharing the information obtained from Reed Connect with any person other than employees of the company for which he claimed to work. (*Id.* ¶¶ 76, 87.) The nondisclosure provision in Arrington's agreement with RCD also contained a direct representation that Arrington was not subscribing under a fictitious name to provide RCD's competitors with access to Reed Connect. (*Id.* ¶ 87.) RCD alleges that Lewin regularly shared his access to Reed Connect with MHC, in violation of these nondisclosure provisions.

In January 2009, Lewin is alleged to have purchased a national subscription to Reed Connect

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

through another fictitious company, Site Amenities, under another alias, Andy Anderson. (*Id.* ¶¶ 90-92.) In July or August of 2009, in connection with an audit of Site Amenities conducted by RCD, Lewin allegedly admitted that he worked for MHC, that NCDC, CBS, Arrington and Site Amenities were all fictitious companies, that John Carlson and Andy Anderson were aliases, that MHC paid for the subscriptions and Lewin's services and regularly accessed Reed Connect through Lewin's subscriptions, and that MHC had used other consultants prior to Lewin. (*Id.* ¶¶ 99-101.) RCD then terminated Lewin's subscription to Reed Connect. (*Id.* ¶¶ 101-104.)

RCD alleges that MHC used its unauthorized access to Reed Connect to compete unfairly in several ways. First, MHC allegedly shared information obtained from Reed Connect with its sales agents and "manipulated" that information to create "misleading" and favorable comparisons between the Dodge Network and Reed Connect for use in competition for customer accounts. (*Id.* ¶¶ 107-110.) Second, RCD alleges that MHC used this information to develop and alter the Dodge Network. (*Id.* ¶ 109.) Third, RCD claims that MHC presented its misleading comparisons to Roper Public Affairs & Media ("Roper"), an independent consulting firm that issues a report comparing the number of projects available in Reed Connect and the Dodge Network (the "Roper Report"), resulting in the publication of "demonstrably false and misleading" information. (*Id.* ¶ 110-116.) Finally, RCD alleges that MHC used its access to Reed Connect to misappropriate project information and populate its own project database, either by directly copying RCD's information or by using Reed Connect to identify projects that were available in RCD's database but not in MHC's and then contacting the source to obtain the information for such projects. (*Id.* ¶¶ 130-134.)

**\*3** RCD asserts that at least 221 existing and prospective national account customers have switched from RCD to MHC or chosen to subscribe with MHC instead of RCD as a result of MHC's alleged misconduct. (*Id.* ¶ 136-137.)

***The 12(b)(6) Standard***

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235-36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

***The Amended Complaint has Failed to Establish the RICO Claims Alleged in Counts Seven and Eight***

[1][2] To establish a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must allege and prove four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In addition, under § 1964(c), a civil RICO claimant "must plead, at a minimum, '(1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the de-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

fendant's violation.' " *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 120 (2d Cir.2003) (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,* 271 F.3d 374, 380 (2d Cir.2001)).

A. *RCD's RICO Allegations*

RCD alleges that MHC violated and conspired to violate RICO by forming an association-in-fact RICO enterprise with Lorenz, Lewin, Roper, and various other unnamed entities and employees (the "John Does" and "John Doe Entities") for the purpose of "defrauding RCD and obtaining unauthorized access to Reed Connect and RCD's confidential and proprietary information." (Am. Compl. ¶¶ 255-56.) MHC and other members of the enterprise allegedly engaged in the following activities related to MHC's obtaining subscriptions to Reed Connect: misrepresenting to RCD their true business affiliations; sending false and misleading subscription agreements to RCD; sending funds to RCD; sending funds to members of the enterprise; sending consulting agreements to RCD; instructing co-conspirators to make misrepresentations; and communicating amongst themselves. (*Id.* ¶ 259.) RCD alleges that these acts constituted mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, and that RCD was "the direct target and actual victim of the Enterprise's fraudulent scheme." (*Id.* ¶¶ 262-63.) RCD also alleges that MHC and other entities sent documents that contained misleading comparisons to customers. (*Id.* ¶ 259(f).) As a result of the alleged racketeering activity, RCD claims that it lost "prospective and existing customers, and the resultant revenues and profits associated with those customers." (*Id.* ¶ 268.)

B. *RCD Has Not Alleged Distinctness*

*4 [3][4][5] To establish liability under § 1962(c) one must allege and prove the existence of a "person" that is distinct from the alleged "enterprise." See *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994); *see also Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001). The distinctness requirement may not be circumvented "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Riverwoods,* 30 F.3d at 344; *see City of New York v. Cyco.net, Inc.,* 383 F.Supp.2d 526, 551 (S.D.N.Y.2005) (dismissing RICO claim for lack of distinctness where defendant was corporation and alleged "enterprise" consisted of corporation and its officers and employees); *cf. Stolow v. Greg Manning Auctions, Inc.,* 258 F.Supp.2d 236, 247 (S.D.N.Y.), *aff'd,* 80 Fed.Appx. 722 (2d Cir.2003) (applying *Riverwoods* and *Kushner,* but finding that plaintiff alleged an enterprise distinct from the defendant corporations and their employees or agents).

Here, RCD has failed to allege that MHC, the "person" named as Defendant, is distinct from the alleged "enterprise" in the Amended Complaint.

The Amended Complaint alleges that the case involves misconduct "committed by a sophisticated corporate entity," (Am. Compl. ¶ 1) and that "[t]he actions of [MHC] and its agents are at issue in this case" (*id.* ¶ 3.) The gravamen of RCD's Amended Complaint is the alleged misconduct of MHC, the only named defendant. All additional persons and entities identified in the Amended Complaint, other than Roper, are expressly described as "agents" of MHC.

[6] McGraw-Hill Construction, the division of MHC that managed the Dodge Network, cannot be considered distinct from the parent corporation. *See Panix Promotions, Ltd. v. Lewis,* No. 01-Civ. 2709, 2002 WL 72932, at *6 (S.D.N.Y. Jan. 17, 2002) (holding that "such a construct, where a division or subsidiary of an enterprise is alleged to also constitute a distinct person, can not constitute a RICO claim" (internal quotations omitted)).

RCD expressly alleges that "[a]t all times relevant herein, Lorenz and Lewin ... acted as [MHC s] agents." (Am. Compl. ¶ 142; *see id.* ¶¶ 88, 166, 181, 195.) As such, they cannot be considered dis-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

tinct from MHC. *See Riverwoods,* 30 F.3d at 344. For the same reason, the "John Does One through Five," described as "individual current and/or former officers, employees, contractors or agents of [MHC]," ( *id.* ¶ 4) are not distinct from MHC. *See Riverwoods,* 30 F.3d at 344.

None of the allegedly fictitious companies can be considered "persons," and even if they were real entities, they would not meet the distinctness test because RCD has alleged that they participated only by virtue of their agency relationships with MHC. *See Mayfield v. Gen. Elec. Capital Corp.,* No. 97 CIV. 2786, 1999 WL 182586, at *8 (S.D.N.Y. Mar. 31, 1999) ("[T]he distinctness requirement is not met simply because the agent is a separate corporation rather than an individual person."). The same is true of NE14T, which is alleged to have participated in the enterprise only by virtue of Lorenz's participation. (*See* Am. Compl. ¶¶ 39, 45, 256, 259(a)(i).) The "John Does Entities One through Five," which are described as "legal entities who contracted or conspired with [MHC] to perform or participate in the acts and omissions described," (Am. Compl. ¶ 5) cannot satisfy the distinctness test for the same reasons that NE14T and the other companies cannot do so, namely that they participated only by virtue of their agency relationships with MHC. *See Mayfield,* 1999 WL 182586, at *8.

**\*5** [7] RCD added Roper, an independent third party hired by MHC, to the RICO allegations in its Amended Complaint. However, Roper is not alleged to have intended to participate in any racketeering scheme or to have shared a common fraudulent purpose with the other alleged members of the enterprise, a requirement under RICO.

[8] "[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 174 (2d Cir.2004); *see Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 273 (S.D.N.Y.1988). Individuals or entities that do not share such a common purpose cannot be considered part of a RICO enterprise as a matter of law. *See, e.g., Crab House of Douglaston, Inc. v. Newsday, Inc.,* 418 F.Supp.2d 193, 203-04 (E.D.N.Y.2006); *Godlewska v. Human Dev. Ass'n,* No. CIV A CV-03-3985DGT, 2005 WL 1667852, at *7 (E.D.N.Y. Jul. 18, 2005).

Nothing in the allegations in the Amended Complaint indicate that Roper intended to create allegedly misleading data comparisons, manipulate any search terms or data, or participate in any other fraudulent conduct. At most, Roper unwittingly "validated" misleading data comparisons submitted to Roper by MHC when it published them with the imprimatur of an "unbiased, third-party." (Am. Compl. ¶¶ 112, 113, 119.) Based on the allegations in the Amended Complaint, Roper is nothing more than "an innocent instrument" used by MHC. *See Crab House,* 418 F.Supp.2d at 204-05.

[9][10] In its opposition brief, RCD contends that Roper "knew or should have known" that MHC's comparisons were based on unauthorized access to Reed Connect and that such comparisons were being used to harm RCD in the marketplace. (Opp. Br. 20, n. 19.) Even if this were true, it would not make Roper a participant in the alleged enterprise, because a party cannot be considered a part of a RICO enterprise unless it intended to participate. *See Satinwood,* 385 F.3d at 174; *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (distinctness cannot be shown simply by tacking on entities to an enterprise that do not in fact operate as a "continuing unit" or share a "common purpose").

RCD also argues in its opposition brief that it has alleged an enterprise that is "distinct" and "independent" of MHC. (*See* Opp. Br. 19, 23.) To support its argument, RCD cites *Kushner* for the proposition that distinctness is established when an enterprise involves both a corporation and a corporate officers, because "the two are legally distinct." (Opp. Br. 20.) In *Kushner,* the Supreme Court ac-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

knowledged the distinctness rule set forth in *Riverwoods,* but held that it did not bar a claim where the defendant was an individual and the corporation was the enterprise. 533 U.S. at 163, 121 S.Ct. 2087. In such a case, the individual is considered to be legally separate from the corporation. *Id.* Here, however, the corporation is the defendant, and therefore is not distinct from the alleged "enterprise." *See id.* at 164, 121 S.Ct. 2087 (acknowledging the *Riverwoods* rule and noting that *Riverwoods* "concerned a claim that a corporation was the 'person' and the corporate, together with all its employees and agents, were the 'enterprise' "). Courts in this District continue to apply *Riverwoods* to cases such as this, in which the defendant is a corporation and the enterprise is the same corporation, together with its employees and agents. *See, e.g., Cyco.net,* 383 F.Supp.2d at 548; *Stolow,* 258 F.Supp.2d at 247. Moreover, the allegations in the Amended Complaint repeatedly describe MHC-rather than an "independent enterprise"-as the sole beneficiary of the alleged coconspirators' actions. (*See, e.g.,* Am. Compl. ¶¶ 1, 34.)

**\*6** RCD also argues that *Riverwoods* only applies where the corporation's agents were alleged to have been acting within the scope of their agency in "carrying on the regular affairs of the defendant." (Opp. Br. 22 (citing *Riverwoods,* 30 F.3d at 344).) RCD argues that *Riverwoods* therefore does not apply here, because the agents' conduct "goes beyond the regular affairs of the corporation." (Opp. Br. 23.) However, there is no requirement that the "regular affairs" described in *Riverwoods* be limited to lawful conduct or conduct officially sanctioned by the corporation. Indeed, in *Riverwoods,* as in any case in which a plaintiff alleges a violation of RICO, the conduct alleged was unlawful. *See, e.g., R.C.M. Executive Gallery Corp. v. Rols Capital Co.,* 901 F.Supp. 630, 640-41 (S.D.N.Y.1995) (dismissing RICO claims for lack of distinctness and noting that "an alleged association-in-fact does not have an existence apart from the [corporation] merely because the alleged racketeering activities are not legitimate [corporate] activities"). Here, RCD alleges that MHC competed with RCD for customers in the normal course of its business and that its regular activities included compiling data and updating its database, creating comparisons between the parties' databases, publishing those comparisons through the Roper Report, and using the comparisons to solicit customers. (*See* Am. Comp. ¶¶ 24, 107-29, 136-39.) This alleged racketeering activity constituted MHC's "regular way of conducting" its business, and did not go beyond the regular affairs of the corporation. *See Riverwoods,* 30 F.3d at 345.

RCD has not alleged that any of the consultants or entities associated with them had any relationship to the alleged enterprise beyond their consulting agreements with MHC. It has also failed to allege that any unrelated party who was not an agent of MHC participated in the alleged enterprise with intent to further its allegedly unlawful purpose. Accordingly, the Amended Complaint fails as a matter of law to state a valid RICO claim under the distinctness rule.[FN2]

RCD's RICO conspiracy claim is derivative of its substantive RICO claim, and is dismissed for the same reasons. *See, e.g., Allen v. New World Coffee, Inc.,* No. 00 CIV. 2610, 2002 WL 432685, at \*6 (S.D.N.Y. Mar. 19, 2002) ("The dismissal of all of plaintiffs' [substantive] RICO claims leaves the conspiracy cause of action without a leg to stand on.").

***RCD has Adequately Pled its Claim of Misappropriation of Confidential Information***

[11][12][13][14] To state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage. *See Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.,* 283 A.D.2d 448, 729 N.Y.S.2d 142, 144-45 (2001); *B-S Indus. Contractors Inc. v. Burns Bros. Contractors Inc.,* 256 A.D.2d 963, 681 N.Y.S.2d 897, 899 (1998). Where the plaintiff and defendant are both parties to a contract, the plaintiff must allege a breach of "a duty

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

'independent' of [the] duties under the contract." *Carvel Corp. v. Noonan,* 350 F.3d 6, 16 (2d Cir.2003); see *Clark-Fitzpatrick Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). In such a case, "the focus is on whether a noncontractual duty was violated; a duty imposed on individuals as a matter of social policy, as opposed to those imposed consensually as a matter of contractual agreement." *Apple Records, Inc. v. Capitol Records, Inc.,* 137 A.D.2d 50, 529 N.Y.S.2d 279, 282 (1988). A claim of misappropriation " 'must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.' " *Productivity Software Int'l, Inc. v. Healthcare Techs., Inc.,* No. 93 Civ 6949, 1995 WL 437526, at *8 (S.D.N.Y. Jul. 25, 1995) (quoting *Clark-Fitzpatrick,* 70 N.Y.2d at 389, 521 N.Y.S.2d 653, 516 N.E.2d 190).

**\*7** MHC contends that RCD's misappropriation claim is premised primarily on the violation of the terms and conditions of RCD's subscription agreements with Lewin and Lorenz, which included various provisions restricting Lewin's and Lorenz's use of the Reed Connect data. However, RCD has not alleged that MHC was a party to its subscription agreements with Lorenz or Lewin, nor has it sued MHC for breach of those agreements. Moreover, even if MHC were a party to the agreements, RCD has pled sufficient facts to indicate that MHC has done more than simply fail to comply with the terms of the agreement, but rather has undertaken affirmative steps to intentionally harm RCD. In *Carvel,* the Second Circuit held that a defendant's breach of a contract may also breach an independent duty in tort "if the defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff." 350 F.3d at 16.

In the Amended Complaint, RCD alleges that MHC used its unauthorized access to Reed Connect through Lorenz and Lewin to willfully misappropriate RCD's confidential information, including, among other things, RCD's project information and proprietary search algorithms. (Am. Compl. ¶¶ 180, 181, 183, 191.) RCD alleges that MHC used this information to its competitive advantage by misleading RCD's customers and prospective customers, thereby harming RCD's business and preventing it from reaping the full profits of its own information. (*Id.* ¶¶ 136-39, 185, 186.)

Accepting RCD's allegations as true, MHC's use of deceit to access Reed Connect and steal RCD's confidential information and its subsequent use of that information to compete with RCD "spring from circumstances extraneous to, and not constituting elements of," the subscription agreements with Lewin and Lorenz. *Productivity Software,* 1995 WL 437526, at *8. This conduct violated a legal duty independent the subscription agreements with Lewin and Lorenz, namely the duty not to misappropriate the property of another. See *Shen v. Signature Dev. Corp.,* No. 35803/04, 26 Misc.3d 1202(A), 2009 WL 5126355, at *10-11 (N.Y.Sup.Ct. Dec. 29, 2009).

Accordingly, RCD's has adequately pled its claim for misappropriation of confidential information.

### RCD has Adequately Pled Tortious Interference

[15][16][17] To state a claim for tortious interference with economic advantage under New York law, "four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., LLC v. Park Place Entm't Corp.,* 547 F.3d 115, 132 (2d Cir.2008), *cert. denied,* --- U.S. ----, 129 S.Ct. 1908, 173 L.Ed.2d 1058 (2009) (citations omitted). With respect to the first element, a plaintiff must "specify some particular, existing relationship" with which a defendant interfered. *Krepps v. Reiner,* 588 F.Supp.2d 471, 484 (S.D.N.Y.2008). The Second Circuit has recognized that this tort has a causation element in that it "

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

'requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct.' " *Premium Mortgage Corp. v. Equifax, Inc.,* 583 F.3d 103, 107 (2d Cir.2009) (quoting *Vigoda v. DCA Prods. Plus Inc.,* 293 A.D.2d 265, 741 N.Y.S.2d 20, 23 (2002)).

**\*8** RCD's Amended Complaint identifies by name 221 of the customers at issue in its claim, all of which are national accounts for which RCD and MHC are the only competitors. RCD has sufficiently alleged that it had a business relationship and reasonable expectancy of entering into a contractual relationship with each of these customers, either on the basis of RCD's prior relationships with former customers or its active negotiations with prospective customers, and that MHC knew of those relationships and intentionally interfered with them. *See Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co.,* Nos. 08-CV-00494, 08-CV-00541, 08-CV-00566, 08-CV-00583, 2009 WL 910969, at \*1-2 (W.D.N.Y. Mar. 31, 2009) (denying motion to dismiss tortious interference claim where the plaintiff identified by name only one business relationship in each of its four amended complaints).

[18] MHC contends that this allegation fails to satisfy the particularity requirement, because the 221 customers comprise "every 'lost' customer since 2006," (Opp. 25) rather than a list of customers who actually chose MHC over RCD based on any alleged misrepresentation. MHC also contends that this approach violates Fed.R.Civ.P. 11(b)(3), because RCD's factual representations neither "have evidentiary support" nor are "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." However, in the Amended Complaint, RCD identified only those customers and prospective customers who selected MHC over RCD based on misleading comparisons in the Roper Report, MHC s presentation of allegedly misleading information to those customers, or the customers' perceptions regarding the amount of project information available on the competing systems, including information obtained by MHC's misappropriation of RCD's information. Even if such allegations lack evidentiary support, they are sufficiently likely to have evidentiary support after a reasonable opportunity for further investigation or discovery to satisfy the requirements of Rule 11.

MHC also argues that there are " 'obvious alternative explanation[s]' for the identified customers' choices," (Opp. 27) and that the claim must therefore be dismissed pursuant to *Twombly* and *Iqbal.* However, *Twombly* and *Iqbal* held that a claim may be dismissed when a lawful explanation for defendant's conduct is **more likely** than an unlawful explanation, but do not address alternative explanations for the plaintiff's injury. *See Twombly,* 550 U.S. at 567, 127 S.Ct. 1955; *Iqbal,* 129 S.Ct. at 1951-52. Moreover, because the 221 customers identified by RCD exclude customers who selected MHC for a reason unrelated to the project information available on the two systems, it is plausible that these customers chose MHC specifically because of their misconceptions regarding project information.

For these reasons, RCD has pled its tortious interference claim with sufficient particularity and MHC's motion to dismiss Count Five of the Amended Complaint is denied.

### *RCD has Failed to State a Claim under New York GBL § 349*

**\*9** [19][20][21] A claim for a violation of New York GBL § 349 "has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. JP Morgan Chase & Co.,* 498 F.3d 111, 126 (2d Cir.2007). Section 349 " 'is, at its core, a consumer protection device,' not a tool to resolve disputes between private parties." *SMJ Group, Inc. v. 417 Lafayette Rest. LLC,* No. 06 Civ. 1774, 2006 WL 2516519, at \*4 (S.D.N.Y. Aug. 30, 2006) (quoting *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995)). Therefore, a business competitor bringing a claim under

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)
**(Cite as: 2010 WL 3835196 (S.D.N.Y.))**

Section 349 "must establish that the alleged deceptive act or practice was directed to the consuming public at large." *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano,* 331 F.Supp.2d 247, 256 (S.D.N.Y.2004).

RCD's only allegation regarding public harm is that consumers in the New York construction data market may have overpaid to subscribe to the Dodge Network when Reed Connect is a superior product. (*See* Am. Compl. ¶¶ 243-44.) Even accepting this allegation as true, it does not state a claim under New York GBL § 349. *Kforce, Inc. v. Alden Personnel, Inc.,* 288 F.Supp.2d 513, 519 (S.D.N.Y.2003) ("[A]s long as the public receives the product or service, a loss of business by plaintiff is not considered a public harm."); *see Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 277 F.Supp.2d 269, 274-75 (S.D.N.Y.2003) (finding that "the business does not have a cognizable cause of action under § 349" where alleged public harm consisted of consumers' being forced to "pay much higher prices to purchase the same items" from a competitor).

In this case, RCD's Amended Complaint focuses on harm to its business interest, not consumer injury or harm to the public interest. The limited public harm alleged, that construction data consumers paid more for an allegedly inferior product, is incidental in nature and insufficient to support a claim under § 349. *See Kforce,* 288 F.Supp.2d at 519; *Gucci America,* 277 F.Supp.2d at 274 (dismissing § 349 claim where "gravamen of the complaint" was harm to counterclaimant's business).

*Conclusion*

Based upon the facts and conclusions set forth above, Defendant's motion to dismiss is granted as to Counts Six, Seven and Eight and denied as to Counts Three and Five.

It is so ordered.

FN1. MHC states in its opening memorandum that RCD's remaining claims "are without merit, but are not subject to dismissal at this point." (MHC Br. 3.)

FN2. Since RCD's RICO claims fail as a matter of law under the *Riverwoods* distinctness rule, it is not necessary to address MHC's argument that RCD has not alleged injuries that were proximately caused by any alleged RICO violation.

S.D.N.Y.,2010.
Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.
--- F.Supp.2d ----, 2010 WL 3835196 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.